1  Jess B. Millikan (CSB#095540)
   Samuel H. Ruby (CSB#191091)
2  BULLIVANT HOUSER BAILEY PC
   601 California Street, Suite 1800
3  San Francisco, California 94108
   Telephone: 415.352.2700
4  Facsimile: 415.352.2701
   jess.millikan@bullivant.com
5  samuel.ruby@bullivant.com

6  *Attorneys for Defendants*
   Crum & Forster Indemnity Company
7  United States Fire Insurance Company

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12

13  COPART INC.,                          Case No.: C 07 02684 CW

14              Plaintiff,                 **COUNTERCLAIM BY UNITED STATES
                                           FIRE INSURANCE COMPANY**
15       vs.

16  CRUM & FORSTER INDEMNITY
    COMPANY, UNITED STATES FIRE
17  INSURANCE COMPANY, and DOES 1-10,

18              Defendants.

19  ─────────────────────────────

20  UNITED STATES FIRE INSURANCE
    COMPANY,

21              Counterclaimant,

22       vs.

23  COPART, INC.,

24              Counterdefendant.

25

26

27       United States Fire Insurance Company ("USFIC") counterclaims against Copart, Inc.

28  ("Copart") as follows:

                                  – 1 –
─────────────────────────────────────────────────────
       UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

1

## JURISDICTION

2      1.    The Court has supplemental jurisdiction over this counterclaim, because it arises

3  out of the same operative facts and transactions as the complaint.  In addition, this Court has

4  diversity jurisdiction, in that (a) United States Fire Insurance Company is a corporation

5  organized under the laws of the State of Delaware with its principal place of business in

6  Morristown, New Jersey; (b) Copart Inc. is a corporation organized under the laws of the State

7  of California with its principal place of business in or about Fairfield, California; and (c) the

8  amount in controversy between the parties exceeds $75,000.00.

9

## GENERAL ALLEGATIONS

10  **A.**    **The 2003-2004 Policy**

11      2.    On or about July 10, 2003, Steven Raffo (an employee of Marsh Inc. ("Marsh"),

12  an insurance broker) emailed Richard Blanchette (an underwriter for USFIC) and invited him to

13  offer terms for an insurance policy that would provide physical damage and business

14  interruption coverage to Copart, Inc., a company which "provides vehicle suppliers, primarily

15  insurance companies, with a full range of services to process and sell salvage vehicles through

16  auctions, principally to licensed vehicle dismantlers, rebuilders, repair licensees and used

17  vehicle dealer."

18      3.    With the invitation, Raffo submitted several statements listing locations owned or

19  operated by Copart and representing the nature and values of the exposures at those locations.

20      4.    In response to the invitation, Blanchette offered terms, including a premium

21  calculated on the basis of the $282 million total of the insurable values ("TIV") set forth in the

22  statements submitted by Raffo.

23      5.    During the negotiations that followed, Raffo submitted a revised statement of

24  values (dated October 1, 2003) in which the TIV increased by thirteen percent.

25      6.    In response, Blanchette increased the proposed premium by thirteen percent.

26      7.    Raffo accepted Blanchette's revised offer, and on or about October 2, 2003,

27  USFIC issued a binder identifying the new TIV.

28

– 2 –

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

1      8.      On or about December 30, 2003, USFIC issued a complete policy numbered
2   2441854323 ("the 2003-04 Policy").

3      9.      The 2003-04 policy's "Schedule of Locations" form incorporated by reference
4   the October 1, 2003 statement of values and specified the TIV as $319,513,647.

5   **B.      The 2004-2005 Policy**

6      10.     On or about September 3, 2004, Raffo invited USFIC underwriter Monica
7   Streacker to offer terms for the renewal of Copart's insurance with USFIC.

8      11.     With the invitation, Raffo submitted an updated statement of values dated
9   September 1, 2004.

10     12.     Streacker's offer of a renewal policy initially including a premium of
11  $355,315.00, which was based on the representation of TIV of approximately $408 million.

12     13.     After some negotiations, Streacker reduced the proposed premium to
13  $325,000.00 by applying a lower rate to the TIV.

14     14.     Raffo accepted Streacker's revised offer, and on or about September 30, 2004,
15  USFIC issued a binder identifying the premium as based on TIV of $408 million.

16     15.     On or about January 21, 2005, USFIC issued a complete policy numbered
17  2441873745 ("the 2004-05 Policy").

18     16.     The 2004-05 policy's "Schedule of Locations" form incorporated by reference
19  the September 1, 2004 Statement of Values and specified the TIV as $408 million.

20     17.     On or about March 21, 2005, Marsh employee Patrice McIntyre asked Streacker
21  to increase the sublimits in the policy's "Newly Acquired or Constructed Property" coverage for
22  no additional premium, but Streacker did not grant the request.

23     18.     On July 8, 2005, McIntyre asked Streacker to "add $5 Million in Computer
24  Values" at a location in North Las Vegas, Nevada.

25     19.     In response, USFIC issued an endorsement, adding coverage for the new values
26  in exchange for an additional premium.

27

28

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

20.    On or about August 10, 2005, McIntyre advised Streacker that there had been "a few location moves and some new yards opened for business," submitted a "schedule for additional inventory values," and requested an endorsement.

21.    In response to McIntyre's request, USFIC issued an endorsement providing coverage for the new inventory locations and/or new inventory values in exchange for an additional premium calculated on the basis of the increase in the TIV.

## C.    The 2005-2006 Policy

22.    On or about August 24, 2005, Marsh employee John Wood emailed Streacker and invited her to propose terms for the renewal of Copart's insurance with USFIC.

23.    With the invitation, Wood submitted an updated statement of values dated August 8, 2005.

24.    Based on the TIV reported by Wood ($424 million) and a desired rate increase, Streacker initially quoted a premium of $400,000.

25.    After some negotiations, Streacker applied a lower rate and quoted a premium of $306,250 (still based on the reported TIV of $424 million).

26.    Wood accepted the revised offer, and on October 3, 2005, USFIC issued a binder identifying the premium as being based on TIV of $424 million.

27.    A complete policy numbered 2441886561 ("the 2005-06 Policy") was issued on or about December 14, 2005.

28.    The 2005-06 Policy's "Building and Personal Property Coverage Form" stated:

> **A.    Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property *at the premises described in the Declarations* caused by or resulting from any Covered Cause of Loss.
>
> > **1.    Covered Property**
> >
> > Covered Property, as used in this Coverage Part, means the type of property described in this Section . . . if a Limit of Insurance is shown in the Declarations for that type of property.
> >
> > > a.    Building, meaning the building or structure *described in the Declarations* . . . .
> > >
> > > b.    Your Business Personal Property located in or on the building described in the Declarations . . . . .

– 4 –

In the "Supplemental Declarations" form, under "Item 2" ("Premises Described"), the policy stated, "See Schedule of Locations." In the "Schedule of Locations" form, (form FM 206.0.3 (04/94)), the policy stated, "As per schedule on file with company." The 2005-06 Policy's "Endorsement B" specified the TIV as $424 million.

29.    Just before the 2005-06 Policy was issued, Marsh employee Cynthia Marty had informed Streacker that Copart had "completed a review of their customer contracts" and concluded that Copart had "no real contractual obligation to cover direct damage to inventory."

30.    On January 3, 2006—after the 2005-06 Policy was issued—Marty asked Streacker to issue an endorsement deleting the policy's coverage for inventory in exchange for a reduction in the premium.

31.    In response, USFIC issued an endorsement that deleted coverage for inventory, lowered the TIV to $120 million, and specified a return premium of $94,543.22.

32.    On or about February 1, 2006, McIntyre submitted to Streacker an updated statement of values (dated January 1, 2006).

33.    As explained by McIntryre, the updated statement included "removal of inventory values," "updated [other] values for some previously reported locations," "values for newly acquired locations not previously reported," and "updated COPE" information about some locations.

34.    USFIC issued an endorsement (effective January 1, 2006) amending the values insured under the policy "as per updated statement of values dated 01-01-2006," increasing the TIV to $153 million (per that statement), and charging an additional premium of $18,112.40.

**D.    The 2006-2007 Policy**

35.    On or about September 4, 2006, Marsh employee Curtis DeVera submitted to USFIC a set of specifications for the renewal of Copart's insurance, including new statements of values.

36.    Based on the reported TIV, Streacker quoted a premium of $285,000.

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

1       37.    After some further negotiations, including negotiations over the sublimits for

2   newly acquired or constructed property, DeVera ordered a policy and USFIC issued a binder

3   identifying the premium as being based on TIV of $188 million.

4       38.    A complete policy numbered 2441895921 ("the 2006-07 Policy") was issued on

5   or about October 13, 2005.

6       39.    The 2005-06 policy's "Schedule of Locations" form incorporated by reference

7   the statement of values, and the policy's "Endorsement D" specified the TIV as $188 million.

8       40.    On January 5, 2007, McIntryre advised Streacker that Copart had purchased a

9   new property in Florida.

10       41.    In response, USFIC issued an endorsement, adding the new property to the

11   policy in exchange for an additional premium based on its reported value.

12       42.    On January 22, 2007, McIntyre reported Copart's acquisition of additional

13   contractor's equipment.

14       43.    In response, USFIC issued an endorsement, adding coverage for the new

15   equipment in exchange for an additional premium based on its reported value.

16       44.    On February 2, 2007, McIntyre also emailed Streacker an updated statement of

17   values, which resulted in an endorsement increasing the TIV in exchange for an additional

18   premium.

19       45.    Also on February 2, 2007, McIntyre emailed Streacker to request increases to the

20   limits and duration of the policy's "Newly Acquired or Constructed Property" coverage,

21   resulting in another endorsement.

22   **E.**    <u>**Yard 105**</u>

23       46.    On October 28, 2005, Copart (through Marsh) gave notice to USFIC of a claim

24   for losses caused on or about October 24, 2005 by Hurricane Wilma at three locations in

25   Florida, including building damage at a location identified as "Yard 105."

26       47.    No location identified as "Yard 105" was shown on any of the statements of

27   values submitted by Marsh to USFIC in connection with the 2003-04 Policy.

28

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

48.    No values for any buildings, contents, computer equipment, contractor's equipment, inventory, or business interruption/extra expense exposure at Yard 105 were reported to USFIC in connection with the 2003-04 Policy.

49.    Copart paid no premium for coverage for any buildings, contents, computer equipment, contractor's equipment, inventory, or business interruption/extra expense exposure at Yard 105 under the 2003-04 Policy.

50.    A location identified as "Yard 105" was first reported to USFIC in the statement of values dated September 1, 2004 submitted by Marsh with its invitation for an offer of terms for the renewal of Copart's insurance.

51.    The September 1, 2004 statement of values described Yard 105 as "20.288 acres" in "Hialeah, FL" and did not describe any buildings at the location.

52.    Nor did the September 1, 2004 statement of values state any values for any buildings, contents, computer equipment, contractor's equipment, inventory, or business interruption/extra expense exposure at Yard 105.

53.    Copart paid no premium at the inception of the 2004-2005 policy for coverage for any buildings, contents, computer equipment, contractor's equipment, inventory, or business interruption/extra expense exposure at Yard 105.

54.    The first report to USFIC of any values for any risks at Yard 105 was McIntyre's email of August 10, 2005 advising that Yard 105 now had inventory worth $1.3 million.

55.    In response to the report, USFIC charged and received an additional premium for the newly reported inventory values at Yard 105 (and other new values, at other locations, reported at the same time).

56.    The statement of values submitted to USFIC in connection with the negotiations over the terms of the 2005-06 Policy gave a street address for Yard 105 and stated the previously-reported inventory value but still did not describe any buildings at the location nor state any values for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure.

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

57.     Copart paid no premium at the inception of the 2005-2006 policy for coverage for any buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure at Yard 105.

58.     At no time between the October 1, 2005 inception of the 2005-06 policy and Hurricane Wilma did Copart (directly, or through Marsh) report any values for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure at Yard 105.

59.     At no time between the October 1, 2005 inception of the 2005-06 policy and Hurricane Wilma did Copart pay any additional premium for coverage for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure at Yard 105.

60.     At no time in the entire history of the dealings between the parties prior to Hurricane Wilma did Copart (directly, or through Marsh) report the construction of any buildings at Yard 105.

### FIRST CAUSE OF ACTION

### (Reformation – California Civil Code § 3399)

61.     USFIC incorporates by reference and thereby re-alleges here the allegations set forth in Paragraphs 1-60 above.

62.     At the time the parties formed the insurance contract that was reduced to writing in the form of the 2005-2006 Policy, it was the parties' mutual intent that the policy would cover only the buildings, personal property, and other exposures for which values were reported in the August 8, 2005 statement of values.

63.     USFIC contends that the contract clearly and unambiguously express the mutual intent alleged above.

64.     However, by way of its complaint in this action, Copart appears to contend that as written, the contract must be interpreted as covering all buildings, personal property, and other exposures at locations owned or operated by Copart, irrespective of whether the property

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

was ever described to USFIC, whether values were ever reported to USFIC, and whether Copart ever paid a premium for the exposure.

65.    USFIC contests Copart's interpretation of the contract, but if the Court finds that Copart's interpretation is correct, then as a result of a mutual mistake (or the mistake of USFIC, which Copart at the time knew or suspected), the contract will not have truly expressed the intention of the parties.

WHEREFORE, USFIC prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Negligent Misrepresentation)

66.    USFIC incorporates by reference and thereby re-alleges here the allegations set forth in Paragraphs 1-60 above.

67.    As alleged more specifically above, Copart (through its agent, Marsh) at various times represented to USFIC the nature and values of the property and other exposures to be covered under the insurance contracts.

68.    USFIC actually and reasonably relied upon said representations in deciding whether to offer the insurance, and if so, on what terms (including, what premiums).

69.    By way of its complaint in this action, Copart contends that at all times, each of the policies covered all property and other exposures at locations owned or operated by Copart, regardless of whether the locations were disclosed and values for the exposures were reported to USFIC.

70.    If the Court agrees with Copart's interpretation of the policies and does not grant reformation, then Copart's representations to USFIC will have been false, because they will have concealed or misrepresented the exposures that became insured under the contracts.

71.    Had Copart accurately represented the exposures, then at a minimum, USFIC would have charged additional premiums for the policies.  USFIC might also have required different deductibles, limits, and other terms—or might not have entered into the contracts at all.

– 9 –

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM

72.    Thus, if the Court agrees with Copart's interpretation of the policies and does not grant reformation, then USFIC will have suffered damages including but not necessarily limited to lost premiums.

73.    USFIC did not discover and could not reasonably have discovered the concealment and misrepresentation prior to February 22, 2007, when Copart (through its counsel) challenged USFIC's declination of Copart's claim with respect to Yard 105 and argued that the statements of values submitted by Copart are irrelevant to the contracts.

WHEREFORE, USFIC prays for relief as set forth below.

## PRAYER

USFIC prays for relief as follows:

1.    For reformation of the 2005-06 Policy to clearly and unambiguously express the mutual intent of the parties that the policy would cover only the buildings, personal property, and other exposures for which values were reported in the August 8, 2005 statement of values;

2.    Or, in the alternative, for a money judgment for damages in the amount to be proven at trial, including prejudgment interest;

3.    That USFIC be awarded its costs of suit; and

4.    For such further and other relief as the Court may deem just and proper.

DATED:  June 13, 2007

BULLIVANT HOUSER BAILEY PC

By    Samuel H. Ruby
      Samuel H. Ruby

Attorneys for Defendants Crum & Forster
Indemnity Company and United States Fire
Insurance Company

6081442.1

UNITED STATES FIRE INSURANCE COMPANY'S COUNTERCLAIM