Jess B. Millikan (CSB#095540)
Samuel H. Ruby (CSB#191091)
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
jess.millikan@bullivant.com
samuel.ruby@bullivant.com

*Attorneys for Defendant*
United States Fire Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC., <br><br> Plaintiff, <br><br> vs. <br><br> CRUM & FORSTER INDEMNITY COMPANY,[1] UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No.: C 07 02684 CW <br><br> **U.S. FIRE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL FURTHER RESPONSES TO DOCUMENT REQUESTS TO COPART** <br><br> Date:    TO BE SET <br> Time: <br> Courtroom: |

---

[1] Dismissed by Order Upon Stipulation (6/15/07).

# I. INTRODUCTION

In an attempt to avoid producing documents that are relevant or that could at least lead to the discovery of admissible evidence, Copart has asserted boilerplate objections. The objections lack merit. The Court should overrule the objections, order Copart to amend its responses, and order Copart to produce the documents.

## A.  Case Background and Issues

Copart provides vehicle suppliers such as insurance companies with a range of services to process and sell salvage vehicles through auctions, including damaged vehicles deemed a total loss for insurance or business purposes. U.S. Fire insured Copart under a series of commercial property policies over the period 2003 to 2007. As part of the initial issuance of the policy in 2003, and with each subsequent renewal, Copart's insurance broker (Marsh) submitted statements listing locations owned or operated by Copart and indicating the nature and values of exposures at those locations. Based on that information, U.S. Fire assessed the risk and calculated the appropriate premium for each policy.

A location identified as "Yard 105" was first reported to U.S. Fire in the statement of values dated September 1, 2004 submitted by Marsh with an invitation for U.S. Fire to offer terms for the renewal of Copart's insurance. The September 1, 2004 statement of values described Yard 105 as "20.288 acres" in "Hialeah, FL" and did not describe any buildings at the location. Nor did the September 1, 2004 statement of values state any values for any buildings, contents, computer equipment, contractor's equipment, inventory, or business interruption/extra expense exposure at Yard 105. From the statement, the location appeared to be an empty yard presenting no property insurance risks. Because no values were reported for the yard, no premium was charged for the yard.

The first report to U.S. Fire of any values for any risks at Yard 105 was an email dated August 10, 2005 advising that Yard 105 now had inventory worth $1.3 million. In response to the report, U.S. Fire charged and received an additional premium for the newly reported inventory values at Yard 105. Shortly thereafter, in connection with the negotiations over the terms of the 2005-06 Policy, Copart submitted a revised statement of values listing a street

address for Yard 105 and the previously-reported inventory value, but still no values for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure. Consequently, Copart paid no premium at the inception of the 2005-2006 policy for coverage for any risks at Yard 105 other than the inventory exposure.

Nonetheless, On October 28, 2005, Copart (through Marsh) gave notice to U.S. Fire of a claim for losses caused on or about October 24, 2005 by Hurricane Wilma at three locations in Florida, including building damage at Yard 105. Because Copart had never reported or paid premiums other than for inventory at Yard 105, and because any buildings at Yard 105 were not "Covered Property" as defined in the policy, U.S. Fire declined the claim. In this action, Copart sues for breach of contract and bad faith. U.S. Fire denies Copart's allegations and is counterclaiming for negligent misrepresentation of values, not only with respect to Yard 105 but also with respect to other locations.

**B.    The Production Requests at Issue[2]**

This motion concerns nine document requests propounded by U.S. Fire. Each of these requests is directed to obtaining entirely relevant information regarding the value of the property at Yard 105 allegedly destroyed by Hurricane Wilma. In response to one of the requests, Copart agreed to produce documents, but has not done so. In response to the other eight, Copart has asserted boilerplate objections claiming that the requests are vague, ambiguous, overbroad, unduly burdensome and seek documents neither relevant to the action nor reasonably calculated to lead to the discovery of admissible evidence. In each case, Copart has, despite its objections, magnanimously offered to produce "documents related to its property policies issued by USFIC"—i.e., documents that U.S. Fire already has—but not other documents that might support U.S. Fire's claims and defenses.

---

[2] The Statement of Discovery Requests and Responses in Dispute in Support of U.S. Fire's Motion to Compel Further Responses filed herewith sets forth each response in dispute and the basis for compelling a further response.

This motion also concerns six emails withheld from production by Copart for which U.S. Fire cannot ascertain the basis of the privilege asserted. Despite a request for clarification, Copart has neither adequately explained the claim of privilege, nor produced the documents.

## II. COPART'S BOILERPLATE OBJECTIONS ARE WITHOUT MERIT

Pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. <u>Obiajulu v. City of Rochester</u>, 166 F.R.D. 293, 295 (W.D. N.Y. 1996). Copart has intoned just such objections in its responses to certain of U.S. Fire's requests for production of documents. These boilerplate objections are without merit and the court should order Copart to produce responses in line with the letter and spirit of the Federal Rules.

A.    **U.S.Fire's Requests for Production Are Relevant**

    1.    <u>The Permissible Scope of Discovery Is Broad</u>

"Parties may obtain discovery regarding any matter, not privileged, that is <u>relevant to the claim or defense of any party</u>, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter <u>relevant to the subject matter</u> involved in the action." Fed. R. Civ. P. 26 (b)(1) (emphasis added).

The court in <u>Sanyo Laser Products, Inc. v. Arista Records, Inc.</u>, 214 F.R.D. 496 (S.D. Ind. 2003), analyzed the application of the above-stated rule in the context of a motion to compel responses to interrogatories and requests for production of documents in a copyright infringement case. In <u>Sanyo</u>, a music seller sought a declaration that it was not infringing on record companies' copyrights. The record companies counterclaimed alleging direct and vicarious infringement. During discovery, the record companies sought documents concerning business relationships between the plaintiff and certain affiliated entities to support the allegations of infringement against such entities.

First, the court found that the request for information regarding affiliated entities was "a

solid basis for discovery in this case since it relates to the Record Companies' claims and defenses." In addition, the court found that "[A]lthough SLP [plaintiff] alleges that its has voluntarily produced over 14,800 documents in discovery, the information requested is not unreasonably cumulative or duplicative, and in light of the important issues raised by the Record Companies in obtaining this information, it is not burdensome...." Id. At 502.

Second, the court held that in light of notice pleading standards, even if the requested documents were not relevant to defendants' claims or defenses, they were relevant to the subject matter at hand and the record companies had demonstrated sufficient good cause to obtain the broader discovery request. Id.

The court stated:

> Alternatively, bearing in mind the narrower discovery standards, even if the Record Companies did not plead in its counterclaim an agency relationship or a conspiracy between the alleged interrelated entities, the information sought here is still discoverable in light of the notice pleading standards. [cit. om.] As the Thompson court observed: [C]ounsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery. While the pleading will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer....[cit. om.]"

Id.

Under the Federal Rules, relevant information need not be strictly admissible in court; it is still discoverable if such information appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); Vardon Golf Co., Inc. v. BBMG Golf Ltd., 156 F.R.D. 641 (N.D. Ill. 1994).

In Vardon, the court was faced with a motion to compel certain discovery responses in a patent infringement matter. In determining how to allocate the burden to establish that the evidence sought was reasonably calculated to lead to the discovery of admissible evidence, the court stated:

> Therefore, we hold that where information sought in discovery would not be admissible due to an exclusionary rule in the Federal Rules of Evidence, the proponent of discovery may obtain discovery (1) by showing that the evidence is admissible for another purpose other than that barred by the Federal Rules of Evidence or (2) by articulating a plausible chain of inferences showing how discovery of the item sought would lead to other

<blockquote>
admissible evidence. <u>The proponent may do this by simply articulating what kind of information it reasonably expects to find in the documents sought and how this will lead to other admissible evidence.</u> The proponent need not show that the information expected is in fact in the items sought, but need only articulate why it is reasonable to believe that information of that nature would be revealed were discovery permitted.
</blockquote>

Id. at 651. (emphasis added)

2.   <u>U.S. Fire's Requests Are Well Within The Permissible Scope of Discovery</u>

Copart has sued U.S. Fire for declining a claim that Copart maintains is covered by its insurance policy despite the fact that Copart neither described any buildings at the location nor stated any values for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure in advance of the loss, nor paid any premium at the inception of the 2005-2006 policy for coverage for any buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure at Yard 105. Because U.S. Fire was provided with no information on which to calculate a premium, much less a loss, it must now investigate values for the very items for which Copart seeks reimbursement, e.g. buildings (RFP No. 18-19), personal property (RFP No. 20), computer equipment (RFP No. 21), and business interruption/extra expense (RFPS No. 22 and 23). Information concerning such values are a "solid basis for discovery" here, for several reasons.

First, information concerning the values could support U.S. Fire's defenses to Copart's claims for breach of contract and bad faith. If the damages that Copart is claiming exceed the values in Copart's own documents, those documents would serve as impeachment material. Even if the documents might only lead to the discovery of admissible evidence of the values in question, they would be discoverable on that basis.

Second, information concerning the values would go the crux of U.S. Fire's counterclaim for negligent misrepresentation. If Copart's internal documents or documents prepared for other insurers show values that are less than the values reported to U.S. Fire, those document would prove that Copart avoided paying premiums by underreporting values. U.S. Fire is entitled to any documents that may show (or lead to admissible evidence of) the true values of the risks U.S. Fire was asked to insure. Copart cannot be allowed to thwart discovery

on the misrepresentation claim by withholding documents that would test the accuracy of the representations it made to U.S. Fire.

**B.   U.S. Fire's Requests for Production Are Not Burdensome**

Bare assertions of undue burden do not suffice as a response to discovery requests. Tucker v. Ohtsu Tire and Rubber Co., 191 F.R.D. 495, 498 (D. Md. 2000) ("A conclusory assertion of burden and expense is not enough."); Jackson v. Montgomery Ward & Co., 173 F.R.D. 524 (D. Nev. 1997) ("Furthermore, just because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome."). The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal discovery rules. The objector must submit evidence that reveals the nature of the burden imposed by an allegedly overbroad request. Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D. N.Y. 1996) ("Instead, the party resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad."). Other than making generic objections based on undue burden, Copart has offered no specific explanation as to what the nature of the burden might be in responding to such requests. Moreover, even if producing all of the requested documents would be unduly burdensome, *Copart has no justification for producing no documents at all.*

### III. COPART HAS FAILED TO ADEQUATELY JUSTIFY CERTAIN CLAIMS OF PRIVILEGE

Parties withholding otherwise discoverable documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party to "assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). To meet this requirement, a privilege log should set forth the specific privilege under which a particular document was withheld. United States v. Construction Products Research, Inc., 73 F.3d 464, 473-474 (2nd Cir. 1996).

Copart has not met the required standard. U.S. Fire requested clarification for six documents listed in Copart's privilege log for which U.S. F`ire is not able to assess the applicability of any privilege. (See email dated October 18, 2007 from Samuel H. Ruby to Rick

Larson, attached as Exhibit C to the Declaration of Samuel H. Ruby filed herewith.) Copart has not responded to this request for clarification. U.S. Fire requests that the court compel Copart to either adequately justify its claim of privilege for the listed documents, or produce them.

## IV. CONCLUSION

U.S. Fire's requests for production are relevant both as to its claims and defenses and as to the subject matter of this action. Copart has not provided any justification for its claim of undue burden in responding to any of these requests. Copart has unreasonably failed to respond to U.S. Fire's requests for clarification of the basis for privilege asserted as to certain documents. Therefore, the Court should issue an order compelling Copart to respond to the disputed requests.

DATED: November 28, 2007

BULLIVANT HOUSER BAILEY PC

By _____/s/ Samuel H. Ruby_____
         Samuel H. Ruby

Attorneys for Defendant United States Fire Insurance Company