Jess B. Millikan (CSB#095540)
Samuel H. Ruby (CSB#191091)
Judith A. Whitehouse (CSB#198176)
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
jess.millikan@bullivant.com
samuel.ruby@bullivant.com
judith.whitehouse@bullivant.com

*Attorneys for Defendant*
United States Fire Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC., <br><br> Plaintiff, <br><br> vs. <br><br> CRUM & FORSTER INDEMNITY COMPANY,[1] UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No.: C 07 02684 CW-EDL <br><br> **E-FILING** <br><br> **U.S. FIRE'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL FURTHER RESPONSES TO DOCUMENT REQUESTS** <br><br> Hearing Date: January 15, 2008 <br> Time:   2:00 p.m. <br> Place:   Courtroom E, San Francisco <br><br> Hon. Elizabeth D. Laporte |

---

[1] Dismissed by Order Upon Stipulation (6/15/07).

6091255.1

– 1 –

US FIRE'S REPLY IN SUPPORT OF MOTION TO COMPEL

## INTRODUCTION

Just prior to filing its opposition, Copart served supplemental responses to U.S. Fire's document requests. The supplemental responses resolve or render moot many of the issues concerning Copart's initial responses. Copart has also amended its privilege log, and with one exception, the issues concerning its original privilege log are now moot. The issues still unresolved are as follows.[2]

## REQUEST NO. 15

Copart still has not produced any documents responsive to this request. Although Copart's counsel has represented that the documents will be produced before the hearing, that has not yet happened. Moreover, Copart *already* agreed to produce the documents several months ago, so U.S. Fire is understandably skeptical about this latest promise. If Copart does indeed produce the documents prior to the hearing, then the issue will be moot; but as of this writing, the issue is still unresolved.

## REQUEST NO. 18

Copart continues to object to Request No. 18 and continues to refuse to produce the requested documents: namely, all schedules of real property assets prepared or maintained by Copart (or on its behalf) for accounting or tax purposes since July 1, 2003. Notably, Copart does not deny that it has such documents. Copart simply asserts that such documents are irrelevant because they purportedly would not "reflect replacement values." This objection lacks merit, for two reasons.

First, Copart's opinion as to what the documents may or may not "reflect" is not determinative of its obligations to respond to discovery. If the asset schedules truly do not provide any information relevant to replacement cost value, then perhaps Copart would have grounds to exclude them from evidence at trial. However, U.S. Fire is not obligated to accept

---

[2] U.S. Fire will not respond to Copart's rhetoric concerning U.S. Fire's attempts to resolve these issues prior to and since filing its motion. Copart's comments are inaccurate but more importantly irrelevant; U.S. Fire did not seek sanctions in connection with its motion, and thus, saw no need (and still sees no need) to elaborate on the circumstances surrounding it. U.S. Fire regrets that its gesture of good faith and civility in not seeking sanctions has been met with unprofessional and sarcastic commentary, but rather than take the bait, U.S. Fire will confine this reply to the merits of the unresolved issues.

Copart's representations as to the content of the documents. U.S. Fire is entitled to see for itself if the documents bear in some way on the replacement cost value. Certainly they might—if for example Copart's asset schedules show values that are higher than the values that were reported to U.S. Fire, the schedules would support U.S. Fire's claim for misrepresentation and could lead to additional evidence through depositions.[3]

Moreover, the schedules may provide relevant information even if they do not reflect replacement cost values. For example, they may indicate when a particular property was acquired by Copart. Such information could reveal if Copart was timely reporting new acquisitions to U.S. Fire and paying the appropriate additional premiums.

## REQUESTS NOS. 19-21

Copart continues to object to Requests No. 19-21 and continues to refuse to produce the requested documents: namely, documents indicating the replacement cost values of the real and personal property that Copart contends are covered by the U.S. Fire policies.

Copart appears to argue that the relevance of such documents is limited to documents concerning Yard 105, which is the subject of Copart's complaint. Yet as explained in U.S. Fire's moving papers, the relevance extends to all yards in light of U.S. Fire's counterclaim for negligent misrepresentation of values *not only* at Yard 105 but generally. Yard 105 appears to have been but one location for which values were under-reported (or not reported at all). Because U.S. Fire's counterclaim is not limited to the values reported for Yard 105, Copart cannot arbitrarily limit discovery of the true values to Yard 105's values.

Copart also asserts that it does not know what U.S. Fire is seeking. However, the requests are clear enough—"all documents indicating or reflecting the replacement cost values of buildings [personal property, and computer equipment] . . . owned by you at any time since July 1, 2003." The most pertinent documents responsive to these requests would be the documents that Copart utilized to calculate the values that it reported to U.S. Fire. Not knowing what those documents were, U.S. Fire cannot ask for them more specifically. But if, for

---

[3] One potential scenario of particular significance would be if, on an asset schedule, Copart was carrying a value for a property for which it had reported *no value* to U.S. Fire.

1 example, Copart reported a replacement cost value for a certain building based on the price of
2 the contract to construct the building, Copart should produce that contract.

3 Copart asserts that it has no documents that reflect the replacement cost values "in
4 summary form." However, the requests are not limited to summaries. When Copart expressed
5 concern about the potential breadth of the requests and the potential burden of responding, U.S.
6 Fire agreed to accept summaries (such as asset schedules) in the first instance and defer
7 production of source documents pending evaluation of the adequacy of the summaries.
8 However, Copart then advised that it has no summaries. Thus, it is necessary that U.S. Fire
9 review whatever else Copart may have that would indicate the true replacement cost values and
10 allow comparison to the values reported to U.S. Fire.

11 In its opposition, Copart does not argue that it would be unduly burdensome to provide
12 any documents other than the non-existent summaries. Nor does Copart submit a supporting
13 declaration of any undue burden. Moreover, Copart has not offered to make any production at
14 all (limited or otherwise) in response to Requests Nos. 19-21. Copart simply stands on its
15 objections that only Yard 105's values are relevant. That is not correct, and the Court should so
16 rule.

## COPART'S PRIVILEGE LOG

18 Copart's amended privilege log fails to make a prima facie showing of privilege with
19 respect to a July 31, 2007 email from Mike Carson to Will Franklin and Simon Rote. Although
20 Copart is correct that communications between "high-ranking executives" and "in-house
21 counsel" are privileged, the log does not indicate the email in question was such a
22 communication. It shows only that the author and recipients were Carson, Franklin and Rote—
23 whom Copart identifies in its opposition as "high-ranking executives," none of whom is an
24 attorney.

25 Citing Scripps Health v. Superior Court (2003), 109 Cal. App. 4th 529, Copart asserts
26 that communications between non-lawyer employees may yet be privileged if the "dominant
27 purpose" of the communication is to relay information to or from counsel. However, in a
28 footnote, Copart says that the email in question was set by Carson on August 28, 2006 (prior to

1  U.S. Fire's declination of the claim, and prior to this litigation) and that it was not forwarded to
2  counsel until July 31, 2007 (after the claim was declined and after Copart filed this action).
3  Thus, there is no prima facie showing that when Carson authored the email on August 28, 2006,
4  it was intended for transmission (and was actually transmitted) to counsel. All we know from
5  the privilege log is that the email was sent to two non-lawyers and went no further until after
6  this suit was filed. A party cannot shield an unprivileged document from production merely by
7  forwarding it to counsel after suit has been filed.

## CONCLUSION

The Court should order Copart to produce documents responsive to Requests Nos. 15, 18, 19, 20, and 21. The Court should order Copart to produce the Carson email (or at least, further amend its privilege log to make a prima facie showing of privilege).

DATED: January 2, 2008

BULLIVANT HOUSER BAILEY PC

By  /s/ Samuel H. Ruby
    Samuel H. Ruby

Attorneys for Defendant United States Fire Insurance Company