# EXHIBIT I



1   Philip L. Pillsbury, Jr. (SBN 72261)
    Vedica Puri (SBN 176252)
2   Eric K. Larson (SBN 142791)
    PILLSBURY & LEVINSON, LLP
3   The Transamerica Pyramid
    600 Montgomery Street, 31st Floor
4   San Francisco, CA 94111
5   Telephone: (415) 433-8000
    Facsimile: (415) 433-4816
6   E-mail: ppillsbury@pillsburylevinson.com
7           vpuri@pillsburylevinson.com
            rlarson@pillsburylevinson.com
8
    Attorneys for Plaintiff
9   COPART INC.

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13  COPART INC.,                          )  Case No.  C 07 2684 CW-EDL
                                          )
14             Plaintiff,                 )  **PLAINTIFF COPART, INC.'S**
                                          )  **OBJECTIONS TO DEFENDANT**
15     vs.                                )  **USFIC'S FIRST SET OF ENTRY (SITE**
                                          )  **INSPECTION) REQUESTS**
16                                        )
    CRUM & FORSTER INDEMNITY              )
17  COMPANY, UNITED STATES FIRE           )
    INSURANCE COMPANY, and DOES 1-10,     )
18  Inclusive,                            )
                                          )
19             Defendants.                )
                                          )
20  _____  )
    AND RELATED CROSS-ACTION              )  Action Filed:  March 20, 2007
21                                        )  Trial Date:    November 10, 2008

22          Plaintiff Copart, Inc. ("Copart") objects to defendant United States Fire Insurance

23  Company's ("USFIC") request under FRCP, Rule 34 that "consultants retained by USFIC" be

24  permitted onto ten designated yards "so that the consultants may inspect, measure, survey, or

25  photograph the buildings or structures located there," on the following grounds:

26          1.      The request is vague and ambiguous as to the identity and expertise of the

27  unnamed consultants and the nature, purpose and extent of the proposed inspections,

28  measurements, surveys or photographs.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-1-

PLAINTIFF COPART INC.'S OBJECTIONS TO DEFENDANT          Case No.  C 07 2684 CW-EDL
USFIC'S FIRST SET OF ENTRY (SITE INSPECTION) REQUESTS

2.    The requested inspections are not reasonably calculated to lead to the discovery of admissible evidence. The requested inspections are, Copart assumes, to be conducted in order to formulate opinions as to the present values of yards and buildings thereon, although this is not readily apparent from the face of the request. The appraised value of the properties today has no relevance to the claims or counterclaims asserted in this case even assuming the viability of USFIC's negligent misrepresentation theory. Indeed, the Court, in a January 15, 2008 discovery hearing stated that "I don't think present values are relevant."

3.    Further, any alleged discrepancy between present values and past stated values is not relevant to the negligent misrepresentation claim, in any event, because such past statements are opinions as to future events and cannot constitute actionable representations as a matter of law.

4.    The requested inspections are overly intrusive and burdensome and would constitute an unreasonable interference in Copart's daily operations at those yards with no discernible purpose for the inspections. Further, Copart has offered to make available to USFIC documentary records that will show purchase price, construction expenditures and renovation expenditures for every yard. Thus, there is available a far less burdensome method to provide to USFIC what is more probative information (notwithstanding the ultimate irrelevance of that information to this action).

Dated:  April 22, 2008

PILLSBURY & LEVINSON, LLP

By: _____
Vedica Puri
Eric K. Larson
Attorneys for Plaintiff
COPART INC.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-2-

**PROOF OF SERVICE**

I, the undersigned, declare that I am a citizen of the United States; my business address is The Transamerica Pyramid, 600 Montgomery Street, 31st Floor, San Francisco, California 94111; I am employed in the City and County of San Francisco; I am over the age of eighteen (18) years and not a party to the within action.

On April 22, 2008, I served the foregoing document(s) described as

(1)    **PLAINTIFF COPART, INC.'S OBJECTIONS TO DEFENDANT USFIC'S FIRST SET OF ENTRY (SITE INSPECTION) REQUESTS**

on the interested party(ies) in this action by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

Jess B. Milikan
Samuel H. Ruby
Judith A. Whitehouse
BULLLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, CA 94108
Tel. 415-352-2700
Fax 415-352-2701

☒    BY MAIL:  I caused such envelope(s), fully prepaid, to be placed in the United States mail at San Francisco, California.  I am "readily familiar" with this firm's practice for collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the United States Postal Service the same day, with postage thereon fully prepaid, at San Francisco, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date on postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    BY FACSIMILE:  In addition to service by mail, on this date I transmitted a copy of the foregoing document(s) to the facsimile number(s) shown above.

☐    BY PERSONAL SERVICE:  I caused such envelope(s) to be delivered by WESTERN MESSENGER, a local San Francisco messenger service, by hand on the same day, addressed to the interested party(ies) at the address(es) set forth above.

☒    STATE:  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 22, 2008 at San Francisco, California.

*Sandra Bush*

Sandra Bush

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# EXHIBIT J

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COPY

COPART, INC,                        )

          PLAINTIFF,        )

VERSUS                              )        CASE NO. C07-2684EDL

                     )        JANUARY 15, 2008

CRUM AND FOERSTER                   )        SAN FRANCISCO, CALIFORNIA

INDEMNITY COMPANY, ET AL.,          )

         DEFENDANTS.     )

_____   )

BEFORE THE HONORABLE ELIZABETH D. LAPORTE

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

FOR PLAINTIFF:      PILLSBURY AND LEVINSON, LLP
                    BY:  ERIC K. LARSON, ESQ.
                    THE TRANSAMERICA PYRAMID
                    800 MONTGOMERY STREET 31ST FLOOR
                    SAN FRANCISCO, CALIFORNIA 94111


FOR DEFENDANTS:     BULLIVANT HOUSER BAILY PC
                    BY:  JUDITH A. WHITEHOUSE, ATTORNEY AT LAW
                    601 CALIFORNIA STREET SUITE 1800
                    SAN FRANCISCO, CALIFORNIA 94108







REPORTED BY:     JUANITA GONZALEZ

                 CSR NO. 3003

1          THE CLERK:  CALLING C-07-2684, COPART, INC. VERSUS CRUM

2    AND FOERSTER INDENMNITY COMPANY, ET AL.

3          YOUR APPEARANCES, PLEASE.

4          MR. LARSON:  ERIC LARSON FOR ON BEHALF OF COPART, INC.

5          MS. WHITEHOUSE:  JUDITH WHITEHOUSE FOR UNITED STATES

6    FIRE INSURANCE COMPANY.

7          THE COURT:  ALL RIGHT.  GOOD AFTERNOON.

8          WELL, I AM CONCERNED ABOUT WHETHER THERE WAS AN

9    ADEQUATE MEET AND CONFER THAT WAS REALLY CARRIED OUT.  I MEAN,

10   THE DEFENDANT DOESN'T REALLY RESPOND TO THAT, BUT IT'S NOT

11   IRRELEVANT, THE SUBJECT.  YOU KNOW -- THERE HAS TO BE AN

12   ADEQUATE MEET AND CONFER BEFORE YOU CAN BRING A MOTION.

13         MR. LARSON:  SHE IS THE MOVING PARTY.

14         THE COURT:  SORRY.

15         MS. WHITEHOUSE:  I BELIEVE THAT THE MEETING THAT

16   MR. LARSON AND MR. RUBY OF MY OFFICE HAD -- I HAVE TO REFER TO

17   THE DATES -- BUT ON THE TELEPHONE -- IN WHICH THEY DISCUSSED THE

18   ISSUE ABOUT THE INSUFFICIENCY OF THE DOCUMENT PRODUCTION AND THE

19   NEED, THE POTENTIAL NEED FOR ADDITIONAL -- SOME ADDITIONAL

20   EXPLANATION OF PRIVILEGES CLAIMED ON THE PRIVILEGE LOG.  I

21   BELIEVE THAT WAS IN OCTOBER OF THIS YEAR, AND WAS FOLLOWED UP BY

22   AN E-MAIL FROM MR. RUBY TO MR. LARSON SAYING, "THESE ARE THE

23   SPECIFIC ITEMS OF THE PRIVILEGE LOG THAT WE NEED SOME

24   INFORMATION ABOUT".

25         THE MEET AND CONFER --

1    THE COURT:  WELL, I GUESS, JUST LOOKING AT IT IN

2 HINDSIGHT, THEN ADDITIONAL DOCUMENTS WERE SENT.  THE MOTION WAS

3 ALREADY ON FILE.  AND THEY APPARENTLY E WERE UNDER THE

4 IMPRESSION THAT IT WAS STILL ONGOING.

5    MR. LARSON:  THE FACT OF THE MATTER IS, AFTER MY MEET

6 AND CONFER WITH MR. RUBY, I THEN SENT OUT A LETTER SETTING OUT

7 OUR POSITION AND ANSWERING A BUNCH OF HIS QUESTIONS, ON THE

8 15TH, AND A MOTION GOT FILED AFTER THAT WITHOUT A RESPONSE TO MY

9 LETTER.  IT LOOKED LIKE WE WENT BACK TO SQUARE ONE, THOSE MEET

10 AND CONFER DISCUSSIONS THAT NEVER HAPPENED.

11    WE WERE AT A LOSS AT THAT POINT TRYING TO FIGURE OUT

12 WHAT USFIC WAS REALLY LOOKING FOR IN THE WAY OF DOCUMENTS.  I

13 THOUGHT WE NARROWED IT DOWN TO A REASONABLE READING OF THE

14 DOCUMENT REQUEST.  WE WENT AND MADE INQUIRY OF THE CLIENT AS TO

15 WHETHER THOSE DOCUMENTS EXISTED OR I SHOULD SAY, ANY MORE

16 DOCUMENTS EXISTED, BECAUSE WE PRODUCED QUITE A LARGE NUMBER OF

17 DOCUMENTS, AND WE FOUND OUT THEY DIDN'T, AND I ENDED MY

18 RESPONSES ACCORDINGLY AND THEN GOT A MOTION ASKING -- I

19 THINK -- IT'S NOT CLEAR TO ME -- FOR A WHOLE OTHER UNIVERSE OF

20 DOCUMENTS.

21    THE COURT:  I AM GOING TO GO AHEAD AND DECIDE THIS

22 MOTION, BECAUSE I DON'T WANT TO DEFER IT AND HAVE IT COME BACK.

23 THAT'S THE ONLY REASON.  I'M NOT CONVINCED THERE WAS AN

24 ADEQUATE, COMPLETE MEET AND CONFER.  CERTAINLY THE OTHER SIDE

25 DIDN'T THINK SO.  SO IN THE FUTURE, I DON'T WANT THAT TO HAPPEN

1  AGAIN.

2          MS. WHITEHOUSE:  I UNDERSTAND.

3          THE COURT:  YOU'RE NOT SUPPOSED TO COME RUNNING IN HERE

4  UNTIL YOU FULLY -- A LOT OF THESE THINGS YOU SHOULD HAVE BEEN

5  ABLE -- THEY'RE THE KIND OF ISSUES, WITH THE POSSIBLE EXCEPTION

6  OF THE PRIVILEGE ONE, THAT SHOULD HAVE BEEN CAPABLE OF BEING

7  RESOLVED WITHOUT COMING TO COURT.  AS TO THAT  -- ALL RIGHT.

8  YOU'RE STILL DISPUTING REQUEST 15, DOCUMENTS ON THE CONSTRUCTION

9  OF BUILDINGS THAT ARE AT 105.

10          MR. LARSON:  I PRODUCED THOSE DOCUMENTS BEFORE THE

11  HEARING.

12          THE COURT:  ALL RIGHT.  SO THAT'S MOOT.

13          MS. WHITEHOUSE:  WELL, I HAVEN'T HAD A CHANCE TO REVIEW

14  THEM, BUT THEY HAVE BEEN PRODUCED.

15          MR. LARSON:  300 PAGES.  I DON'T EXPECT HER TO --

16          THE COURT:  ALL RIGHT.  THEN 18, LIST OF SCHEDULES OF

17  REAL PROPERTY ASSETS PREPARED OR MAINTAINED BY YOU FOR

18  ACCOUNTING AND TAX PURPOSES SINCE JULY 1, 2003.  DEFENDANT SEEMS

19  TO BE CORRECT THERE IS A COUNTERCLAIM FOR NEGLIGENT

20  REPRESENTATION THAT WOULD ENCOMPASS A BROADER RANGE THAN THE

21  INITIAL COMPLAINT.  I WOULD AGREE WITH THEM THEY DON'T HAVE TO

22  JUST ACCEPT PLAINTIFF'S REPRESENTATION THAT THE DOCUMENT IS

23  IRRELEVANT.  IT SEEMS THAT THE DEPRECIATION VERSUS REPLACEMENT

24  VALUE, SOME CIRCUMSTANCES ARE COMPLETELY DIFFERENT AND SOME

25  CIRCUMSTANCES THEY DO RIGHT TO EACH OTHER.  I'D BE INCLINED TO

1   HAVE YOU PRODUCE THAT.  I'M NOT SURE WHAT THERE IS.

2              MR. LARSON:  THERE IS ONE CALLED FIXED ASSET LIST, AND

3   AT THIS POINT, THE VERSION I HAVE SEEN IS FROM THIS YEAR.  I

4   DON'T EVEN KNOW IF THERE ARE HISTORICAL VERSIONS OF IT.  I THINK

5   IT MAY BE A LIVING DOCUMENT.  IN FACT, THE BUILDING THAT'S AT

6   ISSUE HERE, YARD 105 IN FLORIDA, WAS DESTROYED BY HURRICANE

7   WILMA, IS NOT EVEN ON THAT LIST BECAUSE IT'S BEEN DESTROYED.

8              THE COURT:  THE COUNTERCLAIM I GUESS IS IS BROADER?

9   YOU'RE COUNTERCLAIMING AS TO OTHER BUILDINGS AS WELL?

10             MS. WHITEHOUSE:  YES.

11             THE COURT:  WHAT ABOUT THE TIME FRAME, WHAT'S THE

12  RELEVANT TIME FRAME?  I THINK THE IDEA THERE IS TO GET PAST THE

13  HURRICANES THAT STIMULATED THIS ENTIRE SITUATION AND GET BACK TO

14  SEE WHAT OTHER VALUES MAY HAVE BEEN MISSTATED.

15             MS. WHITEHOUSE:  PRIOR?

16             THE COURT:  IN OTHER WORDS, PRIOR TO THE DISPUTE

17  ARISING, NOT TO THE PRESENT, RIGHT?

18             MS. WHITEHOUSE:  RIGHT.

19             MR. LARSON:  MAY I MAKE ONE MORE POINT?  THE NEGLIGENT

20  MISREPRESENTATION CLAIM, WHICH IS WHAT THEY FOCUS ON, AT BEST,

21  ASSUMING THEY WIN ON THAT, WHAT THEY WOULD GET ARE THE PREMIUMS

22  IT WOULD HAVE CHARGED, OTHERWISE WOULD HAVE CHARGED FOR YARD

23  105; SO ALL THESE OTHER HUNDREDS OF YARDS COULD NOT BE RELEVANT

24  EVEN IF YOU DO COMPEL THE PRODUCTION OF THIS FIXED ASSETS LIST

25  OR ANY OTHER DOCUMENTS TODAY.  THEY HAVE TO BE LIMITED TO YARD

1  105.  THAT IS ANOTHER ISSUE I THOUGHT WE HAD GOTTEN BEYOND IN

2  OUR MEET AND CONFER EFFORTS, AND WE SORT OF GOT BACK TO SQUARE

3  ONE WHERE IT SEEMS LIKE THEY ARE LOOKING FOR EVERY ILLUSTRATION

4  IN MY OPPOSITION.

5         THE COURT:  PLAINLY, I AGREE WITH THAT, BUT PART OF

6  THAT IS THE DATE.  I DON'T UNDERSTAND ENOUGH ABOUT WHAT YOU JUST

7  SAID, AND IT WASN'T CLEAR IN THE PAPERS AS TO WHY ANY OF IT

8  WOULD BE IRRELEVANT, EVEN THOUGH THEY SAY THEIR CLAIM GOES

9  BEYOND.  SO I DO THINK THERE IS A TIME CUT-OFF, SO THE TIME

10  CUT-OFF SHOULD BE WHAT?  IN OTHER WORDS, I DON'T THINK PRESENT

11  VALUES ARE RELEVANT.  I DON'T THINK YOU'RE ARGUING THAT.  SO

12  WHAT'S THE DATE?

13         MR. LARSON:  ASSUMING IT'S RELEVANT, IT WOULD HAVE TO

14  BE BEFORE THE HURRICANE, OCTOBER 2, 2005.

15         THE COURT:  IT'S NOT STAMPED IN MY MEMORY.  I DON'T

16  KNOW IF IT'S RELEVANT OR NOT, BUT I DON'T THINK IT'S

17  SUFFICIENTLY SHOWN THAT IT WASN'T IN THE PAPERS THEMSELVES.  IF

18  YOU HAVE THAT DOCUMENT AS OF THAT DATE OR BEFORE, PROVIDE IT.

19  IF IT'S ONLY CURRENT AND IT HAS NOTHING THAT DATES BACK TO THOSE

20  DATES, THEN YOU CAN JUST REPRESENT THAT AND NOT PROVIDE IT.

21         MR. LARSON:  JUST AS TO YARD 105?

22         MS. WHITEHOUSE:  NO.

23         THE COURT:  NO.  YOU SAY IT'S A DOCUMENT.  HOW LONG ARE

24  WE TALKING ABOUT?

25         MR. LARSON:  IT'S COUPLE OF HUNDRED PAGES.

1    THE COURT:  ALL RIGHT.  WELL, IT'S NOT LIMITED, FOR THE

2  REASONS I SAID.  I DON'T THINK YOU MADE THAT ARGUMENT.  I DON'T

3  KNOW WHETHER IT'S RIGHT OR WRONG.  I WOULD HAVE TO LOOK AT IT

4  MUCH MORE DEEPLY THAN WAS BIEFED IN THE PAPERS.

5    SO THEN AS TO REQUEST 19, 20 AND 21, WHICH IS MORE TO

6  DO WITH REPLACEMENT COST.  THE DEFENDANT IS REALLY ONLY SAYING

7  VERY PERTINENT DOCUMENTS ARE USED TO CALCULATE THE VALUES THAT

8  WERE REPORTED TO DEFENDANT, WHICH SEEMS TO ME THE ONLY THING

9  THAT MIGHT BE WORTHWHILE.  I DON'T KNOW TO WHAT EXTENT THERE ARE

10  ANY SUCH THINGS.

11    MR. LARSON:  I DON'T THINK THERE ARE, YOUR HONOR.

12  CERTAINLY NOT SAVED IN A SYSTEMATIC WAY.

13    THE COURT:  I MEAN -- WELL, DOCUMENTS THAT WERE USED TO

14  CALCULATE VALUES REPORTED TO THE DEFENDANT, CERTAINLY AS TO THE

15  PROPERTY OF YARD 105, WOULD BE RELEVANT, OBVIOUSLY.  HAVE YOU

16  LOOKED FOR THOSE?

17    MR. LARSON:  WELL, FOR YARD 105, WE HAVE GIVEN THEM

18  EVERY SHRED OF DOCUMENT WE HAVE.  WE'VE GIVEN THEM ALL THE

19  INVOICES INCLUDED IN THE DOCUMENTS I JUST GAVE TODAY, EVERY

20  CONSTRUCTION INVOICE GOING BACK TO THE TIME OF PURCHASE OF YARD

21  105.

22    THE COURT:  WELL, I THINK YOUR REQUEST IS JUST -- IT'S

23  DISPROPORTIONATE AND OF TANGETIAL RELEVANCE AT MOST.  UNLESS YOU

24  CAN NARROW IT SOME WAY THAT MAKES SENSE, I WOULD DENY IT.

25    MS. WHITEHOUSE:  NOT KNOWING WHAT HAS BEEN PRODUCED

1  TODAY, I HAVE NO IDEA WHAT I'VE GOT.

2          THE COURT:  I'LL DENY IT WITHOUT PREJUDICE.  LOOK AT

3  WHAT YOU'VE GOT NOW.  IF YOU ARE STILL UNSATISFIED, HAVE A REAL

4  MEET AND CONFER, AND AT MOST, SEEK SOMETHING FAR MORE NARROW

5  THAN YOU ASKED FOR, BECAUSE IT'S BROAD.

6          NOW, AS TO THE PRIVILEGE LOG, I'M NOT INCLINED TO THINK

7  THAT THERE IS ADEQUATE PRIVILEGE SHOWN, CERTAINLY ON THE LOG

8  ITSELF, BECAUSE IT'S SO LONG BEFORE.  IT'S NON-ATTORNEYS, AND

9  ALTHOUGH THAT BY ITSELF ISN'T SUFFICIENT, THERE IS A BIG ELAPSE

10  OF TIME.  COMMUNICATION WAS ORIGINALLY TRANSMITTED ON

11  AUGUST 28, 2006 AND IT WAS ALMOST A YEAR LATER THAT IT WAS

12  TRANSMITTED TO COUNSEL, AS I UNDERSTANDIT.

13          MR. LARSON:  THAT'S NOT TRUE.  THAT IS A CONCLUSION

14  THEY DREW FROM -- THERE IS A DATE ON IT OF JULY 31, 2007.  THAT

15  IS ACTUALLY FROM THE VICE PRESIDENT OF FINANCE TO HIS ASSISTANT,

16  WAS THE JULY 31, 2007 DATE.  THAT'S THE WRONG DATE I HAD IN THE

17  PRIVILEGE LOG TO BEGIN WITH, BECAUSE THAT WAS THE DATE AT THE

18  TOP OF THE E-MAIL.

19          THE COURT:  IT WAS A MISTAKE IN THE PRIVILEGE LOG?

20          MR. LARSON:  YES.

21          THE COURT:  HAVE YOU CORRECTED -- NOBODY GAVE ME THAT

22  PRIVILEGE LOG, BY THE WAY, WHICH SEEMS LIKE I WOULD NEED THAT.

23          MR. LARSON:  ALSO, YOU WERE ASSIGNED THIS CASE AFTER WE

24  DID THE PRIVILEGE LOG, AND LOOKING AT YOUR STANDING ORDER, I

25  DON'T THINK IT'S AS DETAILED AS THE COURT WOULD LIKE.

1    ONE OF THE ALTERNATIVES THAT USFIC YOU GAVE IN THEIR

2  REPLIES -- AT LEAST TRIED TO MAKE A SHOWING INTO THE AMENDED

3  PRIVILEGE LOG-- I WOULD BE WILLING TO GIVE THAT A SHOT.  IF IT

4  DOESN'T RESOLVE IT AT THAT POINT, I THINK WE CAN PROBABLY JUST

5  GIVE YOU -- IT'S A SINGLE PAGE -- GIVE YOU A LETTER IN-CAMERA.

6    THE COURT:  I THINK THAT MAKES SENSE.  GO AHEAD AND

7  REVISE YOUR PRIVILEGE LOG TO COMPLY WITH MY STANDING ORDER.  AND

8  IF IT APPEARS TO BE PRIVILEGED, DON'T SUBMIT IT TO ME.  IF YOU

9  HAVE A REALLY, TRUE, GENUINE, GOOD FAITH DISPUTE, NONETHELESS,

10 THEN SUBMIT IT IN-CAMERA.

11    HOW QUICKLY CAN THAT BE DONE?

12    MR LARSON:  A WEEK FROM TOMORROW.

13    THE COURT:  FINE.

14    ANYTHING FURTHER?

15    LET'S SEE.  IT'S YOUR MOTION.  WILL YOU PREPARE AN

16 ORDER?

17    MS. WHITEHOUSE:  CERTAINLY.

18    THE COURT:  GIVE IT TO ME BY THE END OF THE WEEK.

19    THANK YOU.

20

21

22

23

24

25

1

2

3

4

5

6

7

8          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

9   TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.

10

11

12

13

14

15

16

17

18   _____

19   JUANITA GONZALEZ

20   CSR NO. 3003

21

22

23

24

25

1

2

3

4

5

6

7

8

9       I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

10   TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.

11

12

13

14

15

16

17

18

19   _____

20   JUANITA GONZALEZ

21   CSR NO. 3003

22

23

24

25

# EXHIBIT K

| | N | O | P | Q | R | S | T |
|---|---|---|---|---|---|---|---|
| | | COPE INFORMATION | | | | | |
| 5 | Sprinklers Yes / No | Approx. Sq. Ft. | Alarm System Yes / No | Age of Building | # of Bldgs. | # of Acres | Owned or Leased |
| 6 | Yes | 8,800 | Yes | 1985 | 3 | 17 | Leased |
| 7 | Yes | 12,600 | Yes | 2005 | 1 | 38 | Owned |
| 8 | Yes | 900 | Yes | 1987 | 1 | 5 | Leased |
| 9 | No | 10,950 | Yes | 1986 | 3 | 20 | Leased |
| 10 | | | | | | 30 | Both |
| 11 | No | 2,700 | Yes | 1985 | 1 | 15 | Owned |
| 12 | No | 7,200 | Yes | 2004 | 1 | 14 | Leased |
| 13 | No | 31,400 | Yes | 2001 | 4 | 30 | Both |
| 14 | No | 12,000 | Yes | ? | 3 | 38 | Both |
| 15 | No | 2,850 | Yes | 1994 | 2 | 11 | Both |
| 16 | Yes | 18,000 | Yes | 2003 | 1 | 158 | Owned |
| 17 | No | 27,000 | Yes | 1986? | 7 | 103 | Owned |
| 18 | No | 11,200 | Yes | 2001/1990 | 2 | 22 | Leased |
| 19 | No | 8,984 | Yes | 2001 | 3 | 44 | Leased |
| 20 | Yes | 5,800 | Yes | 1984 | 2 | 71 | Both |
| 21 | Yes | 37,000 | Yes | 1994 | 3 | 15 | Leased |
| 22 | No | 9,700 | Yes | ? | 2 | 66 | Owned |
| 23 | No | 20,873 | Yes | 2001: approx 1975 | 2 | 36 | Owned |
| 24 | No | 6,700 | Yes | 1999 | 1 | 30 | Owned |
| 25 | No | 10,762 | Yes | 1995;1952 | 2 | 48 | Both |
| 26 | No | 14,623 | Yes | 1992;2003;1982 | 3 | 53 | Both |
| 27 | No | 7,200 | Yes | 2005 | 1 | 40 | Owned |
| 28 | No | 20,400 | Yes | 1999;1970;1970 | 3 | 45 | Owned |
| 29 | No | 10,000 | Yes | 1991;approx 1930 | 2 | 25 | Owned |
| 30 | Yes | 9,200 | Yes | 2003 | 1 | 33 | Owned |
| 31 | No | 27,300 | Yes | ? | 4 | 44 | Both |
| 32 | Yes | 41,000 | Yes | late 1960's;late 1970's | 4 | 28 | Owned |
| 33 | No | 87,720 | Yes | 2002 | 1 | 61 | Leased |
| 34 | Yes | 8,185 | Yes | ? | 3 | 34 | Both |
| 35 | No | 12,150 | Yes | 2000;1995 | 2 | 50 | Owned |
| 36 | Yes | 8,000 | Yes | 1985? | 1 | 26 | Leased |
| 37 | No | 8,900 | Yes | ? | 1 | 39 | Owned |
| 38 | | | | | | 18 | Leased |
| 39 | No | 4,000 | Yes | 1992 | 1 | 17 | Leased |
| 40 | No | 11,500 | Yes | 2000 | 3 | 51 | Owned |

CPT001200
CONFIDENTIAL

# EXHIBIT L

126410
ASSET
PERIOD2005

Copart Inc.
Fixed Assets Master List
By Location
As of July 31, 2005

180
01/17/08
11:26:10

| Item Number | Description | Yard | Date Acquired | Date Disposed | Life Months | Dep. Method | Original Cost | Accum Amort. | Net Book Value |
|---|---|---|---|---|---|---|---|---|---|
| | 00070 070 West Palm | | | | | | | | |
| | 2010 Land | 04/01/00 | | | | | | | |
| 00071984 | Land - Parcel A (Yard 70) | 70 | 03/01/00 | | | 00 | | | |
| 00071992 | Land - Parcel B (Yard 70) | 70 | 03/01/00 | | | 00 | | | |
| 00072004 | Land - Parcel C (Yard 70) | 70 | 03/01/00 | | | 00 | | | |
| | 2010 Land | | | | | 00 | | Dollar amount redacted. | |
| | 2020 Computer Equipment | | | | | | | | |
| 00072119 | CABLE YARD 70 | 70 | 03/31/00 | | 60 | 01 | | | |
| 00072538 | CABLE SYST CNTRLR W/1 TWINAX | 70 | 03/27/00 | | 60 | 01 | | | |
| 00072590 | COMPUTER EQUIPMENT FOR YARD | 70 | 03/31/00 | | 60 | 01 | | | |
| 00073066 | EPSON PRNTR & STAND | 70 | 04/12/00 | | 60 | 01 | | | |
| 00073074 | EPSON PRINTER | 70 | 04/25/00 | 04/30/05 | 60 | 01 | | Dollar amount redacted. | |
| 00074405 | PENTIUM SYST W/MONITO | 70 | 05/31/00 | 06/30/05 | 60 | 01 | | | |
| 00074528 | FUJI SCANNER 620C | 70 | 05/31/00 | | 60 | 01 | | | |
| 00074536 | NETWORK PRINTER MEMORY CABLE | 70 | 05/31/00 | 04/30/07 | 60 | 01 | | | |
| 00075518 | PENTIUM SYSTEM W/15" MONITOR | 70 | 06/16/00 | | 60 | 01 | | | |
| 00098327 | CISCO ROUTERS | 70 | 05/31/02 | 12/31/05 | 36 | 01 | | | |
| 00102437 | EPSON DFX5000 PRINTER | 70 | 08/30/02 | 06/30/05 | 36 | 01 | | | |
| 00102832 | EPSON PRINTER | 70 | 09/30/02 | 06/30/05 | 36 | 01 | | | |
| | 2020 Computer Equipment | | | | 672 | 01 | | | |
| | 2025 Computer Equipment Maint | | | | | | | | |
| 00111675 | CABLE YARD 70 - NEW BLDG | 70 | 05/30/03 | | 60 | 01 | | | |
| 00112230 | CABLE YARD 70 - INS. OFFICE | 70 | 06/10/03 | | 60 | 01 | | Dollar amount redacted. | |
| 00115490 | 12 CLT ET 2000 TERMINALS | 70 | 10/31/03 | | 60 | 01 | | | |
| | 2025 Computer Equipment Maint | | | | 180 | 01 | | | |
| | 2030 Leasehold Improvements | | | | | | | | |
| 00083475 | FENCE | 70 | 02/28/01 | | 60 | 01 | | | |
| 00083483 | GRADING/PAVING | 70 | 02/28/01 | | 60 | 01 | | | |
| 00083491 | LANDSCAPE | 70 | 02/28/01 | | 60 | 01 | | Dollar amount redacted. | |
| 00108854 | SITE WORK | 70 | 01/31/03 | | 60 | 01 | | | |
| 00111570 | GATE OPERATOR | 70 | 04/30/03 | | 60 | 01 | | | |
| 00116388 | INSURANCE OFFICE RENOVATION | 70 | 10/31/03 | | 60 | 01 | | | |
| | 2030 Leasehold Improvements | | | | 360 | 01 | | | |
| | 2035 Leasehold Improvements Maint | | | | | | | | |
| 00126421 | PLUMBING & BLDG REPAIRS | 70 | 06/30/04 | | 60 | 01 | | Dollar amount redacted. | |
| | 2035 Leasehold Improvements Maint | | | | 60 | 01 | | | |
| | 2040 Buildings | | | | | | | | |
| 00071693 | METAL BUILDING OR THRU | 70 | 03/29/00 | | 480 | 01 | | | |
| 00071941 | Buildings on Parcel A (2) | 70 | 03/01/00 | | 480 | 01 | | | |
| 00071950 | Building on Parcel B | 70 | 03/01/00 | | 480 | 01 | | Dollar amount redacted. | |
| 00083459 | BUILDING RENOVATIONS | 70 | 02/28/01 | | 480 | 01 | | | |
| | 2040 Buildings | | | | 1,920 | 01 | | | |

Confidential CPT002320

126410
ASSET
PERIOD2005

Copart Inc.
Fixed Assets Master List
By Location
As of July 31, 2005

181
01/17/08
11:26:10

| Item Number | Description | Yard | Date Acquired | Date Disposed | Life Months | Dep. Metho | Original Cost | Accum Amort. | Net Book Value |
|---|---|---|---|---|---|---|---|---|---|
| | 00070 070 West Palm     04/01/00 | | | | | | | | |
| | 2050 Fixtures & Equipment | | | | | | | | |
| 00073082 | 00073082 NEC ELECTRA ELITE 192 | 70 | 04/30/00 | | 60 | 01 | | | |
| 00074270 | 00074270 yard signs | 70 | 05/19/00 | | 60 | 01 | | | |
| 00083467 | 00083467 CUBICLES | 70 | 02/28/01 | | 60 | 01 | Dollar amount redacted. | | |
| 00083504 | 00083504 OFFICE FURNITURE | 70 | 02/28/01 | | 60 | 01 | | | |
| 00083512 | 00083512 FUEL TANK & PUMP | 70 | 02/28/01 | | 60 | 01 | | | |
| | 2050 Fixtures & Equipment | | | | 300 | 01 | | | |
| | 2055 Fixtures & Equipment Maint | | | | | | | | |
| 00112846 | 00112846 FURNITURE | 70 | 07/22/03 | | 60 | 01 | | | |
| 00113620 | 00113620 PHONE SYSTEM CABLING-NEW BLD | 70 | 08/14/03 | | 60 | 01 | Dollar amount redacted. | | |
| 00128207 | 00128207 ADP TIME CLOCK | 70 | 07/31/04 | | 60 | 01 | | | |
| | 2055 Fixtures & Equipment Maint | | | | 180 | 01 | | | |
| | 2060 Yard Equipment | | | | | | | | |
| 00130956 | 00130956 DIESEL TANK | 70 | 01/12/05 | 04/30/07 | 60 | 01 | Dollar amount redacted. | | |
| | 2060 Yard Equipment | | | | 60 | 01 | | | |
| | 2320 Goodwill/Customer List | | | | | | | | |
| 00071933 | 00071933 Purchase of TDP,Inc :License | 70 | 03/01/00 | | 480 | 00 | Dollar amount redacted. | | |
| | 2320 Goodwill/Customer List | | | | 480 | 00 | Dollar amount redacted. | | |
| | 00070 070 West Palm     04/01/00 | | | | 4,212 | 00 | Dollar amount redacted. | | |

Confidential CPT002321