Jess B. Millikan, SBN 095540
Samuel H. Ruby, SBN 191091
Judith A. Whitehouse, SBN 198176
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
jess.millikan@bullivant.com
samuel.ruby@bullivant.com
judith.whitehouse@bullivant.com

Attorneys for Defendant
United States Fire Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COPART INC., <br><br> Plaintiff, <br><br> vs. <br><br> CRUM & FORSTER INDEMNITY COMPANY[1], UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Case No.: C 07 2684 CW (EDL) <br><br> **OPPOSITION TO COPART INC.'S MOTION FOR PROTECTIVE ORDER** <br><br> Date: June 17, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom E, 15th Floor <br><br> Action File: March 20, 2007 <br> Trial Date: November 10, 2008 |

## I. INTRODUCTION

Copart has not demonstrated the requisite "good cause" to justify a protective order to prohibit the site inspections requested by U.S. Fire. The requests are relevant to U.S. Fire's counterclaim for negligent misrepresentation and are reasonably calculated to lead to the discovery of admissible evidence. Copart fails to demonstrate that compliance with the requests would be unduly burdensome. Therefore, Copart's motion should be denied.

A.  **Case Background and Issues**

Contrary to Copart's assertion, this lawsuit is not only about the loss claimed for Yard

---

[1] Dismissed by Order Upon Stipulation (6/15/07)

105, but also about the property values submitted to U.S. Fire by Copart, through its insurance broker, Marsh, Inc. U.S. Fire insured Copart under a series of commercial property policies over the period 2003 to 2007. As part of the initial application for insurance in 2003, and with each subsequent renewal, Marsh submitted to U.S. Fire statements listing locations owned or operated by Copart and indicating the nature and values of exposures at those locations. U.S. Fire relied on these values, as it is entitled to do, in assessing the risk and calculating the appropriate premium for each policy. It is implicit in this process that to qualify as "Covered Property" under the respective policies, a building must be described in the statement of values upon which that policy was based.[2]

On October 28, 2005, Copart (through Marsh) gave notice to U.S. Fire of a claim for losses caused on or about October 24, 2005 by Hurricane Wilma at three locations in Florida, including building damage at Yard 105. However, the statement of values, dated August 8, 2005, provided by Marsh to U. S. Fire for calculation of the 2005-2006 policy[3], did not report anything other than inventory at Yard 105; no values were reported for buildings, contents, computer equipment, contractor's equipment, or business interruption/extra expense exposure. Because no such values had been reported prior to issuance of the policy, Copart paid no premium at the inception of the 2005-2006 policy for coverage for any risks at Yard 105 other than the inventory exposure.

Several days later, Copart supplied Marsh with an updated statement. At that time, Simon Rote of Copart advised, "I made some guesses [as to values] . . . It appears that yard 70

---

[2] Copart incorrectly states as "fact" that "[T]he subject October 2005-2006 policy provides coverage to any property in the SOV designated as a location." Plaintiff Copart Inc.'s Notice of Motion and Motion for Protective Order; Memorandum of Points and Authorities in Support Thereof; 3: 6-7. U.S. Fire disputes this interpretation of the policy and asserted a cause of action for reformation in its counterclaim based on its contention that the mutual intent of the parties at the time the insurance contract was formed was that "the policy would cover only buildings, personal property and other exposures for which values were reported in the August 8, 2005 statement of values." Counterclaim by United States Fire Insurance Company; 8:19-22. For the Court's convenience, a copy of U.S. Fire's counterclaim is attached as Exhibit A to the Declaration of Judith A. Whitehouse, served herewith.

[3] See Statement of Values dated August 8, 2005 attached as Exhibit B to the Declaration of Judith A. Whitehouse, served herewith.

and 105 have the most damage."[4] With respect to Yard 105, the new statement listed a value of $750,000 for buildings. However, Marsh did not forward the new statement to U.S. Fire, and the 2005-2006 policy was issued on the basis of the last statement of values (dated August 8, 2005) submitted to U.S. Fire.

In February 2006, months <u>after</u> the hurricane-related events, Marsh provided U.S. Fire with an updated statement of values dated January 1, 2006.[5] This was the first statement of values that U.S. Fire ever received that stated any building, contents or business interruption values for Yard 105. With respect to Yard 105, and despite the reported hurricane damage there, the revised statement reported values consistent with what Rote had reported to Marsh in November 2005, i.e. buildings valued at $750,000, although there is no information to indicate the number or type or size of those buildings.[6]

In addition, the revised statement "updated [other] values for some previously reported locations," showed "values for newly acquired locations not previously reported," and "updated COPE" information about some locations.[7] It was the first indication that property values at certain other locations may have been underreported in prior statements. For example:

| Yard No. | Value of Building & Improvements as Reported on SOV dated 8/8/05 | No. of Buildings as Reported on SOV dated 8/8/05 | Value of Building & Improvements as Reported on SOV dated 1/1/06 | No. of buildings as Reported on SOV dated 1/1/06 |
|---|---|---|---|---|
| 6 | $500,000 | 6 | $1,100,000 | 1 |

---

[4] See email dated November 1, 2005 from Simon Rote to Patrice McIntyre at Marsh, Inc. attached as Exhibit C to the Declaration of Judith A. Whitehouse, served herewith.

[5] See Statement of Values dated January 1, 2006 attached as Exhibit D to the Declaration of Judith A. Whitehouse served herewith.

[6] In September 2006, Marsh submitted an updated statement for U.S. Fire to assess the risk and premiums for the 2006/2007 policy. That statement showed the same values for Yard 105 but added information on the number of buildings (three), the construction type (modular), and the age of the buildings (2005). This information appears to be for temporary structures Copart installed after the hurricane, not the structures that stood before the loss. See Statement of Values dated September 20, 2006 attached as Exhibit E to the Declaration of Judith A. Whitehouse, served herewith.

[7] See email dated February 1, 2006 from Patrice McIntyre at Marsh to Monica Streaker at U.S. Fire attached as Exhibit F to Declaration of Judith A. Whitehouse, served herewith.

| | | | | |
|---|---|---|---|---|
| 9 | $800,000 | 3 | $1,500,000 | 3 |
| 11 | $1,002,800 | Not provided | $2,200,000 | 1 |
| 34 | $700,000 | Not provided | $1,000,000 | 3 |
| 105 | 0 | 0 | $750,000 | Not provided |

In response to the new statement of values, U.S. Fire issued an endorsement retroactive to the date of the new statement of values, but not to the inception of the policy. Therefore, at the time of the hurricane, there was no coverage for any buildings at Yard 105.

Because Copart had never reported or paid premiums other than for inventory at Yard 105, and because any buildings at Yard 105 were not "Covered Property" as defined in the policy, U.S. Fire declined the claim. Copart subsequently sued for breach of contract and bad faith, seeking costs to replace buildings at Yard 105.[8] On the basis of responses to discovery, U.S. Fire understands costs to replace the larger building alone to be over $1 million[9], an amount that far exceeds any values ever reported to U. S. Fire for any buildings at Yard 105, either before or after the reported loss. U.S. Fire denies Copart's allegations and is counterclaiming for reformation and negligent misrepresentation of values, not only with respect to Yard 105 but also with respect to other locations.

B. **Information Gathered in the Site Inspections is Relevant**

The statements of value provided by Copart to U.S. Fire are not reliable as evidenced by the complete lack of information regarding any buildings at Yard 105 until <u>after the reported loss</u>, and the dramatic changes in value to certain other properties. The fixed asset reports and the construction in progress report provided during discovery do not support in all cases, the values reported to U.S. Fire. U.S. Fire is entitled to inspect certain sites of its choosing to verify

---

[8] In support of its argument, Copart inexplicably attempts to equate cumulative premium payments with the amount of coverage payments due on loss. There is no such connection. Premium payments are calculated for the period of a particular policy as a function of risk and the value of property insured against potential loss. Copart negotiated its insurance contract with U.S. Fire for each annual policy, paying a different premium each year for coverage <u>during that year</u>, not as installment payments for future coverage.

[9] See letter dated August 20, 2007 from TBT Industries to Mike Carson at Copart, attached as Exhibit G to Declaration of Judith A. Whitehouse served herewith.

the information on which it relied to issue insurance coverage to Copart.

U.S. Fire served two site inspection requests, the first covering 10 Copart yards in California and Florida, and the second covering an additional eight yards, also in California and Florida.[10]  Each request seeks entry onto the designated land so that U.S. Fire's construction consultants "may inspect, measure, survey or photograph the buildings or structures located there." U.S. Fire further specifies in both sets of requests that no testing, destructive or otherwise will be performed.  U.S. Fire also agreed to provide the names of the consultants chosen at least 7 days prior to the inspections.

Copart objects to these inspections as intrusive and duplicative of the documentation produced in response to other U.S. Fire's discovery requests.  However, the documents provided by Copart to date do not support the changes in values reported to U.S. Fire for Yard 105, as well as other locations.  For example, as described above, Copart reported <u>no values</u> for any buildings at Yard 105 until <u>after the reported loss</u>.

Another example is Yard 34 in Tampa, Florida, one of the yards U.S. Fire seeks to inspect.  Copart reported buildings valued at $700,000 for Yard 34 in its statement of values dated August 8, 2005. On the statement of values dated January 1, 2006, the same yard is reported to have buildings valued at $1,000,000.  The construction in progress report does not indicate any improvements in the property during this period that could account for this dramatic change.[11]

U.S. Fire cannot rely on the statements of value provided, nor on the fixed asset reports or the construction in progress report.  Moreover, Copart has produced no appraisals for its properties despite U. S. Fire's requests.  Therefore, U.S. Fire seeks to have its own construction experts inspect 18 yards, including Yard 34, to determine if in fact the values reported by Copart, the values on which U.S. Fire relied to calculate the risk and corresponding premiums

---

[10] See site inspection requests served by U.S. Fire attached as Exhibits H and I respectively to the Declaration of Judith A. Whitehouse served herewith.

[11] See excerpt from Construction Progress Report, Projects Completed between January 1, 2000 and July 31, 2007, for Yard 34 attached as Exhibit J to Declaration of Judith A. Whitehouse served herewith.

for the insurance policies issued to Copart, are reasonable,. Such inspections are well within the scope of permitted discovery and Copart's motion for a protective order should be denied.

## II. <u>A PROTECTIVE ORDER IS NOT WARRANTED</u>

A party seeking to limit discovery must demonstrate "good cause" before a protective order may be issued. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order has the burden of showing a specific injury. <u>See</u> <u>Blankenship v. Hearst</u> (9th Cir. 1975) 519 F.2d 418; <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u> (9th Cir.) 331 F.3d 1122, 1130 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test. (citing <u>Cipollone v Ligget Group, Inc</u>. (3rd Cir. 1986) 785 R. 2d 1108, 1121))" Even if a party seeking the protective order demonstrates "good cause," the court must still balance the interests in allowing discovery against the relative burdens to the parties. <u>In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation</u> (10th Cir. 1982) 669 F.2d 620, 623. The balance here weighs on the side of U.S. Fire.

### A.    <u>U.S. Fire's Site Inspection Requests are Relevant And Reasonably Calculated To Lead To The Discovery Of Admissible Evidence</u>

"Parties may obtain discovery regarding any matter, not privileged, that is <u>relevant to the claim or defense of any party</u>, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter <u>relevant to the subject matter</u> involved in the action." Fed. R. Civ. P. 26(b)(1) (emphasis added.) Relevant information need not be strictly admissible in court; it is still discoverable if such information appears reasonably calculated to lead to the discovery of admissible evidence. <u>Id</u>.

Copart argues that the site inspection requests "seek irrelevant . . . information," but Copart does little to develop that argument. As Copart grudgingly acknowledges, this action involves more than just Copart's claim for breach of contract and bad faith with respect to its claim for damage to Yard 105. This litigation also involves a counterclaim by U.S. Fire for additional premiums due to Copart's non-reporting or under-reporting of values, not merely for Yard 105 but for over 100 other locations owned or operated by Copart. In view of the

counterclaim, discovery regarding the true values of the exposures at yards other than Yard 105 is relevant. Indeed, in compelling Copart to produce certain documents at an earlier juncture in this case, this Court has already rejected any argument that U.S. Fire cannot conduct any discovery beyond Yard 105.

The only question now is whether site inspections are *reasonably calculated* to lead to the discovery of admissible evidence concerning the true replacement cost values of Copart's properties. The answer is yes. Site inspections would allow U.S. Fire's consultants to survey the properties and obtain first-hand information concerning their dimensions, type of construction, quality of construction, and other factors that influence replacement cost value.

Copart argues that site inspections would reveal only "present" replacement cost values and that such values are "irrelevant," but Copart offers no evidence that replacement cost values have changed so significantly as to render "present" values irrelevant. And even if that were the case, a simple adjustment for inflation would reduce "present" values to "past" values. The Court should not preclude site inspections based on Copart's *speculation* as to how U.S. Fire's consultants will calculate replacement cost values after the inspections. Nor should the Court preclude site inspections based on a pre-determination as to whether the experts' calculations (which are not even before the Court now) will be persuasive to a jury.

**B.      Copart Has Not Demonstrated The Requisite Good Cause For A Protective Order**

To obtain a protective order, a party must demonstrate "good cause" therefore. Gray v. First Winthrop Corp. (N.D. Cal. 1990) 133 F.R.D. 39, 40. The party seeking the protective order has the burden of showing a specific injury. Blankenship, supra.; Foltz, supra. "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." Gray, supra. In Blankenship, the defendants' objected to the deposition of a particular witness on the asserted grounds that what the witness had to offer "would be repetitious with what plaintiff had learned from other sources."

The plaintiff countered by suggesting possible information that the witness might provide that others did not have. The court agreed, quoting Fed. R. Civ. P 26(c) and stating:

> All motions under these subparagraphs of the rule must be
> supported by 'good cause' and a strong showing is required before

> a party will be denied entirely the right to take a deposition. [citation omitted.] Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied. They did not meet this burden. <u>Blankenship</u>, 519 F. 2d at 429.

Here, apart from "stereotyped or conclusory statements," Copart offers no facts proving a particular and specific need for an order prohibiting site inspections.

In conclusory fashion, Copart contends that the site inspection requests are duplicative of previous document requests served by U.S. Fire. Copart claims that the site inspections would not allow U.S. Fire to gather any information that is not already contained in the documents produced. Specifically, Copart contends, its "fixed asset master lists" and its "construction in progress reports" are all that U.S. Fire "could possibly need to attempt to establish some discrepancy between Copart's SOVs and the 'actual' replacement value of the properties." However, the referenced documents do not show property dimensions, floor plans, construction type, construction quality, or any other features that a physical viewing would reveal. Nor does Copart explain exactly how the information in the fixed asset master lists and construction in progress report assists in establishing actual replacement costs. Site inspections and document inspections are two different things, and Copart cites no authority for the proposition that a party can only pursue one or the other.

Furthermore, even if Copart's documents fully documented the true replacement cost values, *independent verification* would be in order here because the very basis of U.S. Fire's counterclaim for negligent misrepresentation is that Copart's documents were inaccurate and cannot be taken at face value.[12] The documents produced by Copart do not demonstrate a clear or consistent picture of how values were determined. Copart cannot be allowed to thwart discovery on the misrepresentation claim by prohibiting inspections that would assist in confirming the accuracy of the representations it made to U.S. Fire.

---

[12] In its motion, Copart attacks the merit of U.S. Fire's counterclaim. The merit of the counterclaim is not properly at issue here. The only issue before the Court is whether Copart has sustained its burden in seeking a protective order with respect to the site inspections requested.

**C.      The Benefit of The Site Inspections Outweighs the Alleged Burden**

Even if Copart could demonstrate the requisite "good cause," the Court must still balance the interests in allowing discovery against the relative burdens to the parties. Petroleum Products Antitrust Litigation, supra. Where, as here, the relevance of the information sought is at issue, the appropriate balancing test concerns the relevance of the information sought versus the burden imposed on the responding party. Id. Copart wholly fails to establish that site inspections will be unduly burdensome.

The only burden cited by Copart is the expense for its attorneys to attend each inspection. However, Copart does not explain why (given that U.S. Fire's damages could be in the hundreds of thousands, if not millions, of dollars) such expense is "undue." Furthermore, given that the site requests state that USFIC's attorneys will not attend, Copart could avert any attorney expense (undue or otherwise) by similarly having their attorneys stay home. Copart's allegations of undue burden, unsubstantiated by hard evidence or articulated reasoning, do not satisfy the Rule 26(c) test. Foltz, supra.

Even assuming there is some burden here, that is a burden Copart legitimately will have to bear. Copart has refused to stipulate to what the true values were, so U.S. Fire is forced to conduct discovery on that issue. U.S. Fire first attempted to ascertain the true values through document requests, but Copart has produced no documents showing what the true values were. Furthermore, U.S. Fire is not obligated to limit its discovery to Copart's documents, which may be just as inaccurate and unreliable as the statements of values that give rise to the counterclaim. U.S. Fire is entitled to have its construction experts inspect, measure, survey or photograph the buildings or structures. Although Copart has over 100 locations across the country, U.S. Fire has reasonably limited its requests to a small sample of Copart's locations, all either in California (where this case is pending) or in Florida (where the loss occurred).

**D.      The Second Set of Site Inspection Requests Does Not Violate The Discovery Order**

Copart asserts that Judge Wilken's order of April 15, 2008 precluded U.S. Fire's subsequently-served second set of inspection requests. Copart's counsel drafted the proposed stipulation regarding extension of discovery and motion dates, primarily to enable it to complete

its own discovery. At the time Copart proposed a discovery extension, U.S. Fire had noticed the depositions it intended to take and served its first set of site inspection requests. U.S. Fire was considering additional site inspection requests, just as Copart was considering what depositions to notice.

To allow both parties to complete additional contemplated discovery without undue haste, but with an eye towards preventing a last-minute flurry of "written" discovery, counsel for U.S. Fire submitted the following comment to the proposed stipulation:

> "1. Please add to Completion of fact discovery: May 30, 2008; provided that no further interrogatories, requests for admissions or requests <u>for production of documents</u> shall be served."[13]

On preparing the stipulation for signature, Copart surreptitiously revised the agreed language to read "provided that no further interrogatories, requests for admissions or requests for production of documents/<u>inspection[s]</u> shall be served." Insofar as that change renders the stipulation and order ambiguous as to whether it pertains to requests for inspection of *properties* as well as documents, Copart cannot profit from the ambiguity it introduced. It was U.S. Fire that requested a caveat regarding the discovery extension, that caveat clearly had nothing to do with site inspections, and if site inspections were precluded by the stipulation, then it was of no benefit to U.S. Fire and would fail for lack of consideration.

### III. CONCLUSION

Copart has not demonstrated the requisite "good cause" for a protective order. Moreover, the benefit of the site inspections outweighs the alleged burden. Copart's motion should be denied.

DATED: May 27, 2008              BULLIVANT HOUSER BAILEY PC


By _____/s/ Judith A. Whitehouse_____
   Jess B. Millikan
   Samuel H. Ruby
   Judith A. Whitehouse

Attorneys for Defendant
United States Fire Insurance Company

---

[13] See email dated April 10, 2008 from Judith A. Whitehouse to Rick Larson attached as Exhibit K to the Declaration of Judith A. Whitehouse, served herewith.