Philip L. Pillsbury, Jr. (SBN 72261)
Vedica Puri (SBN 176252)
Eric K. Larson (SBN 142791)
PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor
San Francisco, CA 94111
Telephone: (415) 433-8000
Facsimile:  (415) 433-4816
E-mail: ppillsbury@pillsburylevinson.com
         vpuri@pillsburylevinson.com
         rlarson@pillsburylevinson.com

Attorneys for Plaintiff and Counterdefendant
COPART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC., <br><br> Plaintiff, <br><br> vs. <br><br> CRUM & FORSTER INDEMNITY COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, Inclusive, <br><br> Defendants. | Case No. C 07 2684 CW-EDL <br><br> **E-FILING** <br><br> **PLAINTIFF COPART INC.'S *REPLY* MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** <br><br> Date: June 17, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom E, 15th Floor |
| AND RELATED COUNTERCLAIM | Action Filed: March 20, 2007 <br> Trial Date:   November 10, 2008 |

Plaintiff Copart, Inc. ("Copart") submits the following reply memorandum of points and authorities in support of its motion for a protective order to prohibit United States Fire Insurance Company ("USFIC") from making 18 site inspections of Copart properties across California and Florida.

-1-

COPART INC.'S *REPLY* MEMORANDUM OF POINTS AND                                    Case No. C 07 2684 CW-EDL
AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

### I. Copart Has Given USFIC More Than Enough Discovery On USFIC's Baseless Counterclaim, And Has Demonstrated Good Cause For A Protective Order.

The requested site inspections which are the subject of Copart's motion have nothing to do with the main action. Copart filed this action for breach of contract and bad faith because USFIC denied coverage under a property policy for a building in Miami, at a location called Yard 105, destroyed by Hurricane Wilma. As part of the process of obtaining and renewing insurance, Copart's broker, Marsh, would circulate specifications of requested insurance along with a Statement of Values form that listed all of Copart's locations by address and included estimates of replacement cost values of the buildings at those locations. Insurers who wished to bid quoted limits and premiums based in part on the "total insured values" set out in the Statement of Values. In October 2005, Copart accepted USFIC's bid for a $2.5 million per occurrence "all risk" policy. That bid was based in part on a Statement of Values form that included Yard 105 as a designated location, but did not include an estimated value for the buildings at Yard 105. USFIC is using that omission to deny coverage despite the fact that there is nothing in the policy that conditions coverage on the presence of a values estimate. It was enough for coverage that Copart designated Yard 105 as a location.

Adding insult to injury, USFIC has counterclaimed against Copart alleging that Copart undervalued *all* of its properties and that USFIC would have charged more premiums if it had known that over the course of the four year contractual relationship. This is an absurd theory. The values in the Statement of Values were estimates as to what it might cost to replace a building in the event it was destroyed. They are opinions as to value and USFIC accepted them with the "spot-checking" approval of the USFIC underwriter, and issued insurance policies. See Monica Streacker Deposition Transcript p. 199:21-202:7, Reply Declaration of Eric K. Larson in Support of Motion for Protective Order, Exhibit A.

Further, USFIC made substantial money on the relationship with Copart. USFIC, however, imagines that it would have quoted and then charged a higher premium -- and that Copart would have paid that amount and not negotiated it down or taken its business elsewhere -- if the "true" values had been stated. As USFIC's counsel put it recently: "The only

1  damages being claimed are additional premiums that *would have been* collected *if* different
2  values had been reported and interest and so forth." Deposition of Monica Streacker, p.
3  219:24-220:2 (Larson Reply Dec., Ex. A) (emphasis added). This is supposition piled upon
4  conjecture. USFIC has resisted all requests by Copart to state some authority for its novel
5  theory of negligent misrepresentation and "damages."

6      That resistance continues in the opposition to Copart's motion. USFIC casually refuses
7  to address the legitimacy of its counterclaim in one breath (USFIC Opp., p. 8, fn. 12), while
8  puffing up its merits in another as an attempted justification for the duplicative and
9  burdensome discovery it seeks: "Copart does not explain why (given that U.S. Fire's damages
10 could be in the hundreds of thousands, if not millions of dollars) such expense is 'undue.'"
11 (USFIC Opp. p. 9:9-10). USFIC cannot have it both ways. USFIC has put the "merits" of its
12 counterclaim at issue in attempting to justify these duplicative and burdensome site
13 inspections, that has not even attempted to explain how its claim can possibly be meritorious.

14     As explained in its motion, in an effort to meet its discovery obligation in good faith
15 and to avoid motion practice, Copart has indulged USFIC in wide and far ranging document
16 discovery on its counterclaim that goes far beyond the matter at issue here -– whether Copart is
17 entitled to coverage for a single property in Florida damaged by Hurricane Wilma -- and
18 provided USFIC with detailed information regarding all of its yards nationwide.

19     Further, on May 20, 2008 after the filing of this motion for protective order, Copart
20 made available to USFIC for deposition its National Property Manager, Michael Carson.
21 Mr. Carson reports to the CEO and is "responsible for all of Copart's 146 American yards
22 facilities including Canada and Alaska . . . for assisting in finding those properties, getting
23 them zoned, getting use permits, developing the properties, constructing them, building them,
24 refurbishing those properties and making them usable for company purposes." Deposition of
25 Michael Carson, 10:9-11:7, Larson Reply Dec., Ex. B. ***USFIC, however, did not ask a single***
26 ***question of Mr. Carson regarding the properties which it now seeks to inspect***. USFIC did
27 not ask him to confirm any of the information regarding square footage, number of buildings,
28 construction type, renovations done or any of the information reflected in the voluminous

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1   documents Copart has produced. Larson Reply Decl., ¶3. To the extent those documents do
2   not tell the complete story of Copart's properties, Mr. Carson could have filled in the blanks.
3   USFIC, however, chose not to follow up with Mr. Carson at all.
4       The requested site inspections are "unreasonably cumulative and duplicative," the
5   information sought can and has been "obtained from some other source" and USFIC "had
6   ample opportunity to obtain the information by discovery." Schwarzer, Tashima & Wagstaffe,
7   CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL, ¶11:515 (The Rutter Group 2008).
8   Good cause exists, therefore, for the protective order Copart seeks.

## II. The Second Site Inspection Requests Are Further Barred By Court Order Upon The Parties' Stipulation.

11      As demonstrated by its failure to question Mr. Carson about these properties, USFIC is
12  not interested in discovery with its site inspection requests; it is interested in making Copart's
13  attempt to obtain the benefits of its property policy as expensive as possible. This attitude was
14  clearly demonstrated when, in response to Copart's attempts to meet and confer on this issue,
15  USFIC simply requested *more* site inspections, despite the fact that the parties agreed, and
16  Judge Wilken ordered, that no more "requests for production/inspection" be served.
17  Declaration of Eric K. Larson in Support of Plaintiff Copart, Inc.'s Motion for Protective
18  Order ("Larson Dec."), Exs. C and F.
19      Now, USFIC goes so far as to accuse Copart's counsel of "surreptitiously" adding the
20  word "inspection" to the Stipulation submitted. As USFIC has done before,[1] its counsel
21  simply leaves out key pieces of correspondence that do not support its story. In response to
22  Ms. Whitehouse's email (Whitehouse Decl. Ex. K), Copart's counsel sent a revised stipulation
23  to include *all* Rule 34 requests (including "inspections"). Ms. Whitehouse's response? "Rick
24  – Looks good. You may submit to the Court." Thanks – Judith." (Larson Reply Decl. Ex. C).
25  So much for surreption.
26  / / /

---

[1] USFIC did the same thing on its motion to compel back in January, 2008, leaving out key correspondence from Copart's counsel in order to paint a misleading picture of the meet and confer process. Copart had to correct the record, and the Court at the hearing on that motion noted that USFIC had not adequately met and conferred. Larson Dec., Ex. J, pp. 3:21-4:1.

-4-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

### III. USFIC Has Not Meaningfully Met Copart's Showing That The Requested Site Inspections Would Be Burdensome And Duplicative Of Other Avenues Of Discovery.

USFIC does not even challenge the conservative estimate of $63,700 in attorneys fees alone to monitor these inspections, nor adequately explain why the site inspections would reveal new or meaningful information. In its motion, Copart described the documents that it had provided to USFIC regarding the specifications of its properties and the construction completed there. USFIC states now that "the referenced documents do not show property dimensions, floor plans, construction type, construction quality, or any other features that a physical viewing would reveal." USFIC Opp. 8:12-13. This statement is largely false as demonstrated by, for example, Exhibit E to the Whitehouse Declaration. The Statement of Values provides location, square footage and construction type. To the extent this information was unclear or perceived to be incomplete, USFIC had Mr. Carson, Copart's National Property Manager, at its disposal, under oath, to testify regarding these properties. *Again, USFIC asked no questions about these properties at all*.

At pages three and four of their opposition, USFIC includes a table listing five of Copart's location with a comparison of the values estimates at two different points in time -- August 5, 2005 and January 1, 2006. Presumably, these are the best examples that USFIC can muster in support of its theory that Copart concocted some nefarious scheme to underpay for insurance. That table provides no support for that theory or for the requested site inspections.

First, USFIC does not seek to inspect Yard 9 or 11, or even Yard 105, so the purpose of their entry in the table is unclear.

As for Yard 6, Copart demolished six existing buildings on that site and built a new one. The Construction Progress Report provided to USFIC reflects this construction ongoing after the August 5, 2005 Statement of Values. *See* Larson Reply Dec. Ex. D. Again, had USFIC bothered to ask Mr. Carson, he could have testified to this as well.

Finally, USFIC focuses primarily on Yard 34 in Tampa, Florida as an example of a yard deserving of inspection because of the "dramatic change" -- all of $300,000 – after Florida was rocked by Hurricane Wilma and construction costs soared. Mr. Carson testified in

general about the high cost of post-Wilma construction in Florida with respect to Yard 105 (Larson Reply Dec., Ex. B) and likely would have done so with respect to Yard 34 as well -- had USFIC bothered to ask him. But, it did not.

The necessity of inspecting any of the other 18 yards -- or why USFIC couldn't have simply asked Mr. Carson to clarify any questions the voluminous documents produced by Copart may have raised -- is left unsaid.

What USFIC's table does do effectively, if unwittingly, is help illustrate the counterclaim's lack of merit. USFIC attempts to ascribe some ill-motive to Copart in adjusting the values of some of its properties in January 2006 from what had been stated in August 2005. While USFIC mentions in its opposition that an endorsement was issued in response to the January 1, 2006 Statement of Values, what USFIC does not tell the Court is that *Copart paid USFIC additional premiums because of these adjustments.* See Deposition of Monica Streacker, p. 207:21-209:15; Ex. 100, p. POL298. Larson Reply Dec., Ex. A. Copart paid USFIC for this increase in stated values. Copart never made a claim on these yards, other than Yard 105. What is the possible damage to USFIC? USFIC continually meets this question with deafening silence.

Thus, while burdensome and duplicative discovery is of questionable value and propriety in any context, it is especially so here where USFIC continues to refuse to cite any authority or explain with any coherence how Copart could possibly owe it "millions of dollars" because now, years after the fact, USFIC questions the replacement cost estimates Copart provided. To frame the question is to expose the absurdity of the theory.

The estimates of values in the Statement of Values are not representations of fact. "Value is quintessentially a matter of opinion, not a statement of fact." *New-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 310. Further, USFIC's damages are illusory and speculative. It is out-of-pocket no money and, indeed, profited from the Copart policies. USFIC claims it would have charged higher premiums if Copart had reported higher values. The evidence is that reported values were only one factor in setting premiums. *See* Monica Streacker Deposition, p. 151:7-152:3, Larson Reply Dec., Ex. A. USFIC may

COPART INC.'S *REPLY* MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

have charged higher premiums; it may not have. It is total conjecture. If USFIC had quoted higher premiums, Copart could have placed its insurance with another carrier. Who knows? Given the duplicative nature of the site inspection sought, the burdensomeness of the requests -- USFIC does not dispute Copart's conservative estimate of the costs it would be required to incur in attorneys' fees alone -- and USFIC's steadfast refusal to articulate a valid theory of recovery against Copart, the motion for a protective order should be granted.

Dated: June 3, 2008                                         PILLSBURY & LEVINSON, LLP


                                                            By:  /s/ Eric K. Larson
                                                                 ---------------------------------
                                                                 Vedica Puri
                                                                 Eric K. Larson

                                                            Attorneys for Plaintiff and Counterdefendant
                                                            COPART INC.