Philip L. Pillsbury, Jr. (SBN 72261)
Vedica Puri (SBN 176252)
Eric K. Larson (SBN 142791)
PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor
San Francisco, CA 94111
Telephone: (415) 433-8000
Facsimile: (415) 433-4816
E-mail: ppillsbury@pillsburylevinson.com
        vpuri@pillsburylevinson.com
        rlarson@pillsburylevinson.com

Attorneys for Plaintiff and Counterdefendant
COPART INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CRUM & FORSTER INDEMNITY COMPANY, UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, Inclusive,<br><br>                    Defendants. | Case No.  C 07 2684 CW-EDL<br><br>**E-FILING**<br><br>**PLAINTIFF COPART, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  August 21, 2008<br>Time:  2:00 p.m.<br>Place: Courtroom 2, 4th Floor<br>Before the Hon. Claudia Wilken |
| AND RELATED CROSS-ACTION | Action Filed:  March 20, 2007<br>Trial Date:     November 10, 2008 |

*PILLSBURY & LEVINSON, LLP*
*The Transamerica Pyramid*
*600 Montgomery Street, 31st Floor · San Francisco, CA 94111*

# TABLE OF CONTENTS

**Page(s)**

I.   SUMMARY OF ARGUMENT ................................................................................ 1

II.  FACTUAL STATEMENT .................................................................................... 5

   A.   The Affected Property and the Claim. ....................................................... 5

   B.   The Application/Renewal Process. ............................................................. 6

   C.   The Preparation of the SOVs and The Relevant SOV Here............................ 8

   D.   Copart Paid A Premium For The Policy As A Whole. ................................. 9

   E.   The "Four Corners" Coverage Analysis -- Yard 105 Is A Covered Location
       And Its Buildings Are Covered. ............................................................... 11

III. LEGAL ANALYSIS.......................................................................................... 13

   A.   Yard 105 Is A Covered Location And Copart Is Entitled To Indemnity For
       The Losses Suffered There. ..................................................................... 13

     1.   Well Settled Principles of Policy Interpretation Support Coverage for Yard 105. ..... 13

     2.   The *Filippo Industries* Case Applies These Principles In A Nearly Identical
         Situation And Is Dispositive. ............................................................... 16

   B.   The Policy Is "Open," Not "Valued" And Must Be Construed As Granting
       Coverage. ............................................................................................ 18

   C.   A Binder Was In Place At The Time of the Hurricane; Nothing In the
       Binder Ties Coverage to Values Either. .................................................... 18

   D.   USFIC's Counterclaim is Without Merit As A Matter of Law. ..................... 20

     1.   First Claim – Reformation.................................................................... 20

        a.   The Requested Reformation Would Alter the Agreed Risk And Would
           Be Improper.............................................................................. 20

        b.   There Is No Evidence of Mistake Which USFIC Has The Burden To
           Prove By Clear and Convincing Evidence....................................... 21

     2.   Second Claim -- Negligent Misrepresentation. ........................................ 22

        a.   The Estimates Of Values In The SOVs Are Opinions, Not Facts........................ 23

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1
b.    "Lost Premiums" Are Speculative "Benefit of the Bargain" Damages Unrecoverable As A Matter Of Law On A Negligent  Misrepresentation

2
Claim.................................................................................................... 23

3
IV.    CONCLUSION....................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ahern v. Dillenback*
(1991) 1 Cal.App.4th 36 ............................................................................................ 19

*Alliance Mortgage Co. v. Rothwel*
(1995) 10 Cal.4th 1226 ............................................................................................ 24

*American Building Maintenance Co. v. Indemnity Ins. Co. of North America*
(1932) 214 Cal. 608 ................................................................................................. 21

*American Home Ins. Co. v. Travelers Indemnity Co.*
(1981) 122 Cal.App.3d 100 ................................................................................. 20, 21

*American Surety Co. of New York v. Heise*
(1955) 136 Cal.App.2d 689 ...................................................................................... 20

*Anderson v. Liberty Lobby, Inc.*
(1986) 477 U.S. 242 ................................................................................................. 20

*Breshears v. Indiana Lumbermans Mutual Ins. Co. of Indianapolis*
(1967) 256 Cal.App.2d 245 ...................................................................................... 18

*Caminetti v. Pacific Mut. Life Ins. Co.*
(1943) 22 Cal.2d 344 ............................................................................................... 12

*Celotex Corporation v. Catrett*
(1986) 47 U.S. 317 ................................................................................................... 22

*Elliano v. Assurance Co. of America*
(1975) 45 Cal.App.3d 170 ........................................................................................ 18

*Filippo Industries, Inc. v. Sun Insurance Company of New York*
(1995) 35 Cal.App.4th 1728 ................................................................................. 4, 17

*Gagne v. Bertran*
(1954) 43 Cal.2d 481 ............................................................................................... 25

*Garvey v. State Farm Fire & Casualty Co.*
(1989) 48 Cal.3d 395 ................................................................................................. 2

*Hayes v. Farmers Ins. Exchange*
(2004) 32 Cal.4th 1198 ............................................................................................ 14

*Holz Rubber Company, Inc. v. American Star Insurance Co.*
(1975) 14 Cal.3d 45 ................................................................................................. 15

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No.  C 07 2684 CW-EDL

*International Serv. Ins. Co. v. Gonzales*
    (1987) 194 Cal.App.3d 110 ................................................................................ 21

*Montrose Chemical Corp. v. Admiral Ins. Co.*
    (1995) 10 Cal.4th 645 ....................................................................................... 14

*New-Visions Sports, Inc. v. Soren/McAdam/Bartells*
    (2000) 86 Cal.App.4th 303 ................................................................................ 23

*Padgett v. Phariss*
    (1997) 54 Cal.App.4th 1270 .............................................................................. 23

*Richardson v. GAB Business Services, Inc.*
    (1984) 161 Cal.App.3d 519 ............................................................................... 18

*Saunders v. Taylor*
    (1996) 42 Cal.App.4th 1538 .............................................................................. 24

*Small v. Fritz Companies, Inc.*
    (2003) 30 Cal.4th 167 ....................................................................................... 24

*Taff v. Atlas Assur. Co., Ltd.*
    (1943) 58 Cal.App.2d 696 ................................................................................. 20

*Ward v. Taggart*
    (1959) 51 Cal.2d 736 ........................................................................................ 24

## Statutes and Restatement

Civil Code §3343 ..................................................................................................... 24

Civil Code §3399 ..................................................................................................... 21

Federal Rules Civil Procedure, Rule 56(d) ............................................................... 4

Insurance Code §382.5 ............................................................................................ 19

Insurance Code §411 ............................................................................................... 18

Insurance Code §412 ............................................................................................... 18

Restatement of Torts, §552B .................................................................................. 25

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

## NOTICE OF MOTION AND MOTION

TO DEFENDANT UNITED STATES FIRE INSURANCE COMPANY AND ITS ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on August 21, 2008 at 2:00 p.m. in Courtroom 2, of the above-entitled Court, 4th Floor, 1301 Clay Street, Oakland, CA 94612, plaintiff Copart, Inc. ("Copart") will and hereby does move for summary judgment in its favor on (1) the liability of USFIC under the First Claim of Copart's Complaint for Breach of Contract on the ground that the plain meaning of the applicable October 1, 2005 – October 1, 2006 property insurance policy provides coverage for Copart's location known as "Yard 105" as a matter of law; (2) the First Claim of USFIC's Counterclaim for reformation on the grounds that (a) USFIC's request for reformation asks the Court to write an entirely new policy and is improper as a matter of law, and (b) USFIC has not and cannot come forward with clear and convincing evidence of mistake; and (3) the Second Claim of USFIC's Counterclaim for negligent misrepresentation on the grounds that (a) there were no representations of fact made by Copart -- only opinions -- as a matter of law; and (b) the speculative "benefit of the bargain" theory of damages that USFIC advances is improper as a matter of law on a claim for negligent misrepresentation.

This motion is made under authority of Federal Rules of Civil Procedure, Rule 56 and is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Eric K. Larson (in three volumes), and exhibits thereto, all the pleadings and files in this action, and any oral argument which may be had at the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  SUMMARY OF ARGUMENT

This is a property insurance coverage and bad faith action where the policy clearly, on its face, provides coverage. The insurer, USFIC, tries to conjure exclusions out of the shadows of policy language providing coverage and imagines ambiguities that it then construes in its favor. Its effort in post-claims underwriting turns well-established principles of policy

-1-

1  interpretation inside out. Summary judgment is appropriate in Copart's favor on the issue of

2  coverage and USFIC's liability on Copart's claim for breach of contract.

3      Summary judgment is also appropriate on USFIC's counterclaim, the theories of which

4  are invalid as a matter of law. Further, there is no evidence to support it and USFIC has come

5  forward with none -- the counterclaim is an exercise in legal woolgathering, not a legitimate

6  request to remedy an actual wrong.

7      Copart is headquartered in Fairfield, California and provides vehicle suppliers with a

8  full range of online services to process and sell salvaged vehicles. As part of its nationwide

9  operations, Copart owns and operates over 100 "yards" across the country; each includes

10 acreage for the storage of cars and usually an office building. This action involves losses

11 suffered at a single yard -- Yard 105 in Miami, Florida -- primarily the destruction of a large

12 building that was irreparably damaged by Hurricane Wilma on October 24, 2005, condemned,

13 and then demolished pursuant to the order of Miami/Dade County authorities. USFIC refuses

14 to indemnify Copart for these losses.

15     USFIC's policy unambiguously provides coverage to Copart for the losses suffered at

16 this location. USFIC's argument of "no coverage" is based on Copart's supposed failure to

17 comply with a fabricated prerequisite to coverage that is both hypertechnical and non-existent,

18 and concocted by USFIC over a year after the hurricane. It is a condition not contained in the

19 Policy, by USFIC's underwriter's own admission, and never communicated to Copart by

20 anyone. To rule in USFIC's favor on coverage would require the Court to act as a time-

21 traveling underwriter, and redo the deal in USFIC's favor and to Copart's detriment.

22     Copart had insured its properties with USFIC since 2003. The policies were

23 comprehensive, "all risk" policies[1] covering all of Copart's locations on a "per occurrence"

24 basis. The applicable 2005-2006 Policy had a limit of $2.5 million per occurrence. Copart

25

26 [1] An "all risk" property policy covers all risks of physical loss except those that are excluded. Under
   an "all risk" policy, the limits of coverage are defined by the exclusions. Under such policies, "once
27 the insured shows that an event falls within the scope of basic coverage under the policy, the burden is
   on the insurer to prove a claim is specifically excluded. Moreover, exclusionary clauses are interpreted
28 narrowly, whereas clauses identifying coverage are interpreted broadly." *Garvey v. State Farm Fire &
   Casualty Co.* (1989) 48 Cal.3d 395, 406 (internal citations omitted).

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    paid over $300,000 in premiums for this one Policy year. Declaration of Eric K. Larson[2]

2    ("Larson Decl." Vol. I, Ex. A). As part of the application and renewal process Copart would,

3    through its broker Marsh, submit to USFIC, and other insurers, proposed Specifications for

4    Insurance that included various Statement of Values forms ("SOV"). These SOV forms set

5    forth a listing of Copart's locations that would be covered by the requested property policy,

6    identifying them by Yard number and the address or physical description of the locations. The

7    SOV forms also included several columns including estimated replacement cost values for the

8    buildings, contents, computers, etc. thereon. The SOV form was created by Marsh, not

9    USFIC. McIntyre Depo. 76:8-23 (Larson Decl., Vol. II, Ex. A).

10        The 2005-2006 Policy at issue provides coverage to any location "described" in the

11    Policy, and its Declarations. (Larson Decl. Vol. I, Ex. B). Yard 105 was so "described."

12    USFIC, however, fights against the Policy it drafted, and contends that Yard 105 was not a

13    covered location because values had not yet been stated for each item on the SOV at the time

14    of renewal or the hurricane and Copart did not pay premiums with respect to Yard 105.

15        There is nothing in the Policy, however, tying coverage to the stated values, and USFIC

16    employee who underwrote the Policy has admitted this:

17            Q.    Is there anywhere in the policy that tells the insured
that a location will not be insured if it doesn't have
18                 a value on the statement of values?

19            A.    No.

20            Streacker Depo. 167:20-23  (Larson Decl. Vol. II, Ex. B).

21        Yard 105 was, in fact, a designated location, and that is all that is needed to trigger

22    coverage. It had been a designated location on the previous 2004-2005 policy. It is listed on

23    the SOV that USFIC considered when issuing the Policy. As Ms. Streacker necessarily

24    admitted, there is nothing in the Policy that conditions coverage on values being stated. There

25

26           [2] Copart has submitted documentary and deposition evidence attached to three volumes of the

27    Larson Declaration. Volume I attaches the entire Policy, key pages from that Policy separated
for ease of reference, and the applicable SOV. Volume II attaches deposition transcript

28    portions. Volume III attaches miscellaneous documentary exhibits.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT      Case No. C 07 2684 CW-EDL

1  is no exclusion precluding coverage for designated locations for which no values appear on the

2  SOV form. USFIC could have easily added such a condition or exclusion had that been the

3  parties' intention. A key California case holds that an insurer cannot deny coverage on the

4  basis of an incomplete or outdated statement of values when the insurer "fails to specify any

5  consequences in the event the insured has failed to timely file reports of value." *Filippo*

6  *Industries, Inc. v. Sun Insurance Company of New York* (1995) 35 Cal.App.4th 1728, 1734.

7      Nevertheless, over one year after the hurricane, USFIC, in three sentences of a

8  December 28, 2006 letter from the USFIC claims handler (that also dealt with Copart claims at

9  two other Florida yards), denied coverage on the sole basis that no value was stated on the

10  SOV form for buildings at Yard 105:

12      It is also indicated in the report that the claim submission
   from Copart includes work related to Yard 105 in Hialeah,
13  Florida. Our review of the statement of values attached to
   your policy indicates that there is no coverage for buildings
   or time element exposures at this location. In that regard,
14  the cost of repairs at this location is not covered.

15  Larson Decl. Vol. III, Ex. A.

16      As we will explain below this denial was erroneous at best. The Policy unambiguously

17  affords coverage to Copart for its buildings at designated locations. Yard 105 was such a

18  location. Whether or not values were stated on the SOV form is immaterial to coverage under

19  the plain terms of the Policy. Copart seeks summary judgment in its favor on the following

20  issues and claims:

21      **USFIC's Liability Under Copart's First Claim -- Breach of Contract**

22      On its face and within its four corners, the plain terms of the 2005-2006 property policy

23  provide coverage to Copart for the damage it sustained to Yard 105. Further, the binder in

24  effect at the time of the hurricane in October 2005 and before the Policy was actually issued in

25  December, 2005 affords coverage as well. Copart is entitled to judgment in its favor as a

26  matter of law under FRCP, Rule 56(d), that USFIC is liable to indemnify Copart for losses it

27  suffered at Yard 105, subject to proof of those losses at trial.

28  / / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-4-

1    **USFIC's First Counterclaim -- Reformation**

2        USFIC's counterclaim, framed in the alternative -- that there was only a mistake if

3    Copart prevails on coverage -- defies logic or any accepted notion of the equitable remedy of

4    reformation, and fails as a matter of law.  USFIC essentially asks the Court to rule in USFIC's

5    favor on coverage, contrary to the plain terms of the agreement between the parties, through a

6    request for "reformation."  Further, there is no evidence, let alone the required clear and

7    convincing evidence, that either USFIC or Copart were mistaken in writing or accepting the

8    Policy.

9    **USFIC's Second Counterclaim – Negligent Misrepresentation**

10        There is not a viable claim for negligent misrepresentation as a matter of law because

11   (a) the estimates of replacement values in the SOVs -- the purported representations supporting

12   this claim-- are statements of opinion, not fact, as a matter of law; and (b) USFIC has not

13   suffered any legally recoverable harm proximately caused by the alleged misrepresentations.

14   USFIC claims that it would have charged more premiums had it known the "true" value of

15   Copart's properties.  These "lost premium" damages are not actual, out-of-pocket losses; they

16   are speculative and hypothetical "expectancy" damages, which are not recoverable on a

17   negligent misrepresentation claim as a matter of law.

18   **II.    FACTUAL STATEMENT**

19       **A.    The Affected Property and the Claim.**

20       Copart, as part of its on-line auto salvage auction business, owns property in Miami,

21   Florida known as Yard 105. There were two buildings at this Yard when Hurricane Wilma hit

22   Florida in late October 2005: the main building which had recently undergone a top to bottom

23   renovation and was to be used as storage for high value cars and office space (the "Large

24   Building") and a smaller storage building.  An aerial picture of Yard 105 post-hurricane is

25   attached to the Larson Decl., Vol. III as Exhibit B.  Carson Depo. 14:19-17:16 (Larson Decl.

26   Vol. II, Ex. C).

27       Hurricane Wilma struck southeastern Florida on October 24, 2005 and so severely

28   damaged the Large Building at Yard 105 (Carson Depo. 120:1-122:23) (Larson Decl. Vol. II,

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-5-

1   Ex. C) that Miami/Dade County condemned it and Copart was required to demolish the

2   building.  Carson Depo. 128:12-129:3, (Larson Decl. Vol. II, Ex. C).  The smaller storage

3   shed, also was damaged, but was repaired.  Carson Depo. 209:7-210:3.  (Larson Decl. Vol. II,

4   Ex. C).

5       In order to get business at Yard 105 up and running again immediately, Copart rented

6   and outfitted temporary single wide trailers and eventually purchased a double wide trailer to

7   use as office space.  Carson Depo. 138:11-141:15; 231:24-233:7 (Larson Decl. Vol. II, Ex. C).

8   Copart was so successful in getting Yard 105 quickly operational that it reduced its business

9   losses to a nominal amount and is *not* making a claim for lost business income.

10      After the hurricane, Copart immediately contacted Marsh which in turn notified USFIC

11  of the loss.  McIntyre Depo. 63:23-64:4, (Larson Decl. Vol. II, Ex. A); Larson Decl. Vol. III,

12  Ex. C.  USFIC assigned a claims handler, Carlton Clarke, to Copart's claims, which included

13  claims for losses suffered at two other Florida yards (not at issue here). Mr. Clark, in turn,

14  hired an independent adjuster, Orvin Wills of GAB Robins. Clarke Depo. 80:10-81:19. (Larson

15  Decl. Vol. II, Ex. D).  It was not until December 2006, that USFIC took the position that Yard

16  105 was not covered at all and this decision was not formally communicated in writing to

17  Copart until December 28, 2006.  Larson Decl., Vol. III, Ex. A; Wills Depo. 116:5-15 (Larson

18  Decl. Vol. II, Ex. E).

19      Copart is currently in the process of rebuilding the Large Building.  Carson Depo.

20  173:7-174:8.  (Larson Decl., Vol. II, Ex. C).  It also seeks costs related to the demolition of the

21  Large Building, repairs to the smaller building, expenses related to the trailers, and attendant

22  costs, which will be the subject of proof at trial.[3]

23      **B.    The Application/Renewal Process.**

24      Copart had property insurance with USFIC for four years beginning on October 1, 2003

25  and continuing to October 1, 2007.  A new policy was issued each year.  The subject policy

26

27  ───────────────

28  [3]  Copart also has a claim for breach of the implied covenant of good faith and fair dealing
    which is not a subject of this motion.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    ("Policy") here is for a policy period of October 1, 2005 to October 1, 2006.  A full copy of the

2    Policy is attached to the Larson Declaration, submitted herewith. (Larson Decl. Vol. I, Ex. A).

3        Copart, through Marsh, put its property policy out to market each of these years and did

4    not just automatically renew with USFIC.  As part of the original application process and

5    subsequent renewals, including for the 2005-2006 Policy, Marsh would submit specifications

6    of insurance to various carriers, USFIC included.  McIntyre Depo. 60:3-9; Rote Depo. 69:7-15;

7    71:11-25.  (Larson Decl. Vol. II, Exs. A and G).

8        A SOV form would be included with these specifications.  Copart was and is a growing

9    company and the SOV form was a fluid document that was continually updated by Marsh and

10   Copart throughout the year and transmitted to USFIC.  Marsh would make a particular effort to

11   work with Copart to update the SOV before the time for renewal when it was preparing

12   specifications to go out to the market.  Rote Depo. 150:10-151:24 (Larson Decl., Vol. II, Ex.

13   G).  But, there was no hard deadline by which a "final" SOV had to be submitted. Based upon

14   these specifications, USFIC, and other insurers, would then communicate a quote for

15   insurance, with an offered limit and premium.  The premium was based on a number of

16   factors, including the total insurable values, and was a "negotiated amount" between USFIC

17   and the insured.  Hansen Depo. 36:9-19 (Larson Decl. Vol. II, Ex. F).  Copart had no

18   obligation to accept the bid and could take its business elsewhere.  Hansen Depo. 25:13-19.

19   (Larson Decl., Vol. II Ex. F).  Similarly, if the specifications or SOV form did not meet with

20   USFIC's approval, they could simply decline to bid for the policy.  Streacker Depo. 55:7-

21   56:14; Hansen Depo. 24:22-25:3. (Larson Decl. Vol. II, Exs. B and F).

22       Once Copart and USFIC settled on the terms, USFIC would then issue a binder, the

23   purpose of which was to state all essential terms of coverage until such time as the policy

24   issued.  Hansen Depo. 36: 5-8. (Larson Decl. Vol. II, Ex. F) In this case, USFIC issued a

25   binder on September 30, 2005.  Streacker Depo. 171:10-19 (Larson Decl., Vol. II, Ex. B and

26   Larson Decl. Vol. III, Ex. D).  The policy itself was not issued until December 14, 2005.

27   USFIC Counterclaim, ¶27.  The hurricane hit in the interim period between the issuance of the

28   binder and the Policy.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-7-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

### C. The Preparation of the SOVs and The Relevant SOV Here.

USFIC gave no instructions to Marsh or to Copart as to how it should determine the values or even what values should be set forth in the SOVs. McIntyre Depo. 78:6-79:22; Streacker Depo. 52:4-12; Hansen Depo. 58:1-10 (Larson Decl., Vol. II, Exs. A, B and F). There were no specific guidelines or methodology, written or otherwise, that Copart was to follow. Instead, Copart gave its best estimate of the replacement cost of its properties. Rote Depo. 190:17-191:4; 94:16-97:15; McIntyre Depo. 101:20-25. (Larson Decl. Vol. II, Exs. G and A).

The SOV transmitted to USFIC with the specifications for insurance for the 2005 renewal was dated August 8, 2005 and identified Yard 105 with its Miami address. (Larson Decl., Vol. I, Ex. E, pg. UW (05-06) 031). Apparently, Patrice McIntyre of Marsh, Copart's broker, herself added the Miami address to the SOV at about the same time she sent an 8/8/05 email to Simon Rote, Copart's Vice-President-Finance, noting that, after looking at the website facility list and inventory values at July 31, 2005, it "appears the 20 acres in Yard 105 Hialeah was developed and is now NW 36 Avenue, Miami, FL?" McIntyre Depo. 48:22-50:8 (Larson Decl. Vol. II, Ex. A; Larson Decl. Vol. III, Ex. E). USFIC claims that this is the relevant SOV it relied upon in issuing the Policy. Counterclaim ¶¶22-27. For purposes of this motion only, and to avoid questions of fact, Copart will assume that this 8/8/05 SOV is the relevant one.[4]

---

[4] Copart does not dispute that there are no values yet stated for buildings at Yard 105 in the August 8, 2005 SOV. The explanation for that is simple -- and immaterial since values are not connected to coverage. Simon Rote, the VP of Finance at Copart who was responsible for insurance procurement and preparation of the SOVs testified that historically Copart's practice was to wait until a project was completed and the Yard operational before providing an updated value. Rote Depo. 115:5-116:19; 149:5-150:3; 163:15-166:25 (Larson Decl. Vol. II, Ex. G). The Large Building had just been fully renovated and the Yard became operational shortly before the hurricane hit. Copart purchased Yard 105 in two separate parcels and in two separate transactions in 2002 and 2003. A large parcel in Hialeah, Florida, a little over 20 acres, was purchased to store cars. The original plan was to construct a building on that parcel, but the opportunity then arose to purchase a smaller adjacent parcel, across the railroad tracks in neighboring Miami that had better street frontage and included an existing large building that had been used as a truck terminal by the previous owner. Carson Depo. 14:21-17:21; 20:12-23:16; (Larson Decl. Vol. II, Ex. C; Larson Decl. Vol. III, Ex. B).

This footnote is given for the Court's background -- it is not crucial to the present motion and USFIC should not be allowed to create issues of fact regarding in what month exactly the

---

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT    Case No.  C 07 2684 CW-EDL

1    Before issuing the binder for the 2005-2006 Policy (Larson Decl. Vol. III, Ex. D).

2  USFIC never communicated to Marsh or Copart that it needed more information on the August

3  8, 2005 SOV before it could issue the binder or Policy. USFIC never told Marsh or Copart that

4  there were blanks in the SOV that needed to be filled in as a condition of coverage, or that

5  there would be no coverage for buildings at Yard 105 until such time as Copart provided

6  values. McIntyre Depo. 79:9-22; Streacker Depo. 81:5-82:4; McCarthy Depo. 121:18-128:25;

7  Clarke Depo. 175:24-176:3. (Larson Decl. Vol. II, Exs. A, B, H and D).

8    **D.  Copart Paid A Premium For The Policy As A Whole.**

9    Copart paid a lump sum, negotiated amount of $306,250 as the premium for the Policy.

10  (Larson Decl., Vol I, Ex. A).  This was $350,000 minus the commission paid.  Hansen Depo.

11  72:6-16 (Larson Decl., Vol. II, Ex. F).

12    The premium calculation is not important to the coverage analysis.  Copart sets forth

13  the following facts in this section, however, to dispel the notion that USFIC advances, in a

14  misguided attempt to give its policy interpretation and request for reformation an equitable

15  spin, that Copart never paid premiums for Yard 105.  That is not true.  First, per the testimony

16  of Ms. Streacker and the judicial admissions in USFIC's counterclaim, the premium was not

17  broken down by individual location or categories within a location; it was a lump sum,

18  negotiated amount.  *See also* Hansen Depo. 36:9-19. (Larson Decl. Vol. II, Ex. C)  Second,

19  over $1.2 million of "location total value" for Yard 105 went into the premium calculus for the

20  Policy from the outset. (Larson Decl., Vol. I, Exs. E and F).  Third, an estimated value of the

21  buildings at Yard 105 became part of the location total value, and Copart paid additional

22  premium amounts, for the period January 1 – September 30, 2006 although the Large Building

23  was a total loss after the hurricane, had been condemned, and was destroyed in February or

24  March 2006.

25

26  renovations to the Large Building were completed or when operations began.  It is immaterial
   to coverage:  Yard 105, the location, was designated in the Policy.  It is important to emphasize
27  again, that nowhere in the Policy does it tell Copart, and at no time did USFIC instruct or
   warn, that if a building value was not put in the column on the SOV, there would be no
28  coverage.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No.  C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    The 8/8/05 SOV has a "total reported values" number of $424,472,311. (Larson Decl.,

2    Vol I, Ex. E).   The total reported values were only one factor in setting premiums. Streacker

3    Depo. 151:7-152:3 (Larson Decl., Vol. II, Ex. B).  Quoted premiums are not simply a

4    percentage of total insurable values, they are calculated by multiplying "rate" with "exposure."

5    The rates are derived, for example, from the experience of the underwriter, standards in the

6    industry and market conditions.  Streacker Depo. 119:12-120:5. (Larson Decl. Vol. II, Ex. B).

7    The underwriter used location total values, grouped by state, to calculate exposure, not the

8    values of particular components (buildings, contents, etc). at individual locations.  Streacker

9    Depo. 120:9-121:9.  (Larson Decl., Vol. II, Ex. B) *See also* USFIC Counterclaim ¶¶24-25

10   ("24. Based on the TIV reported by [Marsh] ($424 million) and a desired rate increase,

11   Streacker initially quoted a premium of $400,000. 25. After some negotiations, Streacker

12   applied a lower rate and quoted a premium of $306,250 (still based on the reported TIV of

13   $424 million).")

14   On November 1, 2005 (after the hurricane), Copart revised the SOV to include Yard

15   105 values for each of the various categories including $750,000 for Buildings &

16   Improvements; $56,000 for Contents; $50,000 for Computer Equipment; and $50,000 for

17   Business Interruption/Extra Expense. (Larson Decl. Vol. III, Ex. G).   The Policy had still not

18   been issued:  USFIC admits that the "complete" '05-'06 policy was not "issued" until

19   December 14, 2005.  Counterclaim ¶27.  USFIC made no objection to this addition of values to

20   the SOV after the loss and, indeed, issued an endorsement effective January 1, 2006 adding

21   those values to the premium calculus and charging Copart for additional premiums beginning

22   on January 1, 2006 for the buildings at Yard 105 (Streacker Depo. 207:21-209:15 (Larson

23   Decl. Vol. II, Ex. B). (Larson Decl. Vol. I, Ex. A, page POL0298), although by that time the

24   Large Building had already been condemned and would soon be demolished.  Carson Depo.

25   127:1-130:8. (Larson Decl. Vol. II. Ex. C).

26   / / /

27   / / /

28   / / /

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

E.    **The "Four Corners" Coverage Analysis -- Yard 105 Is A Covered Location And Its Buildings Are Covered.**

*The Coverage Part.* The Policy provides coverage to Copart for its properties and the buildings thereon under the following provision:

> A.    Coverage
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1.    Covered Property
>
> > *Covered Property, as used in this Coverage Part, means the type of property described in this Section A.1.,* and limited in A.2., Property Not Covered, *if a Limit of Insurance is shown in the Declarations for that type of property.*
>
> > a.    *Building means the building or structure described in the Declarations,* including:
>
> > > (1)    Completed additions;
> > > (2)    Fixtures, including outdoor fixtures;
> > > (3)    Permanently installed:
> > > > (a)    Machinery and
> > > > (b)    Equipment;
> > > (4)    Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
> > > > (a)    Fire extinguishing equipment;
> > > > (b)    Outdoor furniture;
> > > > (c)    Floor coverings; and
> > > > (d)    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;
> > > (5)    If not covered by other insurance:
> > > > (a)    Additions under construction, alterations and repairs to the building or structure.
> > > >
> > > > (b)    Material, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

(Larson Decl. Vol. I, Ex. B)

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT                    Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Covered buildings are those "described in the Declarations." Thus, we must turn to the

2    Supplemental Declarations page (Larson Decl. Vol. I, Ex. C) to see what that description is.

3    *The Supplemental Declarations Page.*  That page, under Item 4, "Coverage Provided,"

4    provides that "ALL" locations are covered.  Under the "Blgs. No." column is the cryptic

5    notation "001."  The underwriter on this policy, Ms. Streacker testified that the notation

6    "ALL" should have appeared in this column as well.  Streacker Depo. 116:14-24; 176:8-22

7    (Larson Decl. Vol. II, Ex. B).  Thus, it is undisputed that there is no limitation on the number

8    of buildings covered under this Policy.  Thus, the Buildings "described in the Declarations" are

9    all of the buildings at Copart's "premises described in the Declarations."

10    To see what those premises are we then look to Item 2 of the Supplemental

11    Declarations, titled "Premise Described" which states:  "See Schedule of Locations."

12    *The Schedule of Locations Form.*  The Schedule of Locations is another form in the

13    Policy. (Larson Decl., Vol. I, Ex. D).  On that form, significantly *not* titled "Statement of

14    Values," under the heading "Designated Locations (Address, City, State, Zip Code)" it states

15    "AS PER SCHEDULE ON FILE WITH THE COMPANY."  This refers to the Statement of

16    Values form, but, -- again, significantly -- the Policy does not reference it by that name, but

17    calls it a "Schedule."   The Schedule of Locations policy form thus tells Copart that to obtain

18    coverage for a location, Copart must designate it by giving the address, city, state and zip code.

19    This form, then, goes on to confirm that this is the only information necessary to designate a

20    location by referencing only the "Schedule" portion of the Statement of Values, that is the

21    listing of yards with address, city, state and zip code.  The word "schedule" must be deemed to

22    have been used in the same sense throughout the Policy. *Caminetti v. Pacific Mut. Life Ins.*

23    *Co.* (1943) 22 Cal.2d 344, 358.

24    *The Statement of Values.*  The August 8, 2005 SOV that USFIC claims is the relevant

25    one, and which Copart assumes is the relevant one for purposes of this motion, gives all the

26    information regarding Yard 105 that the Schedule of Locations form says it must in order to

27    "designate" a "location": it states the address (11858 N.W. 36th Avenue), the city (Miami), the

28    state (FL), and the zip code (33167). (Larson Decl. Vol. I, Ex. E).

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No. C 07 2684 CW-EDL

1    Reading all these together, Copart is clearly entitled to coverage for all buildings at a

2  location designated by address, city, state and zip code.  There is no reference to "values"[5]

3  being a necessary part of the  "designation" of a location or the "description" of a building.

4  The Policy does not make any connection whatsoever between coverage and stated values and

5  Ms. Streacker confirmed this in her deposition testimony:

6         Q.    Is there anywhere in the policy that tells the insured
              that a location will not be insured if it doesn't have
7             a value on the statement of values?

8         A.    No.

9         Streacker Depo. 167:20-23 (Larson Decl., Vol. II, Ex. B).

10    The Policy, therefore, unambiguously and within its four corners, provides coverage to

11  Copart for Yard 105 and the buildings thereon.  Had USFIC wanted to exclude properties for

12  which no values were stated, it could have easily done so, but did not.

13  **III.    LEGAL ANALYSIS**

14

15      **A.    Yard 105 Is A Covered Location And Copart Is Entitled To Indemnity For
          The Losses Suffered There.**

16         **1.    Well Settled Principles of Policy Interpretation Support Coverage
              for Yard 105.**

17

18    The sole basis for USFIC's denial was its contention that Yard 105 is not a covered

19  location, a contention that did not arise until over a year after the hurricane loss.  See, 12/28/06

20  letter from Carlton Clarke. (Larson Decl. Vol. III, Ex. A).  Clarke Depo. 106:4-10 (Larson

21  Decl. Vol. II, Ex. D):

22         Q.    Did you rely on your analysis of the '05/'06 policy
              in denying the Copart claim?

23

24

25  [5] The values on the 8/8/05 SOVs add up to a Total Insurable Value (TIV) number of
    $424,472,311, which does appear elsewhere in the Policy in an endorsement.  (Larson Decl.
26  Vol. I, Ex. F).   That TIV sum, as it appears in the Policy, is not broken down by location, nor
    is there any indication that this number comes from an SOV or that it sets sublimits that apply
27  to each property.  Again, the Policy has a limit of $2.5 million per occurrence.  None of the
    identified submits limit coverage to values stated for a particular location in the SOV. (Larson
28  Decl. Vol. I, Ex. A, pg. POL0225)

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

A.    I relied on the underwriter's assertion that that
location was not a covered location.

Q.    And that was all?

A.    That was all.

As described above, the Policy's grant of coverage, even without the benefit of the broad interpretation it must be given,[6] clearly encompasses "designated locations," a description which includes Yard 105. There is no relevant exclusionary clause at all that USFIC can point to, let alone one to be read narrowly. There is nothing in the Policy saying that designated locations for which no values are stated on the SOV are not covered, and the underwriter confirmed this in her deposition testimony. There is nothing stating that Copart has a deadline by which it must report values or lose coverage for a designated location.

> In the insurance context "we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again: 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails. *But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be "conspicuous, plain and clear."* Thus, any such limitation must be placed and printed so it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average lay person. *The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer.*
>
> *Hayes v. Farmers Ins. Exchange* (2004) 32 Cal. 4th 1198, 1204 (internal citations omitted, emphasis added).

If USFIC wanted to condition coverage on Copart's placement of a values number in a column of the Statement of Values form – and if Copart left those values blank for any period

---

[6]  "[W]e generally interpret the coverage clauses of insurance policies broadly [in order to protect] the objectively reasonable expectations of the insured." *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  of time at its extreme peril – USFIC had to tell Copart that. That would have been a very

2  simple thing for an insurer to do.

> [A]n insurer who wishes to condition its contractual liability
> upon the insured's conformance with certain conduct must
> do so in clear, unambiguous language . . . If the insurer uses
> language which is uncertain any reasonable doubt will be
> resolved against it; if doubt relates to extent or fact of
> coverage, whether as to peril insured against, the amount of
> liability or the person or persons protected, the language
> will be understood in its most inclusive sense, for the
> benefit of the insured.

*Holz Rubber Company, Inc. v. American Star Insurance Co.*
(1975) 14 Cal.3d 45, 59-60 (internal citations omitted).

There was no such clear, unambiguous language conditioning coverage on the

reporting of values. In fact, the language of the Policy clearly covers "designated locations,"

not "valued locations." Yard 105 was such a "designated location." USFIC's position is in

direct violation of basic principles of policy interpretation, as it requires first casting doubt on

the extent of the Policy's coverage part and then construing it in the most exclusive sense, for

the benefit of the insurer. USFIC asks the Court to enforce an imaginary exclusionary clause

that not only fails the "conspicuous, plain and clear" test -- it does not exist in the Policy at all.

USFIC argues that the coverage part of the Policy (Larson Decl., Vol. I, Ex. B) tells the

insurer to "describe" its buildings to obtain coverage for them, and that this description, to be

valid and to trigger coverage, must include fully completed values column. *See,* USFIC

Response to Special Interrogatory No. 15 (Larson Decl., Vol. III, Ex. H):

> "The true intent and agreement of the parties was that only
> buildings described to USFIC by way of the Statement of
> Values (particularly, the columns therein for replacement
> cost value, number of buildings, construction type, square
> footage, and whether the building(s) were sprinkled and/or
> alarmed) would qualify as Covered Property. USFIC
> contends, in the first instance, that the Policy embodies that
> agreement."

Where is this agreement "embodied"? There is nothing in the coverage part -- which

must be "understood in its most inclusive sense," *Holz Rubber Company supra,* 14 Cal.3d at

60 -- or anywhere else in the Policy that says that for buildings to be covered they must be

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-15-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1 described in any way in the SOV. There is nothing stating that giving values estimates is what

2 USFIC means when it uses the word "describe." Under the clear terms of the Policy, covered

3 buildings are those buildings described in the Supplemental Declarations, not the SOV.

4 Covered buildings are those at the locations which Copart has scheduled by address, city and

5 state, Yard 105 included. What makes USFIC's position so remarkable, so outside the bounds

6 of settled California law, is that it is asking the Court to apply an *implied* limitation on

7 coverage that it claims arises out language *granting* coverage and a form that is not attached to

8 the Policy nor referenced in the Policy by name. An exclusion or limitation could not be *more*

9 ambiguous and unclear than the one USFIC asks the Court to create and then enforce.

### 2. The *Filippo Industries* Case Applies These Principles In A Nearly Identical Situation And Is Dispositive.

12 There is a leading California case on point that reconfirms and applies these settled

13 principles, and is dispositive on the issue of coverage of California law to a situation very

14 similar to ours. In *Filippo Industries, Inc. v. Sun Insurance Company of New York* (1995) 35

15 Cal.App.4th 1728, the insured was a clothing wholesaler, stored clothing in a warehouse in Los

16 Angeles, and insured this clothing with Sun.

> The insurance policy had a value reporting provision. This provision required the insured to submit monthly reports to the insurer of the value of its clothing inventory. Based upon these reports, the insurer assessed a premium and sent the insured an invoice.

> *Id.* at 1730.

21 In May of 1992, a fire destroyed the warehouse and the clothing. Filippo Industries

22 submitted a claim for the policy limits of $1.5 million. Sun rejected the clam and paid Filippo

23 Industries only the amount of approximately $650,000, the last value reported by the insured in

24 December of 1991. The insured had been delinquent in sending in its monthly reports of

25 value.

26 The Court found that the insured was entitled to the entire $1.5 million policy limits for

27 the clothing. In doing so, the Court distinguished cases in which the insurance policies

28 included "value reporting clauses" which specifically and unambiguously informed the insured

-16-

1  of a consequence of failure to not include updated values. For example, one such clause read

2  that "At the time of any loss, if the insured has failed to file with this Company reports of

3  values as above-required, this policy . . . shall cover only at the location and for not more than

4  the amounts included in the last report of value, filed prior to the loss." *Filippo Industries,*

5  *supra,* at 1732. The value reporting provision in *Filippo Industries* was different, the Court

6  found because it ***"fails to specify any consequence in the event the insured has failed to***

7  ***timely file reports of values." Id.*** at 1734 (emphasis added). Here, we do not have a value

8  reporting provision at all that requires the insured to submit values, let alone one that specifies

9  consequences in the event values are not reported.

10  The *Filippo Industries* court found that had the insurer been nervous about the late

11  reporting, it could have cancelled the policy. Here, USFIC had an even easier, less dramatic

12  option: If USFIC, the August 8, 2005 SOV in its hands, with Yard 105 designated as a

13  location and showing an address in Miami, Florida, felt that the omission of a value for the

14  buildings at Yard 105 "imperilled its interests," USFIC could have simply refused to bid on the

15  October 1, 2005 renewal or demanded that the values column be filled in as a condition to

16  making a quote and offering insurance, or included policy language excluding coverage for

17  buildings for which no values were stated.

18      Q.    And there are certainly some instances where,
based on the specifications, you don't want the
19            business at all. Correct?

20      A.    Exactly.

21      Q.    And in that case, you just wouldn't make a bid.
Correct?
22
    A.    We would decline it.
23
Hansen Depo. 24:22-25:3 (Larson Decl. Vol. II, Ex. F).
24  *See also* Streacker Depo. 55:7-56:14 (Larson Decl. Vol. II,
Ex. B).
25

26  Just like the insurer in *Filippo Industries,* USFIC "chose not to do so." *Filippo*

27  *Industries, supra,* at 1734. Copart cannot be required to bear the financial burden of that

28  choice. "The essential element of insurance is the shift of the risk of loss, subject to contingent

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-17-

1  or future events, by legally binding agreement." *Richardson v. GAB Business Services, Inc.*

2  (1984) 161 Cal.App.3d 519, 523. That risk cannot be shifted back to Copart based on a

3  condition or exclusion that does not exist in the Policy.

4

### B.   The Policy Is "Open," Not "Valued" And Must Be Construed As Granting Coverage.

5

6  USFIC may also argue that each location has a particular limit, namely the value stated

7  in the SOV. Because there was no value stated for the building subcategory at the time of the

8  loss, Yard 105 may be covered, but the limit of liability is zero. To make this argument,

9  USFIC must necessarily contend that the policy is "valued" as opposed to "open." A valued

10 policy or endorsement is "one which expresses on its face an agreement that the thing insured

11 shall be valued at a specific sum." Insurance Code §412. If value is not stipulated, the policy

12 is 'open." Insurance Code §411.

13  This Policy is, unambiguously, an "open" one. On the Supplemental Declaration page

14 (Larson Decl. Vol. I, Ex. C) the "Replacement Cost" box is checked. Very clearly, Copart is

15 entitled to the replacement cost of a building not to exceed the $2.5 million per occurrence

16 limit, less the deductible. There is nothing in the Policy that tells Copart that it has agreed to

17 limit its potential recovery to the values stated in the SOV and the underwriter on the Policy

18 admitted that the Policy reflects no such agreement.

19  "It is common knowledge in the insurance industry that due to the moral hazard of over

20 evaluation, 'valued policies' are seldom if ever written in this state." *Breshears v. Indiana*

21 *Lumbermans Mutual Ins. Co. of Indianapolis* (1967) 256 Cal.App.2d 245, 250; *Elliano v.*

22 *Assurance Co. of America* (1975) 45 Cal.App.3d 170, 180 (same). This policy is not one of

23 this rare breed. The Policy, without question, provides that Copart is entitled to payment for

24 the replacement cost of the Yard 105 building.

25

### C.   A Binder Was In Place At The Time of the Hurricane; Nothing In the Binder Ties Coverage to Values Either.

26

27  It is undisputed that the subject policy was not issued until December 14, 2005, well

28 after Hurricane Wilma. USFIC Counterclaim ¶27. Thus, a binder was in place at the time of

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-18-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    the loss.  There is nothing in the binder either (Larson Decl., Vol. III, Ex. D) that ties values

2    into coverage.  The Statement of Values is not even mentioned in the binder.   A Schedule of

3    Locations is not mentioned in the binder.

4        The binder indicates that "COVERAGE" is very broad indeed.  It is for "Real Property,

5    Personal Property, EDP, business interruption, extra expense and inventory."  It provides that

6    the "LIMIT" is "$2,500,000 per occurrence and in the annual aggregate."  The only mention of

7    values is the presence of the total location value sum of $424,472,311 under the heading

8    "RATE BASIS."   There is nothing in the binder that informs the insured that there is no

9    coverage for properties which have been designated but for which values had not yet been

10    stated for each column of the SOV form.

11        Therefore, even under the terms of the binder, there is coverage.

12        [A] binder is an independent contract, separate and distinct
13        from the permanent insurance policy.  It is intended to give
         temporary protection pending the investigation of the risk of
14        the insurer and until issuance of a formal policy or rejection
         of the insurance application by the insurer.

15        *Ahern v. Dillenback* (1991) 1 Cal.App.4[th] 36, 48.

16        As confirmed by Marni Hansen, the Product Line Manager for property policies at

17    USFIC who supervised the underwriters of this policy, the binder sets forth all essential terms

18    of coverage until such time as the policy is issued.  Hansen Depo. 36:5-8 (Larson Decl., Vol.

19    II, Ex. F).  By statute, the binder must give a description of the property insured and the nature

20    and amount of coverage.  Ins. Code §382.5.  The binder here informs Copart that it has

21    insurance on all of its "Real Property" up to $2.5 million per occurrence limit.  There is

22    nothing in the binder that says the "amount of coverage" is tied to specific entries on the

23    Statement of Values form nor is that form even mentioned.  There is nothing that conditions

24    coverage on a value being stated for a particular location.  Therefore, there is coverage for the

25    buildings at Yard 105, independently, under the terms of the binder.

26    / / /

27    / / /

28    / / /

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT        Case No.  C 07 2684 CW-EDL

**D.    USFIC's Counterclaim is Without Merit As A Matter of Law.**

      **1.    First Claim – Reformation.**

            **a.  The Requested Reformation Would Alter the Agreed Risk And Would Be Improper.**

USFIC's counterclaim seeks reformation of the Policy to exclude Yard 105 from coverage in the event the Court agrees with Copart's interpretation of the Policy as outlined above.  A written contract is presumed to express the parties' intention correctly and USFIC can only overcome this presumption and prove its claim for reformation by clear and convincing evidence.  *Taff v. Atlas Assur. Co., Ltd.* (1943) 58 Cal.App.2d 696, 702.  The Court must take into account this higher standard of proof in ruling on this motion. "In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 254.

USFIC's effort to reform is improper; the insurer is trying to redo the deal and lessen the risk that it undertook.  It is not seeking to reform the Policy to reflect the true agreement of the parties that was not properly reflected in the Policy at the outset.  The exclusion of Yard 105 from the "all risk" property policy would create a new and different contract.  "'Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral.'" *American Home Ins. Co. v. Travelers Indemnity Co.* (1981) 122 Cal.App.3d 100, citing *Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 700.

Usually in a reformation action, there is an antecedent agreement, often oral, that a party can point to as embodying the parties' true intent.  Whether through mistake or fraud, something gets lost in the translation of the antecedent agreement to the written agreement (for example a named insured gets misnamed in or left out of the policy).  *See, American Surety Co. of New York v. Heise* (1955) 136 Cal.App.2d 689.

In this case, there is no antecedent agreement to which USFIC can point in which the parties agreed that designated Yard, with incomplete values entries on the SOV form would be

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1   excluded from coverage. USFIC is essentially asking the Court to impose a new agreement on

2   the parties. Without evidence of a "common intent" to enter into the agreement USFIC urges

3   there can be no reformation. "'[T]he court cannot reform and remake a contract for alleged

4   mistake where there was never any such common intent.'" *American Home Insurance*

5   *Company v. Travelers Indemnity Company* (1981) 122 Cal.App.3d 100. The Policy cannot be

6   reformed to change the risk to which Copart and USFIC agreed. *International Serv. Ins. Co. v.*

7   *Gonzales* (1987) 194 Cal.App.3d 110, 119.

8       What USFIC is really doing through its request for reformation, relief it wants only if it

9   loses on the coverage issue, is asking the Court, if it find Copart's Policy interpretation to be

10  correct, to write an entirely new Policy. The Counterclaim gives no guidance on how the Court

11  is supposed to do this—write an exclusion, a condition, tinker with the definitions? This

12  request stands the equitable remedy of reformation and every principle of policy interpretation

13  on its head. Copart purchased a Policy and is entitled to rely on its terms. USFIC does not get

14  a "do over" on the drafting, with the Court as its underwriter, because it now wishes it did not

15  have to pay for a covered loss.

16

17          Having received the policy from the defendant insurance
            company and having paid consideration therefore, the
18          plaintiff corporation was entitled to rely upon the express
            agreement as expressing the mutual understanding of the
19          parties, and the defendant company, after the loss had
            occurred which was covered by the express terms of the
20          policy was bound by those terms. *American Building*
            *Maintenance Co. v. Indemnity Ins. Co. of North America*
21          (1932) 214 Cal. 608, 614.

22       Thus, in this case, the Court should not even reach the issue of mistake, since USFIC's

23  reformation request is completely outside the bounds of what equity can or should do. As we

24  see below, USFIC has not come forward with any evidence of mistake either.

25

26          **b.  There Is No Evidence of Mistake Which USFIC Has The Burden
                  To Prove By Clear and Convincing Evidence.**

27       For reformation, a mistake must either be mutual, or a unilateral mistake by one party

28  (USFIC) that the other party (Copart) knew or suspected. Civil Code §3399. There is

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-21-

1    obviously no mutual mistake, and the evidence demonstrates that there was no unilateral

2    mistake by USFIC either. The lack of evidence of mistake demonstrates that USFIC wrote

3    exactly the Policy it intended to write.

4        Copart asked USFIC in an interrogatory to describe in detail the mistake alleged and

5    the factual circumstances of that mistake. Despite serving its answer very late in the discovery

6    process (May 12, 2008), USFIC offered no factual evidence and baldly restated the allegations

7    of the Counterclaim, including the allegation of Counterclaim Paragraph 65 that pleads facts in

8    the alternative and cannot decide if the alleged mistake was mutual or unilateral. USFIC

9    Response to Special Interrogatory No. 14. (Larson Decl. Vol. III, Ex. H).

10       When asked to identify the antecedent agreement between Copart and USFIC that, by

11   mistake, failed to find its way into the Policy, USFIC could not identify a single letter, email,

12   conversation, specification, binder, etc. signifying such an agreement between USFIC and

13   Copart to tie values to coverage, or the mistake by which this agreement -- hardly an

14   insignificant term if that were indeed the parties' intent -- did not become embodied in the

15   Policy. USFIC Response to Special Interrogatory No. 15. (Larson Decl. Vol. III, Ex. H) "One

16   of the principle purposes of the summary judgment rule is to isolate and dispose of factually

17   unsupported claims or defenses, and we think it should be interpreted in a way that allows it to

18   accomplish this purpose." *Celotex Corporation v. Catrett* (1986) 47 U.S. 317, 323-324.

19   USFIC's complete failure to identify facts supporting its claim, on which it has a high burden

20   of proof, justifies entry of summary judgment in Copart's favor.

21       **2.  Second Claim -- Negligent Misrepresentation.**

22       USFIC also claims that Copart, through Marsh, "concealed or misrepresented the

23   exposures that became insured under the contracts." Counterclaim ¶70. Accordingly, USFIC

24   claims it has "suffered damages including but not limited to lost premiums." Counterclaim

25   ¶72. Summary judgment is appropriate on this claim in Copart's favor for either of two

26   independent reasons.

27   / / /

28   / / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-22-

### a.    The Estimates Of Values In The SOVs Are Opinions, Not Facts.

Negligent misrepresentation requires that USFIC prove that Copart made a false statement of fact honestly believing it was true, but without a reasonable ground for that belief. The values stated in the SOVs are no more than reasonable estimates of what it might cost to replace Copart's buildings, and do not purport to be anything else. They are not signed under penalty of perjury, or signed at all. Streacker Depo. 204:21-205:4, Hansen Depo. 54:25-55:3. (Larson Decl. Vol. II, Exs. B and F). There is no clause in the policy warranting them to be true or even requiring them. Streacker Depo. 205:5-15 (Larson Decl. Vol. II, Ex. B). They represent Copart's best estimate of the values at the time of the estimate.

Copart's reasonable estimation of the replacement cost of a property, in the event that it was destroyed, is an opinion as to a future event, and cannot be an actionable misrepresentation, even if such opinions were, not surprisingly, occasionally inexact. It is axiomatic under California law that "[v]alue is quintessentially a matter of opinion, not a statement of fact." *New-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4[th] 303, 310. *See also, Padgett v. Phariss* (1997) 54 Cal.App.4[th] 1270, 1284 (Summary judgment proper on fraud claim where alleged misrepresentation was made as to the fair market value of property).

### b.    "Lost Premiums" Are Speculative "Benefit of the Bargain" Damages Unrecoverable As A Matter Of Law On A Negligent Misrepresentation Claim.

USFIC is seeking as damages what it claims it would have charged as premiums had it known the alleged "true" value of the properties. It is not out-of-pocket any money. It has collected far more in premiums than it has paid out. That is why it is seeking so-called "lost premiums" not a return of any money it has paid to Copart. *See* USFIC Interrogatory Response No. 18 (Larson Decl., Vol. III, Ex. H) in which USFIC refuses to calculate its damages on the ground that it is "premature" despite serving those responses near the close of discovery. Were USFIC actually out-of-pocket money, presumably it could identify this amount without the need for experts to tell it what its "damages" were. USFIC is seeking money representing an *expectation* of what additional money it claims it would have earned:

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT    Case No. C 07 2684 CW-EDL

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

Q.    (Ms. Puri) But as far as you know, aside from the premiums, back premiums that would be owed, there are no other categories of dollars that would be owed to USFIC.

A.    (By Ms. Streacker) Not that I know of.

MR. RUBY:    The only damages being claimed are additional premiums that would have been collected if different values had been reported and interest and so forth.

Streacker Depo. 219:19-220:2

(Larson Decl., Vol. II, Ex. B).

These damages are not recoverable as a matter of law and therefore this claim fails:

In California, "recovery in a tort action for fraud is limited to the actual damages suffered by the plaintiff. [Citations] (*Ward v. Taggart* (1959) 51 Cal.2d 736, 741 [336 P.2d 534], italics added. "'Actual' is defined by 'existing in fact or reality,' as contrasted with 'potential' or 'hypothetical,' and as distinguished from 'apparent' or 'nominal.' (Webster's Third New Internat. Dict. (1964) p. 22). It follows that 'actual damages' are those which compensate someone for the harm from which he or she has been proven to currently suffer or from which the evidence shows he or she is certain to suffer in the future." *Saunders v. Taylor* (1996) 42 Cal.App.4[th] 1538, 1543 [50 Cal. Rptr. 2d 395]).

Where fraud is alleged to have caused damage in connection with the purchase, sale or exchange of property, California applies the out-of-pocket loss rule. The doctrine limits recovery to the difference between the actual values, intrinsic and economic, of that which the defrauded person gave up and that which he or she received in return, plus sums expended in reliance on the fraud, and it precludes recovery based on the "benefit of the bargain," *i.e.* the plaintiff's expectancy interest created by the fraud. (Civ. Code §3343; *see Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4[th] 1226, 1240 [Cal. Rptr.2d 352, 900 P.2d 601].

*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4[th] 167, 195 (Baxter, J. concurring).

USFIC's damages theory hypothesizes that *if* Copart had stated "true" values *then* USFIC would have quoted a higher premium *and then* Copart would have accepted that bid and not negotiated it down or placed its insurance elsewhere. These are not "actual" damages. They do not exist in fact or reality.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-24-

1    USFIC is out-of-pocket no money. What USFIC is seeking is its "expectancy interest"

2    in additional premiums that it imagines it might have charged. That is not a recoverable

3    category of damages on this claim. *See also, Gagne v. Bertran* (1954) 43 Cal.2d 481, in which

4    the California Supreme Court held that one is entitled only to "actual losses suffered because

5    of the misrepresentation." *Id.* at 490.

6         This well settled rule is confirmed in Restatement of Torts, §552B, which provides that

7    only out-of-pocket losses may be recovered on a negligent misrepresentation claim, not benefit

8    of the bargain damages:

9              The damages recoverable for a negligent misrepresentation
                are those necessary to compensate the plaintiff for the
10             pecuniary loss to him of which the misrepresentation as the
                legal cause . . . (2) the damages recoverable for negligent
11             misrepresentation do not include the benefit of the
                plaintiff's contract with the defendant.
12
               *Restatement of the Law, Torts*, Section 552B, Damages for
13             Negligent Misrepresentation.

14         Accordingly, as a matter of law, the negligent misrepresentation claim is improper and

15    summary judgment should be granted in Copart's favor.

16   **IV.    CONCLUSION**

17         The plain policy terms and *Filippo Industries* compel the conclusion that there is

18    coverage for Yard 105. The Counterclaim advances invalid theories unsupported by any

19    evidence. Summary judgment should be granted in Copart's favor.

20    Dated: July 10, 2008                    PILLSBURY & LEVINSON, LLP

21

22                              By:  /s/ Eric K. Larson
                                     Philip L. Pillsbury, Jr.
23                                   Vedica Puri
                                     Eric K. Larson
24                                   Attorneys for Plaintiff
                                     COPART INC.
25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-25-

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT                    Case No. C 07 2684 CW-EDL