# EXHIBIT D

```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
         OAKLAND DIVISION
------------------------------------------X


COPART,

                Plaintiff,
                                          Case No:
     - against -                          C072684 CW


CRUM & FORSTER INDEMNITY COMPANY, UNITED
STATES FIRE INSURANCE COMPANY, and DOES 1-10,


                Defendants.
------------------------------------------X
AND RELATED COUNTERCLAIMS
------------------------------------------X
```

          Merrill Legal Solutions
          25 West 45th Street
          New York, New York 10036

          June 13, 2008
          10:30 a.m.


          - Volume I -


   DEPOSITION OF CARLTON CLARKE, pursuant to Notice, taken at the above place, date and time, before Dawn Matera, a Registered Professional Reporter and Notary Public within and for the State of New York.

Page 1

CARLTON CLARKE    June 13, 2008

|  |  |  |
|---|---|---|
|  | 1 | Carlton Clarke |
| 12:35:45 | 2 | subject to a Statement of Values on file with the |
| 12:35:47 | 3 | company. |
| 12:35:48 | 4 | Q. In your time with Crum & Forster, do |
| 12:35:50 | 5 | you ever recall reading a policy provision in a Crum |
| 12:35:54 | 6 | & Forster policy that stated if the value is missing |
| 12:35:58 | 7 | from the Schedule of Values, there would be no |
| 12:36:00 | 8 | coverage? |
| 12:36:00 | 9 | A. No. |
| 12:36:01 | 10 | Q. When Copart's Hurricane Wilma claims |
| 12:36:09 | 11 | first came in, were you already handling Copart's |
| 12:36:14 | 12 | Hurricane Katrina claims? |
| 12:36:16 | 13 | A. Yes. |
| 12:36:17 | 14 | Q. Do you recall who at Copart you talked |
| 12:36:18 | 15 | to when Copart's Katrina claims had come in? |
| 12:36:22 | 16 | A. Off the top of my head, no, I would |
| 12:36:25 | 17 | have to refer to the claim file. |
| 12:36:27 | 18 | Q. But one of the first things you would |
| 12:36:29 | 19 | have done upon receiving the Katrina claims, based on |
| 12:36:32 | 20 | your pattern of practice, would be to call someone at |
| 12:36:35 | 21 | Copart or make contact with the insured? |
| 12:36:36 | 22 | A. Correct. |
| 12:36:37 | 23 | Q. And when the Copart Hurricane Wilma |
| 12:36:41 | 24 | claims come in, came in, rather -- I will represent |
| 12:36:46 | 25 | to you it was around the end of October 2005 -- do |

80

|  |  |
|---|---|
| 12:36:50 | 1          Carlton Clarke |
| 12:36:52 | 2   you recall making contact with the Copart insured? |
| 12:36:56 | 3          A.    I recall eventually getting in contact |
| 12:36:58 | 4   with the Copart insured. |
| 12:37:00 | 5          Q.    Why do you say "eventually"? |
| 12:37:02 | 6                Do you remember it didn't happen too |
| 12:37:02 | 7   quickly? |
| 12:37:05 | 8          A.    Again, off the top of my head, I think |
| 12:37:07 | 9   there was some delay, there was some delay or some |
| 12:37:12 | 10  issue with making contact.  And I think there was a, |
| 12:37:14 | 11  there was a delay in making contact.  Some thing like |
| 12:37:15 | 12  that. |
| 12:37:16 | 13         Q.    Do you recall hiring an independent |
| 12:37:20 | 14  adjuster to assist you in adjusting the Copart Wilma |
| 12:37:20 | 15  claim? |
| 12:37:20 | 16         A.    Yes. |
| 12:37:21 | 17         Q.    Who do you recall hiring? |
| 12:37:26 | 18         A.    This was Orvin Wills of General |
| 12:37:27 | 19  Adjustment Bureau, GAB. |
| 12:37:29 | 20         Q.    GAB, thank you.  I didn't know what |
| 12:37:31 | 21  that acronym stood for. |
| 12:37:34 | 22               Did you have a prior relationship with |
| 12:37:35 | 23  Mr. Wills that you selected him? |
| 12:37:38 | 24         A.    I've known Orvin in a professional |
|          | 25  capacity for several years. |

81

|  |  |  |
|---|---|---|
|  | 1 | Carlton Clarke |
| 13:03:39 | 2 | Copart claim? |
| 13:03:40 | 3 | A.    No. |
| 13:03:41 | 4 | Q.    Did you rely on your analysis of the |
| 13:03:43 | 5 | '05/'06 policy in denying the Copart claim? |
| 13:03:47 | 6 | A.    I relied on the underwriter's |
| 13:03:49 | 7 | assertion that that location was not a covered |
| 13:03:51 | 8 | location. |
| 13:03:51 | 9 | Q.    And that was all? |
| 13:03:52 | 10 | A.    That was all. |
| 13:04:01 | 11 | Q.    We'll come back to the windstorm |
| 13:04:03 | 12 | deductible issue in a moment. |
| 13:04:05 | 13 | Were there other occasions in your |
| 13:04:30 | 14 | time working for Crum & Forster where you asked an |
| 13:04:34 | 15 | underwriter for a coverage opinion? |
| 13:04:36 | 16 | MS. MILLIKAN: Objection. Misstates |
| 13:04:38 | 17 | the testimony, but you can answer the |
| 13:04:40 | 18 | question. |
| 13:04:40 | 19 | A.    I asked an underwriter, not for a |
| 13:04:46 | 20 | coverage opinion, I asked the underwriter to explain |
| 13:04:49 | 21 | their intent with regards to the policy that they |
| 13:04:52 | 22 | wrote. |
| 13:04:52 | 23 | Q.    And if an underwriter, say, offered a |
| 13:04:55 | 24 | coverage opinion, this location is or is not covered, |
| 13:04:58 | 25 | you would endeavor to independently verify that; |

106

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
|          | 1  | Carlton Clarke                                                       |
| 14:56:16 | 2  | exclusion that I cited.                                              |
| 14:56:16 | 3  | In this instance, there is no exact                                  |
| 14:56:19 | 4  | wording in the policy that comports with the reason                  |
| 14:56:21 | 5  | for denial or the exclusion, so I did not cite it.                   |
| 14:56:24 | 6  | Q.   But your understanding is there is                              |
| 14:56:26 | 7  | general language in the policy that supports the                     |
| 14:56:28 | 8  | basis for this denial; right?                                        |
| 14:56:30 | 9  | A.   Yes.                                                            |
| 14:56:30 | 10 | Q.   And you didn't think it was necessary                           |
| 14:56:32 | 11 | to cite that, even that general language?                            |
| 14:56:34 | 12 | A.   No, because I think my statement                                |
| 14:56:38 | 13 | speaks for itself.                                                   |
| 14:56:38 | 14 | Q.   How would an insured know the basis on                          |
| 14:56:41 | 15 | which you were denying the claim, except for the fact                |
| 14:56:45 | 16 | that it wasn't in the Statement of Values?                           |
| 14:56:47 | 17 | MS. MILLIKAN:  Objection.  Calls for                                 |
| 14:56:48 | 18 | speculation, but you can answer the question.                        |
| 14:56:55 | 19 | A.   I think the statement is very clear.                            |
| 14:56:56 | 20 | Where it says "Our review of the Statement of Values                 |
| 14:56:59 | 21 | attached to your policy indicates that there is no                   |
| 14:57:01 | 22 | coverage for buildings or time element exposures at                  |
| 14:57:06 | 23 | this location."                                                      |
| 14:57:07 | 24 | Q.   And as far as you knew, this was the                            |
| 14:57:09 | 25 | first time that you were communicating to the insured                |

175

|  |  | Carlton Clarke |
|---|---|---|
| 14:57:11 | 2 | that they didn't have coverage for 105 because it |
| 14:57:14 | 3 | wasn't in the SOV; right? |
| 14:57:16 | 4 | A.    Yes. |
| 14:57:17 | 5 | Q.    And did you seek and receive approval |
| 14:57:20 | 6 | to send this letter before you did so? |
| 14:57:22 | 7 | A.    Absolutely. |
| 14:57:22 | 8 | Q.    And you sought that from Mr. McCarthy? |
| 14:57:26 | 9 | A.    Yes. |
| 14:57:26 | 10 | Q.    Did you seek that from anyone else on |
| 14:57:28 | 11 | the Crum & Forster team, as far as you recall? |
| 14:57:31 | 12 | A.    I think Jim Krause may have taken a |
| 14:57:33 | 13 | look at the letter, but it was not in terms of |
| 14:57:36 | 14 | approval, but simply for content. |
| 14:57:38 | 15 | Q.    And do you recall Mr. McCarthy and |
| 14:57:39 | 16 | Mr. Krause having any comments on that letter? |
| 14:57:41 | 17 |         MS. MILLIKAN:  Do not respond with |
| 14:57:43 | 18 |         respect to any comments that Mr. Krause may |
| 14:57:45 | 19 |         have had because that would be |
| 14:57:46 | 20 |         attorney/client privilege. |
| 14:57:48 | 21 |         You can answer to anything that |
| 14:57:49 | 22 |         Mr. McCarthy might have told you. |
| 14:57:51 | 23 | A.    Dennis McCarthy approved the letter. |
| 14:57:53 | 24 | Q.    Do you remember anything else |
| 14:57:55 | 25 | substantive aside from him saying go ahead with the |

176