# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORTHERN DIVISION

---oOo---

| | | |
|---|---|---|
| COPART, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. C072684 CW |
| | ) | |
| CRUM & FORSTER INDEMNITY | ) | |
| COMPANY, UNITED STATES FIRE | ) | |
| INSURANCE COMPANY, and DOES | ) | **CERTIFIED COPY** |
| 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

VIDEOTAPED DEPOSITION OF

MARGARET ELIZABETH HANSEN

THURSDAY, JUNE 12, 2008

REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-410157)

| | | |
|---|---|---|
| 10:09:21 | 1 | to pursue, that it fits within our underwriting |
| 10:09:25 | 2 | guidelines and models, we would proceed to rate it |
| 10:09:30 | 3 | and to determine the price. |
| 10:09:39 | 4 | Q.  So just so I understand your clarification, |
| 10:09:41 | 5 | on a renewal, you're not so likely to go back for |
| 10:09:44 | 6 | more information as you would with new business? |
| 10:09:47 | 7 | A.  Hopefully, no.  Hopefully you've developed |
| 10:09:49 | 8 | the -- on the initial go-around, you have |
| 10:09:55 | 9 | established the information about the account.  On a |
| 10:09:59 | 10 | renewal, you would be looking for differences, |
| 10:10:01 | 11 | what's happened in the past year, how the -- how the |
| 10:10:09 | 12 | renewal information relates to the initial |
| 10:10:12 | 13 | information provided. |
| 10:10:24 | 14 | Q.  Let's focus right now on new business. |
| 10:10:29 | 15 | What's the next step you take after the -- |
| 10:10:34 | 16 | you've analyzed the specifications and you want to |
| 10:10:36 | 17 | write the policy? |
| 10:10:37 | 18 | A.  We would, as I say, come up with a price, a |
| 10:10:41 | 19 | limit that we wish to provide, what kind of form we |
| 10:10:46 | 20 | wish to provide, what perils we wish to cover, and |
| 10:10:51 | 21 | provide a quotation to the producer.  An offer. |
| 10:11:10 | 22 | Q.  And there are certainly some instances |
| 10:11:12 | 23 | where, based on the specifications, you don't want |
| 10:11:15 | 24 | the business at all.  Correct? |
| 10:11:16 | 25 | A.  Exactly. |

24

| | | |
|---|---|---|
| 10:11:25 | 1 | Q. And in that case, you just wouldn't make a |
| 10:11:27 | 2 | bid. Correct? |
| 10:11:28 | 3 | A. We would decline it. |
| 10:11:44 | 4 | Q. Now, once you make the quote to the |
| 10:11:48 | 5 | producer, sometimes was there some period of |
| 10:11:54 | 6 | negotiation regarding the terms? |
| 10:11:56 | 7 | A. There could be, yes. |
| 10:12:07 | 8 | Q. And what are the sort of terms that would |
| 10:12:09 | 9 | be negotiated at that stage? |
| 10:12:15 | 10 | A. We could negotiate position on the account, |
| 10:12:20 | 11 | which layer we might want to provide. We could |
| 10:12:26 | 12 | negotiate price. We could negotiate commission. |
| 10:12:53 | 13 | Q. It was -- did it often happen that when you |
| 10:12:56 | 14 | made a bid, or a quote, that the potential insured |
| 10:13:01 | 15 | took their business elsewhere? |
| 10:13:04 | 16 | A. Could very well have, yes. |
| 10:13:16 | 17 | Q. They're certainly not bound to accept your |
| 10:13:18 | 18 | quote. Correct? |
| 10:13:19 | 19 | A. Oh, heavens no. |
| 10:13:29 | 20 | Q. Let's look at -- let's mark this as |
| 10:13:31 | 21 | Exhibit 152. |
| 10:13:33 | 22 | (Deposition Exhibit 152 was marked for |
| 10:13:35 | 23 | identification.) |
| 10:13:47 | 24 | MR. LARSON: Q. I have marked as |
| 10:13:48 | 25 | Exhibit 152 the Specifications of Insurance for |

25

| | | |
|---|---|---|
| 10:33:29 | 1 | may or may not have reviewed it. |
| 10:33:42 | 2 | Q. Was there some sort of criteria by which |
| 10:33:44 | 3 | you decided whether or not to review a binder? |
| 10:33:49 | 4 | A. No. |
| 10:34:04 | 5 | Q. Is the purpose of a binder to state the |
| 10:34:06 | 6 | essential terms of coverage until such time as the |
| 10:34:08 | 7 | policy is issued? |
| 10:34:10 | 8 | A. Yes. |
| 10:34:18 | 9 | Q. And the premium on the policy was $250,000. |
| 10:34:23 | 10 | Is that correct? |
| 10:34:23 | 11 | A. Yes. |
| 10:34:29 | 12 | Q. How was that amount arrived at? |
| 10:34:34 | 13 | A. It's arrived at by the underwriter by |
| 10:34:37 | 14 | pricing the account in accordance with the standard |
| 10:34:42 | 15 | methodologies used at the time at Crum & Forster, |
| 10:34:46 | 16 | along with some negotiations to arrive at something |
| 10:34:51 | 17 | that is mutually agreeable to all parties. |
| 10:35:05 | 18 | Q. So it's a negotiated amount? |
| 10:35:06 | 19 | A. Yes. |
| 10:35:09 | 20 | Q. And what are the factors from Crum & |
| 10:35:11 | 21 | Forster's perspective that go into that amount? |
| 10:35:16 | 22 | A. The factors would be the type of property |
| 10:35:23 | 23 | we would be covering, where it's located, the |
| 10:35:28 | 24 | physical characteristics of it, the deductibles that |
| 10:35:31 | 25 | would be applied, the specific perils that are being |

| | | |
|---|---|---|
| 11:20:31 | 1 | not in others. |
| 11:20:35 | 2 | Q. Did you ever do it at Crum & Forster? |
| 11:20:38 | 3 | A. I don't recall. |
| 11:20:51 | 4 | Q. Do you ever require in the course of your |
| 11:20:53 | 5 | underwriting experience signed statements of values? |
| 11:20:56 | 6 | A. Yes. |
| 11:20:59 | 7 | Q. And what is the purpose of a signed |
| 11:21:01 | 8 | statement of values? |
| 11:21:04 | 9 | A. It signifies that the insured has agreed -- |
| 11:21:11 | 10 | has acknowledged that these are the values that they |
| 11:21:14 | 11 | wish to have covered under the policy. |
| 11:21:24 | 12 | Q. And had you ever required signed statement |
| 11:21:26 | 13 | of values while working at Crum & Forster? |
| 11:21:30 | 14 | A. I can't recall. |
| 11:21:40 | 15 | Q. Out of all the statement of values you've |
| 11:21:44 | 16 | received over your career, can you give me a |
| 11:21:48 | 17 | ballpark percentage of how many were signed? |
| 11:21:57 | 18 | A. Maybe 75 percent. That's very ballpark. |
| 11:22:11 | 19 | Q. In the course of your underwriting |
| 11:22:12 | 20 | experience, do you ever include in the policy |
| 11:22:18 | 21 | language by which the insured warrants that the |
| 11:22:20 | 22 | values in the statement of values are true and |
| 11:22:23 | 23 | correct, or words to that effect? |
| 11:22:28 | 24 | A. I don't recall. |
| 11:22:40 | 25 | Q. And going beyond my question that just used |

54

| | | |
|---|---|---|
| 11:22:43 | 1 | the word "warrant," do you recall using any sort of |
| 11:22:47 | 2 | language where the insured would guarantee or |
| 11:22:49 | 3 | promise that the numbers in the statement of -- |
| 11:22:53 | 4 | A.  No. |
| 11:22:55 | 5 | Q.  -- values were correct? |
| 11:23:11 | 6 | Did you understand the values numbers in |
| 11:23:14 | 7 | the Copart statement -- statements of values to be |
| 11:23:19 | 8 | reasonable estimates of the replacement costs of the |
| 11:23:22 | 9 | properties? |
| 11:23:23 | 10 | A.  I don't recall. |
| 11:23:23 | 11 | MR. RUBY:  Objection.  That calls for |
| 11:23:25 | 12 | speculation.  The witness hasn't said she ever saw |
| 11:23:29 | 13 | them. |
| 11:23:33 | 14 | MR. LARSON:  Q.  Did you ever look at a |
| 11:23:34 | 15 | Copart statement of values? |
| 11:23:36 | 16 | A.  I don't recall. |
| 11:23:52 | 17 | Q.  In your experience, prior to issuing a |
| 11:23:57 | 18 | binder on a report policy, have you had property |
| 11:24:01 | 19 | appraised? |
| 11:24:05 | 20 | A.  No. |
| 11:24:12 | 21 | Q.  Have you ever had a property inspected |
| 11:24:14 | 22 | before binding a policy? |
| 11:24:18 | 23 | A.  Possibly. |
| 11:24:31 | 24 | Q.  Have you ever asked to review backup |
| 11:24:33 | 25 | documents that would show, or back up, the value of |

| | | |
|---|---|---|
| 11:28:02 | 1 | Q. Did Crum & Forster or USFIC ever give Marsh |
| 11:28:10 | 2 | instructions as to how the values should be |
| 11:28:15 | 3 | determined that were to be placed in the statement |
| 11:28:17 | 4 | of values? |
| 11:28:18 | 5 | A. No. |
| 11:28:21 | 6 | Q. Did Crum & Forster or USFIC ever give |
| 11:28:25 | 7 | instructions to an insured as to how the values |
| 11:28:31 | 8 | should be determined that are placed in the |
| 11:28:32 | 9 | statement of values? |
| 11:28:33 | 10 | A. No. |
| 11:29:26 | 11 | MR. LARSON: I'd like to mark this as 164. |
| 11:29:28 | 12 | (Deposition Exhibit 164 was marked for |
| 11:29:31 | 13 | identification.) |
| 11:29:45 | 14 | MR. LARSON: Q. I've marked as Exhibit 164 |
| 11:29:46 | 15 | a letter from you to Copart dated June 22, 2005. |
| 11:29:56 | 16 | I'd like you to take a look at it and confirm for me |
| 11:29:59 | 17 | that this is a letter you wrote. |
| 11:30:11 | 18 | A. Yes. |
| 11:30:12 | 19 | Q. And can you tell me what the purpose of |
| 11:30:13 | 20 | this letter is? |
| 11:30:14 | 21 | A. The purpose is -- excuse me. |
| 11:30:16 | 22 | The purpose of the letter -- and this is a |
| 11:30:18 | 23 | form letter we sent out on every expiring policy, |
| 11:30:23 | 24 | because we are an admitted -- we were an admitted |
| 11:30:26 | 25 | carrier -- was to advise the insured that we would |

| | | |
|---|---|---|
| 13:04:48 | 1 | operations manager or to the managers of the |
| 13:04:50 | 2 | departments in which they worked.  So -- |
| 13:04:52 | 3 |     Q.  So is this purely an administrative email |
| 13:04:54 | 4 | just to get a policy number? |
| 13:04:56 | 5 |     A.  Right.  Yes, it is. |
| 13:04:58 | 6 |     Q.  When you refer to the premium of $306,250 |
| 13:05:04 | 7 | net, what does the "net" refer to? |
| 13:05:07 | 8 |     A.  The "net" refers to the difference between |
| 13:05:12 | 9 | the gross premium at a commission level, and with a |
| 13:05:15 | 10 | premium at zero commission.  It would mean just |
| 13:05:18 | 11 | taking the commission amount out of the premium. |
| 13:05:27 | 12 |     Q.  The premium on this policy was 350,000 |
| 13:05:30 | 13 | minus the commission.  Correct? |
| 13:05:32 | 14 |     A.  Correct.  I assume, yeah. |
| 13:05:33 | 15 |     Q.  And that equals a 306,250 -- |
| 13:05:36 | 16 |     A.  That's what I'm assuming here, yes. |
| 13:05:51 | 17 |     Q.  I'll mark as 170 the next email. |
| 13:05:55 | 18 |     (Deposition Exhibit 170 was marked for |
| 13:05:57 | 19 |     identification.) |
| 13:06:13 | 20 |     MR. LARSON:  Q.  I've marked as Exhibit 170 |
| 13:06:15 | 21 | a string of emails beginning late September, early |
| 13:06:21 | 22 | October, 2005 time frame.  You are copied on the |
| 13:06:28 | 23 | first two, and the one on the second page is |
| 13:06:32 | 24 | directed to you in response to the email forwarding |
| 13:06:35 | 25 | the binder that we originally looked at. |