Jess B. Millikan, SBN 095540
Samuel H. Ruby, SBN 191091
Judith A. Whitehouse, SBN 198176
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
jess.millikan@bullivant.com
samuel.ruby@bullivant.com
judith.whitehouse@bullivant.com

Attorneys for Defendant
United States Fire Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC.,<br><br>        Plaintiff,<br><br>     vs.<br><br>CRUM & FORSTER INDEMNITY COMPANY[1], UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10,<br><br>        Defendants.<br><br>_____<br>AND RELATED COUNTERCLAIM | Case No.: C 07 2684 CW (EDL)<br><br>**DECLARATION OF MONICA STREACKER IN SUPPORT OF USFIC'S:**<br><br>**(1) MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT; AND**<br>**(2) OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON USFIC'S COUNTERCLAIM**<br><br>Date:     August 21, 2008<br>Time:    2:00 p.m.<br><br>Action File:   March 20, 2007<br>Trial Date:   November 10, 2008 |

_____

[1] Dismissed by Order Upon Stipulation (6/15/07)

1    I, Monica Streacker, declare under penalty of perjury under the laws of the State of

2  California and of the United States that the following matters are true and correct, of my own

3  personal knowledge, and that if called as a witness I would testify:

4    1.    I am an underwriter for United States Fire Insurance Company. I was involved

5  in issuing endorsements to the 2003-2004 policy after the underwriter of that policy, Richard

6  Blanchette, left the company. I was the underwriter of Copart's 2004-2005, 2005-2006, and

7  2006-2007 renewal policies.

8    2.    For each of the renewal policies, I utilized a "Supplemental Declarations" form

9  as required by US Fire. Because Copart's account involved multiple locations and in some

10 cases multiple buildings at a given location, it was not possible to describe all the covered

11 locations and buildings in "Item 2" of the form. Accordingly, and per company policy, I

12 included in each of the policies a "Schedule of Locations" form and incorporated that form into

13 the declarations by reference in "Item 2."

14    3.    However, although the Schedule of Locations form provides space where

15 multiple premises may be described (by address, city, state, and zip code) and where any

16 buildings at those premises may be described (by building number and occupancy), even that

17 form is impractical to use for very large accounts (such as Copart's) that involve over a hundred

18 locations. For such accounts, it is my standard practice and company standard practice to

19 complete the form simply by incorporating by reference whatever schedule was submitted by

20 the insured through its broker. Not only is this expedient; it avoids any risk of error or omission

21 in retyping the insured's information.

22    4.    Usually, the schedule provided by the broker is labeled as a "statement of

23 values," although the label is unimportant. What is important is that the document (1) describe

24 the nature of the exposures to be insured (buildings, contents, business interruption, etc.); (2)

25 describe the locations of the exposures; and (3) quantify the exposures in dollar terms (in the

26 case of buildings, replacement cost values). Values are particularly important because they are

27 a primary factor our calculations of the premium that we charge to insure the described

28 exposures.

-2-

5.    The purpose of "Item 4" of the Supplemental Declarations form is not to describe the locations that the policy covers or the buildings or other property at those locations that the policy covers. The purpose of "Item 4" is to specify the limit of insurance for a given type of exposure, the applicable covered causes of loss, and whether there is a coinsurance threshold for that type of coverage. "Item 4" contains columns for location numbers and building numbers so that those terms might be varied from location to location and even building to building. Here, however, the limit, applicable covered causes of loss, and coinsurance terms were the same for all locations and buildings.

6.    I am aware that some insurers may issue policies on forms that grant coverage for "all real property owned by the insured, wherever located" and that do not incorporate by reference to a schedule of locations or a statement of values. In my time with US Fire, US Fire has not issued such policies. US Fire does not issue commercial property policies insuring multiple locations unless it receives a statement of values or similar schedule, and when such a document is received, the document is referenced in the policy so that only the locations listed in the document (and only the exposures listed for those locations) are covered. US Fire does not agree to underwrite risks without being made aware of the natures, locations, and values of the risks.

7.    It is not unusual to receive a statement of values that lists a certain location, identifies it by address, but does not describe any exposures at the location. In my experience, a broker will use the same statement of values for submissions to liability insurers as well as property insurers. A yard, a parking lot, or even undeveloped land may represent a liability exposure, so such locations are often included in a statement of values, even if there are no buildings, personal property, etc. there to be described or valued.

8.    When I received the "Property Statement of Values 8-8-05" from Marsh in August 2005 and saw that the columns for number of buildings, construction type, building value, etc. were blank for Yard 105, I did not suspect that the document was incomplete.

-3-

9.     I assumed that Yard 105 literally was just a yard, with nothing there at risk except inventory (i.e., cars)—or, that if there was some other property there, that Copart had decided to insure it with another company, or not at all.

10.    Having no reason to believe that the "Property Statement of Values 8-8-05" spreadsheet was incomplete with respect to what I was being asked to underwrite, I saw no need to ask for more information.

11.    At no time between Marsh's submission of that spreadsheet and US Fire's issuance of the binder did I receive any other spreadsheet.

12.    At no time between the issuance of the binder and Hurricane Wilma did I receive any other spreadsheet.

13.    On both on the date the policy took effect and on the date of the loss in question, the "schedule on file with the company" was the "Property Statement of Values 8-8-05" spreadsheet.

14.    I first became aware that there were buildings at Yard 105 when, after the hurricane, Marsh notified me that Copart would be making a claim for damage to buildings at Yard 105.

15.    At no time prior to the hurricane did I intend to insure any exposures at Yard 105 other than the exposures that had been described to me, which were inventory values.

16.    At no time prior to the hurricane did any premium that I charged Copart reflect any values for Yard 105 other than inventory values.

17.    In December 2006, I was contacted by Carlton Clarke, who was handling Copart's hurricane claims.

18.    In response to his inquiry, I reviewed the "Property Statement of Values 8-8-05" spreadsheet in my file.

19.    I saw and recalled that it did not provide values for or otherwise describe any buildings or other exposures at Yard 105 except inventory.

\\

\\

STREACKER DECL. IN SUPPORT OF USFIC'S MSJ – Case No.: C 07 2684 CW (EDL)

1    I advised Mr. Clarke that in my opinion and consistent with my intent, Yard 105 was not

2  covered for building or time element losses at the time of the loss.

3

4    Executed this 24th day of July, 2008 in San Francisco, California.

5

6

7    By _Maurice Streaker_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STREACKER DECL. IN SUPPORT OF USFIC'S MSJ – Case No.: C 07 2684 CW (EDL)