# EXHIBIT 2

## CONTRACT FOR SALE AND PURCHASE

Date Prepared: __January 15, 2002__

PARTIES: __CPRT LAND HOLDINGS, INC., 5500 EAST 2ND STREET, BENICIA, CALIFORNIA 94510__, ("Buyer"),
and __FASTCO OF FLORIDA, INC.__, ("Seller"),
hereby agree that Seller shall sell and Buyer shall buy the following property ("Real Property") and personal property ("Personalty") (collectively, "Property") upon the terms and conditions of this Contract For Sale And Purchase ("Contract"), which includes any Riders attached hereto.

1. DESCRIPTION OF PROPERTY:
   A. TAX FOLIO #: __30-2133-008-0600__
   B. LEGAL DESCRIPTION OF REAL PROPERTY: __3RD ADDN TO SEABOARD IND PARK SEC 1-A PB 96-6 LOT 29 LOT SIZE 89942 SQ FT__
   C. STREET ADDRESS: __11659 NW 38 AVENUE__   CITY: __MIAMI__   ZIP: __33167__
   D. PERSONALTY: (included in this sale are all fixtures including, but not limited to: antennae; fans; central and room A/C's and heating units; all other electrical, plumbing, mechanical systems; and interior and exterior lighting fixtures, as presently attached to the Real Property.)

2. PURCHASE PRICE AND METHOD OF PAYMENT:
   A. PURCHASE PRICE..................................................................................... $ __850,000.00__
   B. DEPOSIT to be held in escrow by __LUCKY COMMERCIAL REALTY, INC.__ ("Escrow Agent")
      1. Initial Deposit................................................................................... $ __25,000.00__
      2. Additional Deposit due within __60__ days after Effective Date............ $ __75,000.00__
      3. Total Deposit ("Deposit")................................................................. $ __100,000.00__
   C. BALANCE TO CLOSE ......... __$750,000__, in U.S. Dollars in cashier's check issued by local financial institutions, wire transfer or in certified checks certified by local financial institutions, subject to adjustments and prorations.

3. ACCEPTANCE; FACSIMILE; EFFECTIVE DATE: If this offer is not executed by and delivered to all parties on or before January 8, 2002, the Deposit will, at Buyer's option, be returned to Buyer and this offer withdrawn. Facsimile copies of this Contract, signed and initialed in counterpart, shall be considered for all purposes, including delivery, as originals. The "Effective Date" of this Contract will be: (a) the date when the last one of the Buyer and Seller has signed this offer; or (b) if changes in this offer (after signature) have been made and initialed by the parties, the date when the last one of the Buyer and Seller has initialed those changes.

4. EVIDENCE OF TITLE:
   A. CERTIFICATION, MARKETABILITY: Evidence of Title shall be certified or brought current through a date not more than 30 days prior to Closing. Evidence Of Title shall show a marketable title of record in Seller, in accordance with current title standards adopted by the Florida Bar subject only to those title exceptions permitted by this Contract or which shall be discharged by Seller at or before Closing. At Closing, Seller shall convey to Buyer a marketable title of record as described in this paragraph.

5. RESTRICTIONS AND EASEMENTS; BUILDING AND ZONING: (a) Buyer shall take title subject to: (1) zoning restrictions imposed by governmental authority; (2) restrictions and matters appearing on the plat, or otherwise common to the subdivision; (3) taxes for year of Closing; (4) assumed mortgages and purchase money mortgages, if any; (5) restrictions, utility easements or other matters which do not render the title unmarketable or adversely affect the present use of the Property.

6. SURVEY: Buyer, within the time allowed for delivery of Evidence Of Title and examination thereof, may have the Real Property surveyed at Buyer's expense.

7. INSPECTIONS: The parties acknowledge that the Property is not new construction. Should the Property suffer any damage as a result of any inspections performed at Buyer's request, Buyer shall be solely responsible for repair of any such damage and restoration of the Property.

8. EXISTING MORTGAGE: Seller shall obtain, and furnish to Buyer no later than 10 days prior to Closing : (a) an estoppel letter for each existing mortgage containing the necessary data for payoff; and (b) for equity line loans, a written statement from the mortgagee showing that the account has been closed in accordance with mortgagee's requirements to facilitate a payoff at Closing. Any prepayment penalties charged by mortgagee shall be paid by Seller.

9. POSSESSION; LEASES: Unless otherwise specified in this Contract: (a) Seller warrants and represents that there are no parties in possession or with a right to possession of the Property other than Seller and certain tenant(s); and (b) Seller shall deliver possession of the Property to Buyer at the time of delivery to Seller of the proceeds of the sale in accordance with Paragraph 14. If this Contract specifies that there are parties in possession or with a right to possession who shall retain such possession or right to possession after Closing and delivery to Seller of the proceeds of sale, then; (c) Seller shall, no later than 15 days after Effective Date, furnish to Buyer copies of all written leases, and (d) at closing: (1) the rent shall be prorated; (2) any security deposit and advance rent shall be paid to Buyer; and (3) all original leases shall be assigned and delivered to Buyer. Notwithstanding the foregoing paragraph, Buyer acknowledges that there exists a tenant on the Property with a lease termination date to be extended to June 30, 2002.



EXHIBIT 52
Carson

CPT000962
CONFIDENTIAL

10. **RISK OF LOSS:** If the improvements are damaged by fire or other casualty before delivery of the deed and can be restored to substantially the same condition as now existing within a period of 60 days thereafter, Seller may restore the improvements and the Closing shall be extended accordingly. If seller fails to restore the Property, Buyer shall have the option of (a) taking the Property in "as is" condition together with the insurance proceeds, if any, without a reduction in the Purchase Price or (b) canceling this Contract and the Deposit shall forthwith be returned to Buyer, and Buyer and Seller shall be relieved, as to each other, of all obligations under this Contract.

11. **MAINTENANCE:** Between the Effective Date and the Closing, the entire Property shall be maintained by Seller in the condition as it exists as of the Effective Date ordinary wear and tear excepted.

12. **ESCROW AGENT:** Any escrow agent ("Agent") including the Escrow Agent for the Deposit, receiving funds or equivalent ("Escrow Funds"), is authorized to receive the Escrow Funds, hold the Escrow Funds in escrow, and, subject to clearance, disburse the Escrow Funds according to this Contract. If Agent is in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option: (a) continue to hold the Escrow Funds until Buyer and Seller mutually agree to its disbursement or until a judgment of a court of competent jurisdiction shall determine the rights of the parties; or (b) place the Escrow Funds into the circuit court having jurisdiction of the dispute and interplead the parties having an interest in the Escrow Funds. Upon notifying all interested parties of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for the Escrow Funds. If Agent is a licensed real estate broker, Agent will comply with the provisions of Chapter 475 F.S. (1991), as amended. Any suit between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any suit wherein Agent places the Escrow Funds into the registry of the court and interpleads the interested parties, Agent shall recover reasonable attorney's fees and cost incurred, and charged and awarded as court costs in favor of the prevailing party. All parties agree that Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of the Escrow Funds unless such misdelivery is due to willful breach of this Contract or gross negligence of Agent.

13. **CLOSING DOCUMENTS:** Seller shall deliver to Buyer at Closing: (a) Special Warranty deed, free and clear of all reverter clauses but subject to matters contained in Paragraph 5 and in the title commitment ;(b) Bill of Sale conveying Personality; (c) affidavit attesting to the absence of liens or potential lienors known to seller, gap affidavit, and affidavit of possession; (d) IRS form 1099b or such other forms as may be required by federal government from time to time; and (e) FIRPTA affidavit or exemption certificates as may be required to exempt Seller or any agent from the income tax withholding requirements or Seller shall authorize Buyer to withhold the necessary amount.

14. **EXPENSES:** State documentary stamps and surtax on deed and the cost or recording any corrective instruments shall be paid by Seller. Documentary stamps to be affixed to the note secured by the purchase money mortgage, intangible tax on the purchase money mortgage and the cost of recording the deed and purchase money mortgage shall be paid by Buyer.

15. **PRORATIONS:** All prorations shall be made as of midnight of the day preceding the Closing. Real and personal property taxes shall be prorated based on the current year's tax with due allowance being made for the maximum allowable discount and for homestead or other exemption if allowed for said year. If Closing occurs at a date when the current year's assessment is not available, then taxes shall be prorated based on the prior year's tax. However, if there are completed improvements on the property by January 1st of the Closing which improvements were not in existence on January 1st of the prior year then the taxes shall be prorated based upon the prior year's millage and at an equitable assessment to be agreed upon between the parties. However, any tax proration based on an estimate may at the request of either party be subsequently readjusted upon receipt of the tax bill, and statement to that effect will be set forth in the closing statement. Waste fees, association fees, expenses and revenues of the Property shall also be prorated.

16. **SPECIAL ASSESSMENT LIENS:** Certified, confirmed and ratified special assessment liens as of Closing are to be paid by Seller. Pending liens as of Closing shall be assumed by Buyer, provided, however, that where the Improvements has been substantially completed as of the Effective Date, such pending lien shall be considered as certified or ratified and Seller shall, at Closing, be charged an amount equal to the last estimate by the public body of the assessment for the improvements.

17. **PERSONS BOUND; GENDER: FLORIDA LAW:** The benefits and obligations of this Contract shall ensure to and bind the respective heirs, personal representative, successors and assigns of the parties hereto. Whenever used, the singular shall include the plural, the plural the singular, and the use of any gender shall include all genders. This Contact shall be governed by the law of the State of Florida.

18. **DEFAULT:** If Buyer fails to perform this Contract within the time specified (including the payment of the Deposit), the Deposit made together with all interest earned thereon, or agreed to be made by Buyer, may be retained or recovered by or for the account of Seller as agreed upon liquidated damages as consideration for the execution of this contract and in full settlement of Seller's claims, whereupon Buyer and Seller shall be relieved, as to each other, of all obligations under this Contract; or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract. If, for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller fails, neglects or refuses to perform this Contract, Buyer may seek specific performance or elect to receive the return of Buyer's Deposit.

19. **ATTORNEY'S FEES AND COSTS:** In connection with any litigation (including all appeals and interpleaders) involving the Seller, Buyer, Listing Broker, cooperating SubAgent of Broker, Buyer's Broker, or Escrow Agent, arising out of this Contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney's fees at trial and appellate levels.

20. **ASSIGNABILITY:** The Buyer may not assign this Contract to non-affiliate entities without the prior written consent of Seller.

21. **TIME:** Time is of the essence for all provisions of this Contract.

22. **ENTIRE AGREEMENT; TYPEWRITTEN OR HANDWRITTEN PROVISIONS; NOT RECORDABLE:** This Contract, including any exhibits and Riders attached, sets forth the entire agreement between Buyer and Seller and contains all of the covenants, promises, agreements, representations, conditions and understandings. Typewritten or handwritten provisions inserted in this Contract or attached hereto as exhibits or Riders shall control all printed provisions in conflict therewith. Neither this Contract, nor any notice of it, shall be recorded in any public records.

23. **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained form your county public health unit.

24. **DISCLOSURES:** BUYER ACKNOWLEDGES RECEIPT OF THE AGENCY, RADON, COMPENSATION, AND REAL PROPERTY SALES DISCLOSURES...................... BUYERS INITIALS ___

CPT000963
CONFIDENTIAL

25. ADDITIONAL PROVISIONS:

A. The deposit referred to in Paragraph 2(b) of the Contract (the "Deposit") shall be paid as follows:
$25,000.00 (paid); and
$75,000.00 upon expiration of the Inspection Period, provided the Contract has not been terminated.

B. The balance to close as set forth in Paragraph 2(c) of the Contract may be paid by U.S. cash, wire transfer or locally drawn cashier's or certified check, subject to adjustments and prorations.

C. The parties each represent and warrant to the other that they have not dealt with any real estate brokers, salesmen, or finders to whom a brokerage commission is due other than Burr & Temkin and Lucky Commercial Realty, Inc. (collectively, the "Brokers"). If a claim for commission in connection with this transaction is made by any broker, salesmen or finder other than Brokers claiming to have dealt through or on behalf of one of the parties hereto, such party shall indemnify, defend and hold the other party hereunder harmless from and against all liabilities, damages, claims, costs, fees and expenses (including reasonable attorneys' fees and court costs at trial and all appellate levels) with respect to said claim for brokerage. The provisions of this paragraph shall survive closing or any earlier termination or cancellation of the Contract.

D. Buyer shall have a period of sixty (60) days following the Effective Date (the "Inspection Period") to make such environmental, physical, zoning, topographical, land use and other examinations, inspections and investigations of the Property and all improvements and personalty located thereon which Buyer, in Buyer's sole discretion, may determine to make. In the event the Buyer is not satisfied with any of the foregoing, in Buyer's sole discretion, Buyer may cancel this transaction by written notice of cancellation given to both Seller and Escrow Agent prior to the expiration of the Inspection Period, in which event the Deposit, together with all interest earned thereon, shall be returned to Buyer, whereupon the parties shall be released from all further obligations under the Contract except only those obligations specifically stated to survive therein. In the event such notice of cancellation is not timely given by the termination of the Inspection Period, the foregoing condition precedent shall be deemed waived and satisfied in full. Buyer, Buyer's agents and contractors, shall have the right during the term of this Contract to enter upon the Property at reasonable times for purposes of inspection and making the foregoing tests and studies thereon. Buyer agrees to indemnify, defend and hold harmless Seller from and against all liabilities, damages, claims, costs, fees, and expenses whatsoever (including reasonable attorneys' fees and court costs at trial and all appellate levels) arising out of or resulting from any such inspection or investigation. Notwithstanding anything to the contrary contained in the Contract, the provisions of this paragraph shall survive the closing and any cancellation or termination of the Contract.

E. Buyer acknowledges and agrees that the Property is being sold "as is, where is and with all faults", and that Seller and Brokers have not made and specifically disclaim any representations, warranties, promises, covenants or agreements of any kind or character whatsoever, whether express or implied, oral or written, as to, concerning or with respect to the Property, or any part thereof including, without limitation, (a) the value, nature, quality or condition of the Property, including, without limitation, the water, soil and geology; (b) the income to be derived from the Property; (c) the suitability of the Property for any and all activities and uses which Buyer may conduct thereon; (d) the compliance of or by the Property or its operation with any laws, rules, ordinances or regulations of any applicable government authority or body; (e) the profitability or fitness for a particular purpose of the Property; (f) the manner or quality of construction or materials, if any, of the Property; (g) the manner, quality, state of repair or lack of repair of the Property; (h) the physical condition or other aspect of the Property, including without limitation, the structural integrity of any improvements on the Property, the conformity of the improvements to any plans or specifications for the Property, the conformity of the Property to any zoning and building code requirements, the existence of soil stability, past soil reports, nonsusceptibility to landslides, sufficiency of undershoring, sufficiency of drainage, or any other matter affecting stability or integrity of the land or any buildings or improvements thereon; (i) any other matter with respect to the Property, and specifically, without limitation, that Seller and Brokers have not made, do not make, and specifically disclaim any representations regarding compliance with the Americans With Disabilities Act or any environmental protection, pollution or land use laws or ordinances. Buyer further acknowledges and agrees that having been given the opportunity to inspect the Property prior to the date hereof and the Closing, except as expressly provided in this Agreement, Buyer, as a sophisticated and experienced purchaser of real property, is relying solely on its own investigation of the Property and not on any information provided or to be provided by Seller or Brokers. Buyer further acknowledges and agrees that any information provided or to be provided by Seller or Brokers with respect to the Property was and will be obtained from a variety of sources and that Seller has not made and will not make any independent investigation or verification of the accuracy of such information. In addition, Buyer acknowledges and agrees that Brokers have not been authorized to make any representations on behalf of Seller concerning the Property and Seller shall not be liable for any representations or information furnished by any broker in connection with this transaction. Buyer further agrees that it shall not contact any governmental authorities and/or code enforcement officials of the applicable municipality without the prior written consent of Seller, which consent may be withheld by Seller in its sole and absolute discretion. Seller hereby warrants that it has not, to its knowledge, received notice of any material issues impacting (a)-(c) above.

F. Buyer shall, at Buyer's sole expense, obtain a title insurance commitment and, after Closing, an owner's policy of title insurance. Notwithstanding anything herein to the contrary, Buyer shall have thirty (30) days after the Effective Date to examine title. If title is found defective, Buyer shall within said thirty (30) days notify Seller in writing specifying the defect(s). Seller's obligation to cure any title defect(s) shall not include the necessity of bringing any lawsuits. If Seller fails to remove any title defect that renders title to the Property unmarketable, Buyer's sole remedy shall be to terminate the Contract and receive a full refund of the Deposit together with any interest thereon.

G. The Closing shall occur on or before that date which is sixty (60) days following the expiration of the Inspection Period.

H. In addition to the closing documents set forth herein at closing Seller shall execute and deliver to Buyer: (i) an affidavit of possession, confirming that no party other than Seller and certain tenant(s) are in possession thereof or claims a right of possession to the Property adversely to Seller, (ii) a "gap" affidavit, (iii) a no lien affidavit, and (iv) a non-foreign affidavit.

I. In addition to the expenses set forth herein (if any), Seller shall pay, at closing, the Surtax, if any, due on the deed of conveyance.

J. Any notice required to be given pursuant to the Contract shall be deemed given upon delivery to a courier service or federal express, deposit in the U.S. mails, or delivery by fax.

CPT000964
CONFIDENTIAL

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT.
IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING

Date last initialed by Buyer, if applicable: _____
Date Signed by Buyer: _1/16/02_

BUYER: CPRT LAND HOLDINGS, INC.

_____(Seal)    _____(Seal)

Tax I.D. # 68-0304953            Tax I.D. # _____

Address: 5500 E. Second Street, Benicia CA 94510

30. BROKERS ACKNOWLEDGMENT: The undersigned, acknowledges that it is entitled to a brokerage commission from Seller, in connection with the Contract for Purchase and Sale dated January _____, 2002 between Fastco of Florida, Inc., as Seller, and CPRT Land Holdings, Inc., as Buyer, in the amount of $34,000.00, payable if, and only if, the transaction contemplated by said Contract closes.

Lucky Commercial Realty, Inc.
By: _____
Name _____
Title: _____President_____

The undersigned, acknowledges that it is entitled to a brokerage commission from Seller, in connection with the Contract for Purchase and Sale dated January _____, 2002 between Fastco of Florida, Inc., as Seller, and CPRT Land Holdings, Inc., as Buyer, in the amount of $34,000.00, payable if, and only if, the transaction contemplated by said Contract closes.

BURR & TEMKIN
By: _____
Name _____
Title: _____Treasurer_____

31. ESCROW AGENT ACKNOWLEDGMENT: The undersigned joins this Contract as Escrow Agent for the purpose of agreeing to its obligations hereunder as Escrow Agent.

Lucky Commercial Realty, Inc.
By: _____
Name _____
Title: _____President_____

Date last initialed by Seller, if applicable: _____
Date Signed by Seller: _1/25/02_

SELLER: FASTCO OF FLORIDA, INC.

_____(Seal)    _____(Seal)

Tax I.D. # 65-0030797            Tax I.D. # _____

Address: 12250 NW 25th Ave, Miami, FL 33167

31. BROKERS: The Broker(s) named below constitute the agent(s) of the Seller (or of the Buyer, if so designated) regarding the sale of the Property, and each Broker hereto will hold the other Broker harmless from any claims for brokerages fees arising from his/her dealings with any Broker not specified herein. By their execution, the Broker(s) agree to the brokerage fee specified herein and to the proportions set out adjacent to their names.

CPT000965
CONFIDENTIAL

| BURR & TEMKIN | FOUR (4%) PERCENT |
|---|---|
| Firm name of Listing Broker | |
| By: _____ (Authorized Signatory) | |

| LUCKY COMMERCIAL REALTY, INC. | FOUR (4%) PERCENT |
|---|---|
| Firm name of Listing Broker | |
| ☐ Cooperating Sub-Agent of Listing Broker; or ☒ Buyer's Broker | |
| By: _____ (Authorized Signatory) | |

32. DEPOSIT RECEIPT: The Deposit (Subject to clearance) was received on _____ and shall be held and disburse according to this Contract by the undersigned Escrow Agent.

| LUCKY COMMERCIAL REALTY, INC. | 305-635-3469 |
|---|---|
| Firm name of Escrow Agent | Telephone |

By: _____ (Authorized Signatory)

CPT000966
CONFIDENTIAL

EXHIBIT "A"

Legal Description

CPT000967
CONFIDENTIAL

FEB. 14. 2002  4:56PM    COPART                                    NO. 774   P. 8

EXHIBIT A

*(Survey/plat drawing showing N.W. 119th Street, N.W. 116th Street, existing railroad tracks, 50' Railroad R/W, Third Addition to Seaboard Industrial Park Section 1-A (P.B. 95, Pg. 06), Second Addition to Seaboard Industrial Park Section 1-A (P.B. 92, Pg. 42), tracts TR. "H", TR. "I", TR. "J", lot numbers 17, 18, 19, 20, 29, 30, 31, 88, 89, bearings S 87°56'05" W 272.06', references to West line of Section 33-52-41, Limits of City of Hialeah, and "Few scattered Australian Pine & Florida Holly".)*

CPT000968
CONFIDENTIAL