# EXHIBIT 40

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION


COPART INC.,

       Plaintiff,

vs.                                            No. C 07 02684 CW

CRUM & FORSTER INDEMNITY
COMPANY, UNITED STATES FIRE
INSURANCE COMPANY, and DOES
1-10,

       Defendants.

CERTIFIED
COPY

_____

AND RELATED COUNTERCLAIMS.

_____


VIDEOTAPED DEPOSITION OF SIMON ROTE

San Francisco, California

Thursday, May 8, 2008



Reported by:
DARCY J. BROKAW
RPR, CRR, CLR, CSR No. 12584

Job No. 86978

1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                         OAKLAND DIVISION

3

4    COPART INC.,

5           Plaintiff,

6    vs.                          No. C 07 02684 CW

7    CRUM & FORSTER INDEMNITY
     COMPANY, UNITED STATES FIRE
8    INSURANCE COMPANY, and DOES
     1-10,
9
            Defendants.
10

11    _____

      AND RELATED COUNTERCLAIMS.
12    _____

13

14

15           VIDEOTAPED DEPOSITION OF SIMON ROTE,

16    taken on behalf of Defendant United States Fire Insurance

17    Company, at Bullivant Houser Bailey PC, 601 California

18    Street, Suite 1800, San Francisco, California, beginning at

19    9:02 a.m. and ending at 3:57 p.m., on Thursday, May 8, 2008,

20    before me, DARCY J. BROKAW, RPR, CRR, CLR, CSR No. 12584.

21

22

23

24

25

2

SIMON ROTE                                          05/08/08

1                           APPEARANCES

2

3    For the Plaintiff, Copart, Inc.:

4              PILLSBURY & LEVINSON, LLP
               BY: ERIK L. LARSON, ESQ.
5              600 Montgomery Street, 31st Floor
               San Francisco, California 94111
6              415-433-8000
               rlarson@pillsburylevinson.com
7

8    For the Defendant United States Fire Insurance Company:

9              BULLIVANT HOUSER BAILEY PC
               BY: SAMUEL H. RUBY, ESQ.
10             601 California Street, Suite 1800
               San Francisco, California 94108
11             415-352-2700
               samuel.ruby@bullivant.com
12

13

14

15   ALSO PRESENT:   Ray Tyler, Videographer

16

17

18

19

20

21

22

23

24

25

1        San Francisco, California, Thursday, May 8, 2008

2                9:02 a.m. - 3:57 p.m.

3

4                    SIMON ROTE,

5    having been first duly sworn, was examined and testified as

6    follows:

7               THE VIDEOGRAPHER:   Good morning.

8               Here begins Media No. 1 of the deposition

9    of Simon Rote in the matter of Copart, Incorporated

09:02 10    versus Crum & Forster Indemnity Company, et al., in

11    the U.S. District Court, Northern District of

12    California, Oakland Division.   The Case Number is

13    C 07 02684 CW.

14               Today's date is May 8th, 2008.   The

09:02 15    current time is 9:02 a.m.   This deposition is taking

16    place at Bullivant Houser Bailey, at 601 California

17    Street, San Francisco, California, and is being

18    taken on behalf of the defendants.

19               The videographer is Ray Tyler, appearing

09:02 20    on behalf of Sarnoff Court Reporters and Legal

21    Technologies.   The court reporter is Darcy Brokaw,

22    also representing Sarnoff Court Reporters.

23               All counsel, parties and the deponent,

24    please take notice that as part of the videotaping

09:02 25    of this deposition, very high-quality microphones

9

09:18 1    not going to change the date.  We don't change the

2    dates on there.  So it could have been a typo,

3    potentially.  Because you have to understand, all

4    these items are manually keyed into our accounting

09:18 5    records, our system.

6          MR. LARSON:  I'd rather you not speculate

7    as to what it might be, because we're not looking at

8    the 2003.

9          THE WITNESS:  Okay.  Sorry.

09:18 10   BY MR. RUBY:

11         Q    But what the "as of" date should be is

12   that that should be a snapshot date of the assets

13   actually owned as of that date and not any later

14   dates?

09:18 15        A    Correct, yes.

16         Q    Would the "as of" date also indicate the

17   accumulated amortization as of that date?

18         A    In the particular accounts, yes.  If you

19   go to the accumulated depreciation accounts, yes.

09:19 20        Q    All right.  Now, this master asset list

21   appears to be organized by location; is that

22   correct?

23         A    Yes.

24         Q    And Copart's locations have a number

09:19 25   assigned to them?

22

09:19  1          A      Uh-huh.

       2          Q      And that number is sometimes referred to

       3   as the yard number?

       4          A      Correct.

09:19  5          Q      Is there any particular significance to

       6   the term "yard"?  Or is that just a term that Copart

       7   uses to describe its locations where it operates?

       8          A      We typically call it a facility.  In a lot

       9   of the reports, when we set them up, we just call

09:19 10   them yard numbers.  So you can call it the yard

      11   number, a facility number.

      12          Q      Some of the facilities that are assigned a

      13   yard number truly have a yard there; is that right?

      14          A      If there is a yard number, there should be

09:20 15   a location that went with it, yes.

      16          Q      What I mean by "yard" is in common

      17   parlance, that's sort of an open space.  It may be

      18   enclosed, but there's some open space there where

      19   your inventory is stored?

09:20 20          A      Correct.

      21          Q      And some of these yards are not -- or some

      22   of these facilities are not just yards but there are

      23   also buildings there, correct?

      24          A      Yes.

09:20 25          Q      Have there been times when Copart has

09:20 1   owned a facility which is assigned a yard number,

2   and there are no buildings there; it's just a yard?

3        A    Yes.

4        Q    So the fact that Copart assigns a yard

09:20 5   number to a location doesn't necessarily mean

6   there's a building there, right?

7        A    Correct.

8        Q    Do Copart's yards usually have street

9   addresses associated with them?

09:21 10        A    Typically, yes.

11        Q    Has Copart ever owned or operated a yard

12   that did not have an associated street address?

13        A    I'm not positive on that one.

14        Q    Has Copart ever owned or operated a yard

09:21 15   which had no buildings on it but still had a street

16   address associated with it?

17        A    How does that differ from the first

18   question?

19        Q    Maybe it doesn't.  My question is -- I

09:22 20   think we've established that at times, Copart has

21   owned facilities, which it calls yards --

22        A    Right.

23        Q    -- which are truly just yards; there's no

24   buildings there.

09:22 25        A    Okay.

24

09:22 1        Q    Okay.  And my question now is:  For one or

2    more of those pure yards, is there sometimes a

3    street address associated with the yard even though

4    there's no building there?

09:22 5        A    Yes.

6              Can I clarify something?  With respect to

7    the yard numbers, I mean obviously from the

8    mechanics' standpoint, if we acquire an asset, I

9    need a method to keep track of that particular

09:22 10    location, I guess, or yard number.  So we assign --

11    if it's a piece of property, we'll typically assign

12    it a yard number.

13        Q    Okay.  And just to follow up on what my

14    last question was, so there are times -- or let me

09:23 15    start over.

16              Just because there's a street address

17    associated with one of your yard numbers doesn't

18    necessarily mean there's a building there, right?

19        A    Correct.

09:23 20        Q    It could just be literally just a yard?

21              MR. LARSON:  Still vague and ambiguous as

22    to "yard."

23              THE WITNESS:  How are you defining a yard?

24    I'm just trying to be clear there.

25

25

01:05  1    sequence, and for all of those yards, there is some

2    number in those columns for building, contents,

3    equipment, et cetera.

4            Do you see that?

01:05  5        A    I see it.

6        Q    Okay.  Now, is that because at the time of

7    this statement, all those yards were operational?

8    Or were there some yards that were not operational

9    but the practice at this time was to still report

01:05 10    values?

11       A    In looking at this particular schedule, as

12   early as 10/1/03, I do see where we have inventory

13   values in all the locations, as well as values in

14   all the other columns.  So my assumption is that

01:06 15   they were operational.  I would have to go back and

16   confirm that based upon our sales results.

17       Q    But auctioning cars or car parts is your

18   business, right?

19       A    We don't auction the parts.  We auction

01:06 20   the whole car.

21       Q    The whole car, okay.

22            All right.  So when we come now back to

23   2004, where we have a statement that now has some of

24   the yards listed, newer yards, but with blanks in

01:06 25   some of the columns, did somebody -- anybody -- tell

129

01:06 1    you up through this date, if the yard's not

2    operational, don't put -- don't fill in those

3    columns?

4        A    No.

01:07 5        Q    Okay.  So no one at Marsh said don't do

6    it?

7        A    No.

8        Q    All right.  And in your time working under

9    the CFO, from '97 to '03 --

01:07 10        A    Right.

11        Q    -- had you been exposed to some practice

12    whereby if the yard wasn't operational, nothing

13    would have been -- those values would not be

14    recorded?

01:07 15        A    Like I said, I don't have a lot of the

16    history on going back to, you know, '02 and prior.

17    I mean, I just don't recall it.

18        Q    Okay.

19        A    But I would assume, once again, our

01:07 20    practice would have been until the project was

21    completed, not to assign the value to it, typically.

22        Q    Okay.  But before you became the acting

23    CFO in '03 --

24        A    Right.

01:07 25        Q    -- you were still involved from time to

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

02:36  1        A    Correct.  But once again, when you're

       2   dealing with spreadsheets, as we noted earlier, you

       3   had the 8/8 one, the same date is on it, a different

       4   date on it.  So when you're updating spreadsheets,

02:36  5   it's easy to overlook an item there.

       6        Q    Okay.  Right.  And I'm not saying it's a

       7   big deal that the date wasn't changed.  But just for

       8   clarification, I think we've established that what

       9   you sent Ms. McIntyre on November 1st, 2005, it

02:37 10   wasn't just the same statement she had sent you back

      11   in November; you had made some changes to it and you

      12   were sending it back to her, correct?

      13        A    Yes.

      14        Q    Okay.

02:37 15        All right.  Now, looking at the statement

      16   that's part of this exhibit, if we go to Yard 105,

      17   we will see some values in columns that were

      18   previously blank?

      19        A    Correct.

02:37 20        Q    So I want to ask you about those values.

      21        First of all, in the Building and

      22   Improvements column, we now see a value of 750,000,

      23   right?

      24        A    Yes.

02:37 25        Q    Is that a number that you supplied?

                                                            185

02:37  1        A      I believe I did.

       2        Q      How did you determine that number?

       3        A      That's historically what it would cost for

       4    us to build a large metal building.

02:38  5        Q      We've talked about Yard 105, the previous

       6    building there having been undergoing some

       7    renovations.

       8        A      Mm-hmm.

       9        Q      When you determined the number to supply

02:38 10    in this statement, did you take into account the

      11    renovations, or were you trying to just estimate the

      12    cost of replacing the original building there?

      13        A      I tried to estimate the cost to put our

      14    standard metal building on there.

02:38 15        Q      Is there some degree of uniformity in the

      16    design of buildings that Copart puts up at its

      17    locations?

      18        A      We try to basically follow a very

      19    cookie-cutter approach.  Willis likes to call it the

02:39 20    McDonald's approach.  So we had a standard large --

      21    standard large building and a small building.

      22             So with respect to the actual building,

      23    the buildings, yes, we tried to be very consistent

      24    with respect to the color scheme, the layouts of

02:39 25    them, the counter colors, cubicle colors.  That way,

                                                              186

1           I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3           That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10 testimony given.

11          Further, that if the foregoing pertains to

12 the original transcript of a deposition in a Federal

13 Case, before completion of the proceedings, review of

14 the transcript [ X ] was [  ] was not requested.

15          I further certify I am neither financially

16 interested in the action nor a relative or employee

17 of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19 subscribed my name.

20

21 Dated:     MAY 2 0 2008

22

23

24                 DARCY J. BROKAW
                CSR No. 12584

25