# EXHIBIT 41

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COPART, INC.,

    Plaintiff,

vs.                    Case No.: C 07 02684 CW

CRUM & FORSTER INDEMNITY,
COMPANY, UNITED STATES FIRE
INSURANCE COMPANY, and
DOES 1-10,

    Defendants.

**CERTIFIED COPY**

AND RELATED COUNTERCLAIMS.

DEPOSITION OF PATRICE G. McINTYRE

San Francisco, California

Wednesday, May 14, 2008

Reported by:
DIANE M. GALLAGHER
RPR, CSR No. Michigan 2191

JOB No. 86976

```
 1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
 2                         OAKLAND DIVISION

 3

 4   COPART, INC.,

 5        Plaintiff,

 6        vs.                         Case No.: C 07 02684 CW

 7   CRUM & FORSTER INDEMNITY,
     COMPANY, UNITED STATES FIRE
 8   INSURANCE COMPANY, and
     DOES 1-10,
 9
          Defendants.
10

11   _____
     AND RELATED COUNTERCLAIMS.
12   _____

13

14           Deposition of PATRICE G. McINTYRE, taken on

15      behalf of Defendant United States Fire Insurance

16      Company, at 601 California Street, 18th Floor,

17      San Francisco, California, beginning at 9:05 a.m.,

18      and ending at 2:50 p.m., on Wednesday, May 14,

19      2008, before DIANE M. GALLAGHER, Certified

20      Shorthand Reporter, Michigan No. 2191.

21

22

23

24

25
```

2

```
 1   APPEARANCES:
 2
 3   For Plaintiff:
 4        PILLSBURY & LEVINSON, LLP
          BY:   ERIC K. LARSON
 5        Attorney at Law
          The Transamerica Pyramid
 6        600 Montgomery Street
          Thirty-First Floor
 7        San Francisco, California 94111
          415-433-8000
 8        E-mail:  rlarson@pillsburylevinson.com
 9
     For Defendants:
10
          BULLIVANT HOUSER BAILEY PC
11        BY:   SAMUEL H. RUBY
          Attorney at Law
12        601 California Street - Suite 1800
          San Francisco, California  94108
13        415-352-2700
          E-mail:  samuel.ruby@bullivant.com
14
15   For the Witness:
16        LUCE FORWARD HAMILTON & SCRIPPS
          BY:   DENIS F. SHANAGHER
17        Attorney at Law
          121 Spear Street - Suite 200
18        San Francisco, California 94105
          415-336-4626
19        E-mail:  dshanagher@luce.com
20
21
22
23
24
25
```

3

1    A    Yes.

2    Q    And you asked, Please provide a current

3  complete listing of all locations, and you indicate that

4  the current schedule on file with the insurance company

5  is attached.

6         Why, in connection with the renewal activity,

7  did Marsh need an updated schedule and property

8  Statement of Values?

9    A    You always ask for updated exposure information

10 for preparation of renewal specifications.

11   Q    And why do you do that?

12   A    Well, you need to provide the underwriters with

13 the exposure information, what is being insured, to be

14 insured.

15   Q    You went on to say, For each location please

16 indicate respective current property values for:

17 buildings/structures, building improvements, and some

18 other items.  Do you see that?

19   A    Yes.

20   Q    What did you mean by current property values?

21 What type of values did you mean there?

22   A    Replacement values for buildings or contents,

23 tangible property.

24   Q    If you could look at the attachment to this

25 exhibit, which is starting on the third page, this is a

1    A    For the template that I created?

2    Q    Well, let's see.  Did you create a template
3    that had blanks for all of these lines and columns?

4    A    I created the template.  I don't remember that
5    I filled it in with values.

6    Q    Do you remember anything about how the values
7    stated in this particular statement came to be in this
8    statement?

9    A    They would have come from Copart.

10   Q    When you asked Copart for information to
11   complete the building limit column, what did you ask for
12   to be put in that column?

13   A    Replacement cost values.

14   Q    And in the building improvements column, was
15   that also replacement cost value but only for
16   improvements?

17   A    Yes.

18   Q    For the 2002 statement or any earlier
19   statements, I won't hold you to a specific date, but no
20   later than the 2002 statement, do you recall any
21   discussions with Copart about how Copart would go about
22   calculating replacement cost values?

23   A    I don't.

24   Q    Did you ever give Copart any instructions on
25   how to do that?

1    A    I did not.

2    Q    Did Copart ever express to you any confusion

3 about how to go about calculating replacement cost

4 values?

5    A    Not that I recall.

6    Q    With respect to the listing of various

7 locations up through 2002, what was your request to

8 Copart as far as which locations it would list in the

9 Statement of Values?

10        MR. LARSON:  Vague and ambiguous.  Lacks

11 foundation.

12   Q    (BY MR. RUBY)  Did you ask Copart to give you

13 or to identify all of its locations?

14   A    Yes, uh-huh.

15   Q    Were there any exceptions to that rule that you

16 explained to Copart?

17        MR. SHANAGHER:   Objection.  Vague and

18 ambiguous.

19        THE WITNESS:  No.

20   Q    (BY MR. RUBY)  Did you tell Copart there were

21 any locations or types of locations that they did not

22 need to identify to you?

23   A    No.

24   Q    With respect to the values that were reported

25 to you, were there any locations or types of locations

```
 1   for which you told Copart they did not need to report
 2   values?
 3          MR. LARSON:   Vague and ambiguous.
 4          MR. RUBY:   Do you understand the question?
 5          THE WITNESS:   No.
 6      Q   (BY MR. RUBY)  No, you don't understand the
 7   question or No to my question?
 8      A   Can you repeat the question, please?
 9      Q   Well, let me ask it this way:  did you ever
10   tell Copart that they could identify a location to you
11   but that they did not need to list values for that
12   location?
13          MR. LARSON:   Vague and ambiguous as to "need."
14          THE WITNESS:   Not that I recall.
15      Q   (BY MR. RUBY)  To be more specific, did you
16   ever tell Copart that even if they had a building at one
17   of their locations, for some reason they would not have
18   to report a building value?
19          MR. SHANAGHER:   Objection.  Vague and
20   ambiguous.
21          THE WITNESS:   Not that I recall.
22      Q   (BY MR. RUBY)  If you could take a look now at
23   Exhibit 3, please.  This was marked at Mr. Rote's
24   deposition as an e-mail from Mr. Finigan to Mr. Rote
25   with a copy to Ms. McIntyre, and this exhibit begins
```

```
 1        Q    (BY MR. RUBY)  Let's, for example, look at yard
 2   number 36 where you wrote in your e-mail Change building
 3   value from 450,000 to 750,000.
 4             If you look at the attached Statement of
 5   Values, can you tell if you, in fact, made that change,
 6   that is you increased the building value from 450,000 to
 7   750,000 for yard 36?
 8        A    Yes.
 9        Q    If Mr. Rote had told you that for yard 105
10   there was a building there that had a certain value,
11   would you have added that value for the building column
12   for yard 105?
13             MR. LARSON:   Calls for speculation.
14             THE WITNESS:  Yes.
15             MR. RUBY:  Okay.  We have been going about an
16   hour.  Why don't we take a break?
17             (Whereupon, a short break from
18              10:00 a.m. to 10:10 a.m. was taken.)
19        Q    (BY MR. RUBY)  Okay.  Everyone is ready.  Back
20   on the record.  Ma'am, still on Exhibit No. 8,
21   following question on your note stating, All other new
22   locations indicate that show no values, nothing there
23   yet, was that your understanding at the time you wrote
24   this e-mail?
25        A    Apparently, it was.
```

1    Q    Now, I have asked you this question in
2  connection with the previous renewal, and I will ask it
3  to you now about this 2004 renewal.
4         At any time in the course of the 2004 renewal,
5  did you tell Copart that it did not have to provide
6  building values for yard 105?
7    A    No.
8    Q    If you could look at Exhibit 13. Is this a
9  letter from you to Mr. Rote?
10   A    Yes.
11   Q    And is this a letter concerning the 2005
12 renewal?
13   A    Yes.
14   Q    Now, under the heading of Location Schedule and
15 Property Statement of Values, you asked, For each
16 insured location, please provide the respective current
17 replacement cost property values for
18 building/structures. Do you see that?
19   A    Yes.
20   Q    You said there for "each insured location."
21        At any time during the 2005 renewal, did you
22 tell Copart that it did not have to provide current
23 replacement cost property values for buildings at any
24 particular location?
25   A    No.

40

PATRICE G. McINTYRE                                              05/14/08

1    Q    Specifically, at any time during the 2005
2 renewal, did you tell Copart that it did not have to
3 provide to you current replacement cost property values
4 for buildings at yard 105?
5    A    No.
6    Q    If you could look at Exhibit 10, please.
7 Exhibit 10 starts with, at the bottom an e-mail from Mr.
8 Rote to you, concerning computer equipment at a Las
9 Vegas location, and then you replied to him.
10        Could you just review the e-mails briefly and
11 let me know when you're finished, please?
12   A    Okay.
13   Q    So in reply to his message, you asked him to
14 confirm the amount of computer value to add to the Las
15 Vegas location?
16   A    Yes.
17   Q    And why is that information about the computer
18 value something that you felt you would inform the
19 underwriters about?
20        MR. LARSON:  Lacks foundation.
21        THE WITNESS:  To update them.
22   Q    (BY MR. RUBY)  Did you have an expectation that
23 that information might be of interest to underwriters
24 for any particular reason?
25   A    I don't know.  I just wanted to update them.

1   your source for that information?
2        A    I don't recall.
3        Q    Putting apart the specifics, i.e. whether it
4   was an e-mail or a conversation or something like that,
5   who was the source of the information regarding the
6   property values at the Elgin and Reno locations?
7        A    Simon Rote, I believe.
8        Q    Now, you will recall that yard 105 was also on
9   the schedule you had forwarded to Miss Streacker?
10       A    Uh-huh.   Yes.
11       Q    Did Mr. Rote at the time of your, of this
12  correspondence with Miss Streacker, had Mr. Rote
13  provided you with any information regarding any building
14  values for yard 105?
15       A    No.
16       Q    If he had given you a building value for yard
17  105 at this time, and if he had asked you to report that
18  to underwriters, would you have done so?
19            MR. LARSON:   Calls for speculation.
20            THE WITNESS:  Yes.
21       Q    (BY MR. RUBY)  Now, when you said, for Elgin,
22  Reno, please also include these non inventory property
23  values at this time, did you mean that you wanted Miss
24  Streacker to include those property values in the
25  endorsement she was going to issue, which we discussed a

59

```
 1      A    Yes.
 2      Q    Did you ever receive a response from Ms.
 3   Streacker to this e-mail?  Do you recall?
 4      A    I don't recall.
 5      Q    Do you have any understanding as to how the
 6   premiums were calculated on the Copart policies --
 7   property policy?
 8           MR. RUBY:    Vague as to time.
 9      Q    (BY MR. LARSON)  At any time?
10      A    I don't completely understand the underwriting
11   process of the carrier.
12      Q    Do you have any understanding or is your answer
13   no?
14      A    Yes.
15      Q    You do have an understanding?
16      A    I have some understanding of the factors.
17      Q    Why don't you tell us what your understanding
18   is?
19           MR. SHANAGHER:  Objection.  Overly broad.  Go
20   ahead.
21           THE WITNESS:  The values are a factor, what the
22   values are.
23      Q    (BY MR. LARSON)  Any other factors?
24      A    What kind of values they represent, whether
25   they're building contents, time element, where the
```

```
 1   values are.
 2        Q    Let's look at Exhibit 33.  That would be in
 3   the book.  Were you aware that the 2004 to 2005 policy
 4   was, in fact, endorsed at yard 105 as a location with
 5   the Miami address?
 6             MR. SHANAGHER:  Objection.  Vague and ambiguous
 7   as to "endorsed" in this context.
 8             THE WITNESS:  I am not aware of that, no.
 9             MR. LARSON:  Let's mark this as next in order.
10             (Deposition Exhibit No. 48 was marked for
11             identification by the court reporter.)
12        Q    (BY MR. LARSON)  Marked as Exhibit 48 is the
13   2004 to 2005 policy.  If you look at, very close to the
14   end, Ms. McIntyre, page POL 0215?
15             MR. SHANAGHER:  Second to last, third to last
16   page.
17             THE WITNESS:  Okay.
18        Q    (BY MR. LARSON)  If you look at, which is a
19   Change Endorsement heading, change description, about
20   the middle of that box?
21        A    Yes.
22        Q    It says 11858 Northwest 36 Avenue, Miami,
23   Florida 33167.  Do you see that?
24        A    Yes, I see that.
25        Q    Okay.  And the effective date July 31, '05?
```

95

```
 1              I, the undersigned, a Certified Shorthand
 2   Reporter of the State of Michigan, and Notary Public
 3   of the State of California, do hereby certify:
 4              That the foregoing proceedings were taken
 5   before me at the time and place herein set forth; that
 6   any witnesses in the foregoing proceedings, prior to
 7   testifying, were duly sworn; that a record of the
 8   proceedings was made by me using machine shorthand
 9   which was thereafter transcribed under my direction;
10   that the foregoing transcript is a true record of the
11   testimony given.
12              Further, that if the foregoing pertains to
13   the original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review of
15   the transcript [X] was [ ] was not requested.
16              I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or party to this action.
19              IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21
22   Dated:  MAY 2 9 2008
23                            _____
                              DIANE M. GALLAGHER, RPR
24                            MI CSR No. 2191
                              CA NOTARY PUBLIC No. 1419258
25
```