1   Philip L. Pillsbury, Jr. (SBN 72261)
    Vedica Puri (SBN 176252)
2   Eric K. Larson (SBN 142791)
    PILLSBURY & LEVINSON, LLP
3   The Transamerica Pyramid
    600 Montgomery Street, 31st Floor
4   San Francisco, CA 94111
    Telephone:  (415) 433-8000
5   Facsimile:  (415) 433-4816
6   E-mail:  ppillsbury@pillsburylevinson.com
             vpuri@pillsburylevinson.com
7            rlarson@pillsburylevinson.com
8
    Attorneys for Plaintiff and Counterdefendant
9   COPART INC.

10                UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13  COPART INC.,                        )  Case No.  C 07 2684 CW-EDL
                                        )
14             Plaintiff,               )  **E-FILING**
                                        )
15        vs.                           )
                                        )
16  CRUM & FORSTER INDEMNITY            )  **COPART, INC.'S COMBINED**
    COMPANY, UNITED STATES FIRE         )  **MEMORANDUM OF POINTS AND**
17  INSURANCE COMPANY, and DOES 1-10,   )  **AUTHORITIES IN OPPOSITION TO**
    Inclusive,                          )  **USFIC'S MOTION FOR SUMMARY**
18                                      )  **JUDGMENT AND REPLY IN**
                                        )  **SUPPORT OF COPART'S MOTION**
19             Defendants.              )  **FOR SUMMARY JUDGMENT**
                                        )
20                                      )
    _____)
21  UNITED STATES FIRE INSURANCE        )  Date:    August 21, 2008
    COMPANY,                            )  Time:    2:00 p.m.
22                                      )  Place:   Courtroom 2, 4th Floor
               Counterclaimant,         )  Before the Hon. Claudia Wilken
23                                      )
          vs.                           )
24                                      )
                                        )
25  COPART, INC.,                       )
                                        )
26             Counterdefendant.        )
                                        )
27                                      )  Action Filed:  March 20, 2007
                                        )  Trial Date:    November 10, 2008
28

1

**TABLE OF CONTENTS**

2

**Page(s)**

3    I.    INTRODUCTION ................................................................................................. 1

4    II.    ARGUMENT ....................................................................................................... 1

5    A.    The Policy Unambiguously Give Copart Coverage For Its

6    Buildings At Yard 105. .................................................................................... 1

7    B.    *Filippo Industries* Is Directly On Point and USFIC's
        Cursory Attempt To Distinguish It Fails. ........................................................ 5

8

9    C.    How USFIC Calculated Its Flat Fee Premium Is
        Irrelevant........................................................................................................... 6

10    D.    The Policy Can Be Interpreted Without Reference to
        Extrinsic Evidence, Which Supports Copart In Any

11    Event. ................................................................................................................ 7

12    E.    Bad Faith Is For The Jury And Summary Judgment Is

13    Inappropriate. ................................................................................................... 9

14    F.    There Were No Material Misrepresentations or
        Concealment As A Matter Of Law Such That USFIC Can

15    Avoid Coverage. ............................................................................................. 12

16    G.    The Counterclaim Is Without Merit And USFIC Cites

17    Not A Single Case Or Item Of Evidence That Support It. ............................. 14

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

4

**Cases**

5

*De Campos v. State Compensation Insurance Fund*
6
(1954) 122 Cal.App.2d 519 ........................................................................ 12, 15

7
*Design Craft Jewel Industries v. St. Paul Fire and Marine Insurance*
(1977) 399 N.Y.S. 2d 225 ............................................................................. 12
8

9
*Filippo Industries v. Sun Insurance Company of New York*
35 Cal.App.4th 1728 (1995) ..................................................................... 1, 5, 6

10
*Filippo Industries, Inc. v. Sun Insurance Company of New York.*
11
74 Cal. App. 4th 1429, 1439 (1999) ................................................................ 9

12
*Holz Rubber Co. Inc. v. American Star Ins. Co.*
(1975) 14 Cal.3d 45 ..................................................................................... 2, 5
13

14
*Mitchell v. United National Insurance Co.*
(2005) 127 Cal.App.4th 457 ......................................................................... 12

15
*Montrose Chem. Corp. v. Admiral Ins. Co.*
16
(1995) 10 Cal.4th 645 ..................................................................................... 7

17
*Sony Computer Entertainment America, Inc. v. American Home Assurance Company*
_____ F.3d ___, 2008 WL 2736012 (9th Cir. 2008) ....................................... 2
18

19
*Thompson v. Occidental Life Ins. Co.,*
9 Cal. 3d 904, 916 (1973) ............................................................................. 13

20
*Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau*
21
(2005) 130 Cal.App.4th 99 .............................................................................. 6

22
*Williamson & Vollmer v. Sequoia Insurance Company*
(1976) 64 Cal.App.3d 261 ............................................................................. 12
23

24
*Wilson v. 21st Century Ins. Co.,*
42 Cal.4th 713 (2007) ...................................................................................... 9

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

## I.    INTRODUCTION

USFIC wants the Court to rewrite the Policy because, as written, there is coverage for Yard 105.  USFIC's cross-motion for summary judgment on coverage is thin on legal authority, virtually ignores the on-point *Filippo Industries* case, and depends on a contorted reading of the Policy manufactured to come its desired conclusion.  However, the Policy "fails to specify any consequence in the event the insured has failed to file timely reports of value," and that failure is dispositive. *Filippo Industries v. Sun Insurance Company of New York*, 35 Cal.App.4th 1728, 1734 (1995).  A second *Filippo Industries* case, rejecting the exact "genuine dispute" argument USFIC makes, necessitates that the bad faith claim go to the jury.  USFIC has come forward with no evidence to support its counterclaim and has not even attempted to meet Copart's legal arguments.

## II.    ARGUMENT

### A.    The Policy Unambiguously Give Copart Coverage For Its Buildings At Yard 105.

To determine if there is coverage, one looks at the four corners of the policy, and reads the key provisions in their entirety and together.  To say that Copart skipped the first step in the coverage analysis and failed to address whether the loss even falls within the policy's basic scope of coverage (See USFIC Motion, page 8:6-8) is to willfully mischaracterize Copart's motion.  Copart thoroughly analyzed, step by step, how the Policy identifies covered property and the necessary conclusion that there is coverage for Yard 105.  Copart Motion, § II.E. p. 11-13.  USFIC's analysis is not nearly as rigorous and gives itself all benefit of the doubt based on a completely selective and restrictive reading, contrary to California's well-established principles of policy interpretation.

As anticipated in Copart's motion, USFIC relies upon a narrow reading of policy language that actually grants coverage, language that must be read expansively giving the benefit of the doubt to the insured.  USFIC's motion and opposition completely ignores any

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.        Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

legal authority[1] regarding the proper construction of insurance policies and comes as Copart's motion advertised: USFIC turns accepted principles of the policy interpretation on their head.

USFIC's fundamental error, in which it invites the Court to participate, is to argue that there is no coverage because the Statement of Values does not adequately "describe" the buildings at Yard 105. This requires the Court to read into the Policy the following implied terms that would restrict coverage dramatically: (a) that the Policy provides, as a condition to coverage, that the insured must "describe" its buildings in a Statement of Values form created by any broker ("SOV"), and (b) that "describe" means filling in *all* of the 'x' number of columns in a form. But no clear and unambiguous language in the Policy can be read to impose this condition. Therefore, USFIC's requested interpretation violates California law:

> We will not import into these policies a condition favorable to the insurer which was not provided for by the terms of the agreement. [¶] We reiterate that an insurer who wishes to condition its contractual liability upon the insured's conformance with certain conduct must do so in clear, unambiguous language . . . If the insurer uses language which is uncertain any reasonable doubt will be resolved against it . . .
>
> *Holz Rubber Co. Inc. v. American Star Ins. Co.* (1975) 14 Cal.3d 45.

USFIC's contorted reading is contradicted by the fact that the Supplemental Declarations and Schedule of Location forms, which unlike the SOV actually are a part of the Policy, would lead any reasonable insured to believe that it has coverage up to $2.5 million for *all* of its buildings at locations designated by address, city and state. The after-the-fact, self-serving declaration by the underwriter, Monica Streacker, with its musings on what is

---

[1]  *Sony Computer Entertainment America, Inc. v. American Home Assurance Company*, _____ F.3d ___, 2008 WL 2736012 (9th Cir. 2008), which USFIC cites as support for its position, is a case involving the meaning of the phrase "negligent publication" in a liability policy and analyzed whether a third party suit was covered under that phrase. It is not on point other than for the broad proposition, which Copart does not dispute, that one looks first to the language granting coverage. Copart's central point is that USFIC takes an undefined term in the coverage part -- "describe" -- and gives it a restrictive definition in order to impose conditions and exclusions on Copart. As Copart put it in its motion: "USFIC's position is in direct violation of basic principles of policy interpretation, as it requires first casting doubt on the extent of the Policy's coverage part and then construing it in the most exclusive sense for the benefit of the insurer. USFIC asks the Court to enforce an imaginary

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.     Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

1    "important" or what she believed to be covered, should be disregarded entirely, especially in

2    light of the candid, but unavoidable, admission made in her deposition about which USFIC is

3    understandably silent:

> Q.    Is there anywhere in the policy that tells the insured
4    that a location will not be insured if it doesn't have
>        a value on the Statement of Values?
5    A.    No.

6    Streacker Depo. 167:20-23 (Larson Decl. Vol. II, Ex. B).[2]

7         The Supplemental Declarations state that all buildings at described premises are

8    covered by the USFIC policy.  USFIC does not dispute, nor could it, the testimony of Ms.

9    Streacker that the designation "ALL," rather than the cryptic and meaningless "001" should

10   have appeared in the "Bldg. No." column.  Streacker Depo. 116:14-24; 176:8-22 (Larson

11   Decl., Vol. II, Ex. B).  Accordingly, Copart has coverage for all of its buildings at any location

12   described in the Schedule of Locations.

13        USFIC concedes that Yard 105 was a covered location at the time of the loss.  (*See*,

14   USFIC Motion p. 8:22-33:  "US Fire concedes that Yard 105 is a described premises (*i.e.,* a

15   covered location . . .").  USFIC argues, however, that "the 'Property Statement of Values 8-8-

16   05' incorporated into the declarations does not 'describe' any buildings at Yard 105."  But the

17   SOV -- a form not even prepared by USFIC -- is *not* incorporated into the declarations

18   wholesale by that name, as USFIC contends.  The Policy only references a "Schedule of

19   Locations" containing address, city and state, information that USFIC concedes Copart

20   provided for Yard 105. Yard 105 was such a described location in that the address, city and

21   state was set forth on the schedule of locations portion of the SOV.  Hence, there is coverage

22   for the buildings at Yard 105.  It is that simple.

23

24

_____

25   exclusionary clause that not only fails the 'conspicuous, plain and clear' test -- it does not exist in the
26   Policy at all."  Copart Motion, p. 15:12-16.

27   [2]   References to the "Larson Decl." are to the three volumes of the Declaration of Eric Larson
     previously submitted with Copart's motion.   "Larson Reply Decl." refers to the declaration
28   submitted with this Opposition/Reply brief.

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.          Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    Ms. Streacker now declares that the label "Statement of Values" or "Schedule of Values"

2    Locations" is "unimportant," (Streacker Decl. ¶ 4), a cavalier (and revealing) attitude for an

3    underwriter to take regarding something as critical as word choice in a policy.  The USFIC

4    independent claims adjuster that handled the Copart claims has a different opinion on the

5    importance of the label:

6         Q.    In your experience, is there a difference between -- in your mind, between a
               statement of values and a schedule of locations?
7
8         A     Yes.

          Q     What's the difference?
9
10        A     A statement of values says what the values are on the property.  A schedule of
               locations is the -- the actual individual properties on the policy.
11
          Q     So a schedule of location lists the locations that are covered?
12
          A     Right.
13
          Q     And how are they usually listed?  By address?
14
          A     By address or by state or –
15
          Wills Depo., p. 126:5-17 (Larson Reply Decl., Ex. D).
16
17        Streacker goes on to opine in her declaration that "what is important is that the

18    document (1) describe the *nature* of the exposures to be insured (buildings, contents, business

19    interruption, etc.) (2) describe the *locations* of the exposures; and (3) *quantify* the exposures in

20    dollar terms (in the case of buildings, replacement)."  If this is "important"--so important,

21    indeed, that coverage *depends* on the insured's compliance -- *why doesn't the Policy tell the*

22    *insured that?*  That would be very simple to do and it is USFIC's obligation to put conditions

23    in the Policy in clear and unambiguous terms. Again, Ms. Streacker admits that nowhere in the

24    Policy does it tell the insured that coverage is tied to values being stated.  Streacker Depo.

25    167:20-23 (Larson Decl., Vol. I, Ex. B).

26        USFIC is not even consistent in its application of its invented definition of "describe."

27    USFIC asserts now that the Yard 105 buildings were not adequately "described" because

28    "[a]lso blank are the spaces in the columns for square footage, construction type, alarms and

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.        Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1 sprinklers." USFIC Motion, p. 9:8-9. *See also*, USFIC Response to Special Interrogatory No.

2 15 (Larson Decl., Vol. III, Ex. H).  ["The true intent and agreement of the parties was that

3 only buildings described to USFIC by way of the Statement of Values (particularly, the

4 columns therein for replacement cost value, number of buildings, construction type, square

5 footage, and whether the building(s) were sprinkled and/or alarmed) would qualify as Covered

6 Property."]  But, USFIC admits that they paid Copart for Hurricane Wilma damages to

7 buildings at Yards 33 and 70 in Florida (See USFIC Motion p. 7:11-18) and a number of

8 columns in the 8/8/05 SOV for those two properties, which USFIC now claims are

9 "particularly" important to the required description, are blank.  Apparently, USFIC's definition

10 of "describe" changes depending on the size of the claim.  At $140,000, blanks in the SOV

11 columns are fine, but at $1.5 million dollars, the definition becomes very restrictive.

12    Copart has coverage for *all* of its buildings at designated locations, because that is what

13 the Policy actually says it covers.  That is what the binder says as well, a point that USFIC all

14 but ignores in its opposition.  USFIC's shifting position, based upon a definition and condition

15 that exists only in its mind, and after the fact, illustrates the wisdom of settled law, ignored by

16 USFIC, that "an insurer who wishes to condition its contractual liability upon the insured's

17 conformance with certain conduct must do so in clear, ambiguous language." *Holz Rubber

18 Company, Inc. v. American Star Insurance Co.* (1975) 14 Cal.3d 45, 59.

19    **B.    *Filippo Industries* Is Directly On Point and USFIC's Cursory Attempt To
20        Distinguish It Fails.**

21    The key California case most on point with respect to our case, *Filippo Industries v.

22 Sun Insurance Company of New York*, 35 Cal.App.4th 1728 (1995), holding that an insurance

23 company must clearly express to an insured that the failure to update statements of value will

24 result in severe consequences – namely, no coverage  -- is brushed aside by USFIC in a single

25 paragraph of its motion. USFIC Motion, p. 10:7-14.

26    USFIC's attempt to bypass *Filippo Industries* hastily is telling; USFIC would just

27 prefer to ignore it.  USFIC's first point of distinction is that *Filippo Industries* involved

28 inventory, not buildings.  Why that factual distinction prevents application of the case's logic

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.     Case No. C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    and holding is left unexplained by USFIC, and suggests that the Court is incapable of fulfilling

2    one of its core tasks of applying cases to factual situations which may not mirror each other

3    exactly.

4         Second, USFIC argues that "[i]n dispute was the amount the insurer owed for the

5    damage, not whether the inventory was covered property." USFIC Motion 10:8-10. That

6    "distinction" does not survive scrutiny. Here, there is no dispute that Copart has coverage for

7    its buildings at designated locations; the issue raised by USFIC is whether the buildings at

8    Yard 105 were adequately "described." USFIC says that description must be set out in the

9    SOV and that the description in this case is inadequate because there were no values listed.

10   This is the identical issue to that in *Filippo Industries* in which the insured had coverage for

11   inventory, but the insurer said that the value report did not implicate the policy limits because,

12   in essence, it only "described" inventory of a lesser value. The Court rejected the insurer's

13   argument in that case, and the Court should reject the nearly identical argument USFIC is

14   making here. The policy in *Filippo Industries,* with its instant value reporting provision, and

15   our Policy, with no reporting provision whatsoever, share this quality which was critical to the

16   court's holding: each "fails to specify any consequence in the event the insured has failed to

17   file timely reports of value." *Filippo Industries, supra*, 35 Cal.App.4[th] at 1734.

18        **C.    How USFIC Calculated Its Flat Fee Premium Is Irrelevant.**

19        As noted in Copart's motion, the argument of how premiums were calculated is purely

20   an ancillary issue that has no bearing on whether there is coverage or not. The "method of

21   calculating the premiums cannot change the plain meaning of the policy language." *Travelers*

22   *Cas. & Sur. Co. v. Employers Ins. of Wausau* (2005) 130 Cal.App.4[th] 99, 116.

23        Nevertheless, a large part of USFIC's motion is composed of a long lament that USFIC

24   did not charge as much in premiums as it wishes it had. Copart anticipated and dispensed with

25   this argument in its motion and put to rest the notion that Copart did not pay any premiums for

26   Yard 105. See Copart Motion, § II.D., pp. 9-10. There is absolutely nothing in USFIC's

27   motion that takes issue with the undisputed point that the premium charged by USFIC was a

28   flat negotiated amount, that was based to some extent upon *total* insurable values, but was not

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.          Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

broken down by location, let alone individual components at that location.  USFIC

Counterclaim, ¶¶ 24-25; Hansen Depo. 36:9-19 (Larson Decl., Vol. II, Ex. F).  Copart is not

privy to how USFIC calculates its premiums --and Ms. Streacker testified that rates are based

on such amorphous factors as underwriter experience, industry standards, and market

conditions (Streacker Depo. 119:12-120:5, Larson Decl., Vol. II, Ex. B)-- and its coverage for

a particular building cannot hinge on the hidden mathematics that underly that calculation.

### D.    The Policy Can Be Interpreted Without Reference to Extrinsic Evidence, Which Supports Copart In Any Event.

USFIC's attempt to use extrinsic evidence to alter the unambiguous terms of the Policy

is improper.  First, if the Court finds a provision of the Policy ambiguous -- and USFIC does

not identify what term or provision is ambiguous -- then any such ambiguity is generally

interpreted in favor of coverage. If the ambiguity is in a coverage clause, it must be resolved

by interpreting the clause broadly in order to protect the objectively reasonable expectations of

the insured.  *Montrose Chem. Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667.  Copart's

reasonable expectations were that by purchasing a comprehensive "all risk" property policy

with a $2.5 million limit covering all of its buildings at its designated locations, with no value

reporting condition in the Policy, Copart would have coverage for Yard 105.  Copart's

understanding comports with the clear meaning of the Supplemental Declarations form and the

Schedule of Locations form.  Rote Depo. 111:3-7  ("What the Statement of Values requires is

just us to provide them with the location, and that's basically what we're doing for the

insurance companies is providing than the locations.")  Rote Depo. 55:22-56:1 ("We endeavor

to make our best estimates and to ensure the accuracy and validity of this particular report.  But

because, you know, my understanding of how the insurance worked, all of our locations were

covered . . ." (Larson Reply Decl., Ex. A) This understanding of the purpose of a Schedule of

Locations was confirmed by USFIC's own third party adjuster.  Wills Depo. 126:5-17 (Larson

Reply Decl., Ex. D.)

Further, the extrinsic evidence supports Copart. The evidence cited by USFIC only

shows that Copart tried diligently to update the SOV before renewal of a policy and during the

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    course of a policy year. Adjustments were made to premiums throughout the course of the

2    policy period. USFIC even corrected an error it had made in the TIV at the end of the policy

3    year in 2004, adjusting it upward and charging additional premiums, which Copart paid

4    without protest. (Ruby Decl. Ex. 8.) This demonstrates that values and premiums were fluid,

5    subject to periodic adjustment and final calibration at the end of the year. Similarly, Copart

6    made amendments to the current SOV in November 1, 2005 adding values to columns for Yard

7    105[3] and again in January, 2006 (Ruby Decl., Ex. 20).

8           Copart does not contend that "the values and other descriptions of property in the

9    statement of value were irrelevant to the parties' contracts." USFIC Motion, 13:9-10. USFIC

10   is overstating Copart's argument to try to shoot it down. Copart had an ongoing contractual

11   relationship with USFIC for four years. Copart knew that total insurable values went into the

12   premium calculus and that those premiums could be adjusted. It knew that it needed to work

13   to update its SOV as best it could in the course of this contractual relationship and ensure that

14   USFIC not cancel the policy for lack of cooperation, or not bid for renewal. Copart had no idea

15   that a fully completed SOV was dispositive of coverage, because the Policy doesn't say that at

16   all, let alone clearly and unambiguously. Copart did its best in updating the SOV, but there

17   was no urgency and no consequence if the update lagged for any reason. Rote Depo. 91:16-

18   92:25, Larson Reply Decl. Ex. A ("I hate to say it, but with respect to prioritizing what's

19   critical, the other items [*i.e.* worker's comp information] were more critical. The Statement of

20   Values was not a critical item."). *See also*, Larson Decl., Vol. III, Ex. E, in which Marsh tells

21   Mr. Rote that it needs to "clean up the list for our specification to markets."

22

23

24   [3]  In its motion, Copart noted that values for the buildings at Yard 105 were added to the SOV on
     November 1, 2005 before the Policy issued on December 12, 2005. USFIC's footnote 6 on this subject

25   is false. First, Copart specifically noted in its motion that this particular revision to this SOV happened
     after the loss and USFIC's suggestion otherwise is blatantly untrue. Larson Decl., Vol. III, ¶ 9.

26   Second, it is not true that Copart "back dated" the spreadsheet to September 14, 2005. As USFIC's
     counsel well knows from the evidence which Copart submitted, on November 1, Mr. Rote updated an
     existing September 14, 2005 spreadsheet, but did not change the date on it. Rote Depo. 181:15-185:5.

27   (Larson Decl., Vol. II, Ex. G.) USFIC's efforts to manufacture "suspicions" about Copart and its
     counsel says quite a bit about the legitimacy of its coverage position and its good faith, or lack thereof,

28   in asserting it.

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.        Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1   USFIC may have used the SOV for *premium calculation*, but it did not tell Copart that

2   it would use it for *coverage determination*. That is the critical distinction that USFIC ignores,

3   but that the Court of Appeals, in a second round of proceedings involving Filippo Industries

4   and its insurer (which is dispositive on USFIC's motion on the bad faith claim as we explain

5   below), made with simple precision: "The purpose of the [value] report was to establish the

6   premium to be paid. The policy contained no clause warning of consequences of late

7   reporting." *Filippo Industries, Inc. v. Sun Insurance Company of New York* 74 Cal. App. 4th

8   1429, 1439 (1999) ("*Filippo Industries II*"). All the extrinsic evidence shows is that Copart

9   was actually more diligent than the insured in *Filippo Industries*. It adds nothing to USFIC's

10  coverage position.

11   Copart *does* contend that if USFIC wanted to *condition* coverage on exactly accurate

12  and timely values being stated in the SOV, it had to write a Policy that says that. Completely

13  missing from USFIC's offered extrinsic evidence is any communication that tells Copart that it

14  fails to update values at its peril. Copart *does* contend that it is incumbent on the insurer to tell

15  it clearly and unambiguously if there are consequences to its failure to state a value by a

16  certain deadline. Copart *does* contend that the insurer cannot lull the insured into a false sense

17  of security, then pull the Policy away when it is time to pay a substantial claim. *Filippo*

18  *Industries* holds that Copart is correct in these contentions. USFIC bears the financial burden

19  for its failure to include an explicit condition in its Policy, not Copart.

20       **E.    Bad Faith Is For The Jury And Summary Judgment Is Inappropriate.**

21   USFIC briefly tosses off an argument that there can be no bad faith because there is no

22  coverage. There is coverage. USFIC also claims that there was a genuine dispute over

23  coverage. "Genuine dispute" is not a magic talisman that may simply be invoked to avoid the

24  implied covenant of good faith and fair dealing.

25   Bad faith, including application of the genuine dispute doctrine, is for the jury to

26  decide. In its recent opinion in *Wilson v. 21st Century Ins. Co.*, 42 Cal.4[th] 713 (2007), the

27  California Supreme Court held that "an insurer is entitled to summary judgment based on a

28  genuine dispute over coverage or the value of the insured's claim only where the summary

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-9-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  judgment record demonstrates the absence of triable issues as to whether the disputed position
2  upon which the insurer denied the claim was reached reasonably and in good faith." *Id.* at 724
3  (citation omitted). Conversely, "an insurer is not entitled to judgment as a matter of law where,
4  viewing the facts in a light most favorable to the plaintiff, a jury could conclude that the
5  insurer acted unreasonably." *Id.* Further, "[a]n insurer's good faith or bad faith must be
6  evaluated in light of the totality of the circumstances surrounding its actions." *Id.* at 723.

7      Coincidentally, the insurer in *Filippo Industries* made the same genuine dispute
8  argument USFIC makes now. In that case, the insurer had the fact in its favor that the trial
9  court had originally granted it summary judgment; that was the ruling overturned by the Court
10 in the decision we have been discussing. The Court of Appeal in *Filippo Industries II* again
11 disagreed with the insurer and upheld the jury's verdict awarding damages for bad faith and
12 punitive damages, noting that "'an insurer's bad faith is ordinarily a question of fact to be
13 determined by the jury..'" *Filippo Industries II, supra,* 74 Cal.App.4[th] at 1438.  If the insurer in
14 *Filippo Industries II* was not insulated from a bad faith determination by the trial court's initial
15 favorable ruling, then USFIC certainly cannot avoid the jury's consideration of that claim after
16 it loses a similar motion.

17     There will be a wealth of evidence for the jury to consider and which will support a
18 finding of bad faith including, but not limited to the following:

19 • *The Wrong Policy*. USFIC relied on the *wrong policy* in adjusting Copart's Wilma
20   claims.[4]  There can be no more cardinal rule to break for an insurer than failing and
     then refusing to adjust a claim using the correct policy.  USFIC requires that the claims
21   file contain a copy of the applicable policy. Clarke testified that the policy in the claims
     file (CLAIM 203-330) was the policy he used to analyze the Wilma claims.  Clarke
22   Deposition, page 87:24-88:16.  (Larson Reply Decl., Ex. B.)  However, the claims file
     contains only Copart's 04-05 policy – which expired on October 1, 2005 and would not
23   apply to the October 24, 2005 Wilma claims.  This is important especially because
     there are major differences between Copart's 04-05 and the 05-06 policies, including
24   the fact that the earlier policy had a $5 million limit, and the applicable Policy a $2.5
     million limit.  Clarke admitted that over a year after the loss and in issuing the denial
25   letter, he still had not reviewed the correct policy.  Clarke Depo. 249:9-16.

26
27
28 [4]   The entire claim file is attached to the Larson Reply Decl. as Ex. F.  Specific pages are referenced
     with the designation "CLAIM" followed by the bates number.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

- *The Wrong SOV.*  The claims file also reflects that Clarke was looking at the wrong SOV and relied on the wrong SOV in denying the Yard 105 claim. Relying on an outdated and obviously wrong version of the SOV, Clarke presumed Yard 105 had been completely deleted from coverage.  Clarke referenced the wrong SOV in the claims file at least five times (CLAIM 151, 149, 8, 47 and 6) and admits that from the inception of the claim through February 2007 he was using the wrong SOV.  Clarke Depo., 288:9-13.  Keleman confirmed that Clarke was using the wrong policy and SOV.  Keleman Depo. 84:16-85:5.  (Larson Reply Decl., Ex. C.)

- *Unreasonable Delay.*  Clarke denied Copart's claim based on one document and one document alone – the SOV.  Clarke had or could have obtained the right SOV at the same time the claim was tendered in October 2005.  Instead, Clarke waited over a year, failed to obtain the right SOV and then denied the claim in December 2006.  Clarke admitted that waiting a year to decline coverage for Yard 105 was "unfair" to Copart.  Clarke Depo., page 131:15-134:11.  Keleman testified that the Yard 105 decision should not have taken a year.  Keleman Depo. 141:13-142:3.

- *Evidence of Sanitization.* USFIC produced their "electronic claims file" ("ECF") in response to document demands in September, 2007.  The ECF is simply a chronological series of entries regarding the claim by various USFIC employees.  However, when a claims handler receives an email about a claim through USFIC's Lotus Notes email program, the only way to input the contents of that email into the ECF is to "cut and paste" the email.  The ECF therefore routinely contains "cut and pasted" emails that claims handlers receive on their Lotus Notes program.  McCarthy, Clarke and Keleman, all testified that the integrity of the ECF was critical and the transfer of emails into the ECF should be done accurately.  McCarthy Depo. 131:20-133:16; Keleman Depo. 48:6-49:7.  However, a few weeks before Clarke's deposition – and months after producing the ECF – USFIC produced a small stack of emails that were not a part of the claims file. One of the new emails (Larson Reply Decl., Ex. G) already existed in the ECF (CLAIM 8) – except words from the original email had been deliberately changed and the ECF deliberately sanitized.  After being confronted with this evidence, Keleman admitted that sanitizing a claims file was "dishonest" and "unfair to the insured."  Keleman Depo. 121:9-123:12; 125:6-16.

- *Other Problems with USFIC's Claims Handling.*  Copart's claims handling expert, Guy Kornblum, found many severe flaws with USFIC's claims handling that were detailed in his report dated July 25, 2008 (Larson Reply Decl., Ex. H.)

This above recitation does not purport to be a comprehensive catalogue of USFIC's bad faith.  Suffice it to say that the evidence demonstrates that USFIC only concocted this "genuine dispute" coverage argument they now advance when it balked at the cost to replace the buildings at Yard 105 and very late in the game searched for a pretext to deny the claim.

**F.    There Were No Material Misrepresentations or Concealment As A Matter Of Law Such That USFIC Can Avoid Coverage.**

USFIC claims that it has a complete affirmative defense to coverage because of "Copart's concealment of the existence and values of the buildings at Yard 105." USFIC Motion, p. 13:18-19. USFIC contends that Copart committed fraud because it did not fill in columns on a form that was not even created by USFIC and was submitted with specifications to the market. Each of the authorities upon which USFIC relies involved direct questions posed by an insurer in an application to which the insured gave substantive, false responses. *See, Mitchell v. United National Insurance Co.* (2005) 127 Cal.App.4th 457 (specific false representations regarding the size, use, and other insurance on a single building); *Williamson & Vollmer v. Sequoia Insurance Company* (1976) 64 Cal.App.3d 261 (specific false representations regarding prior claims made in response to insurer's questions); *De Campos v. State Compensation Insurance Fund* (1954) 122 Cal.App.2d 519 (specific, false representations made regarding the identity of partners to be covered by workers' compensation policy made in response to insurer's questions).[5] There is no evidence that Copart made any specific factual representation in response to a question posed by USFIC in an application.

Further, USFIC has not disputed the evidence, confirmed by more than one witness, that it never told Copart, in the Policy or elsewhere, that there were specific consequences if it did not state updated values for locations on the SOV. McIntyre Depo. 79:9-22; Streacker Depo. 81:5-82:4, 167:20-23; McCarthy Depo. 121:18-128:25; Clarke Depo. 175:24-176:3. (Larson Decl., Vol. II, Exs. A, B, H and D). This brings us back to *Filippo Industries.* By USFIC's logic, the insurer in *Filippo Industries* could have walked away from the Policy after the loss because the insured "concealed" the true value of the inventory. Absent any provision of the policy that ties coverage to values stated, absent any explicit condition, the Court held

---

[5]    *Design Craft Jewel Industries v. St. Paul Fire and Marine Insurance* (1977) 399 N.Y.S. 2d 225, USFIC's final authority, is completely off point. This is a New York case in which the court found it would have been illegal under New York law for the insurer to issue the policy if inventory value had been accurately stated and, thus, the representation regarding value was material as a matter of law.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1   that insurer could not avoid coverage when it accepted late reporting of values and chose not to

2   cancel the policy.

3       Nor has USFIC made any showing that the blank columns on the 8-8-05 SOV for Yard

4   105 were a material "concealment" in any respect with regard to the premiums charged.

5   USFIC admits that the premium paid -- over $300,000 -- was a flat, negotiated amount.

6   USFIC admits that it originally quoted a premium of $400,000, but "after some negotiations,

7   Streacker applied a lower rate and quoted a premium of $306,250 (still based on the reported

8   TIV of $424 million)."  USFIC Counterclaim ¶¶ 24-25.  The evidence is therefore, that this

9   substantial premium was not influenced by a single building value, here or there.[6]

10
11              "[A]s the misrepresentation must be a material one, 'An
                incorrect answer on an insurance application does not give
12              rise to the defense of fraud where the true facts, if known,
                would not have made the contract less desirable to the
13              insurer.'  And the trier of fact is not required to believe the
                'post mortem' testimony of an insurer's agents that
14              insurance would have been refused had the true facts been
                disclosed.

15              *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916
                (1973)
16

17       This is even a less compelling case for materiality since the alleged concealment was

18   the delayed entry of  columns on a form provided by the broker with specifications to the

19   market, not a representation of fact in response to an insurer's direct question.

20       Further, the issue of when Yard 105 actually went into operation is also completely an

21   ancillary issue as Copart duly noted in its motion.  As anticipated, USFIC tries to get as much

22   mileage as it can by suggesting that Copart was secretly hiding its buildings at Yard 105 so it

23   would not have to pay premiums for them.  There is not a wisp of evidence of this and indeed,

24   it makes no sense that Copart would "hide" a building at a single yard, in hurricane country, so

25   it could save a few thousand dollars when it was already paying over $300,000 in a flat

26

27   _____
     [6]  Further underscoring the lack of materiality, on July 25 with its expert disclosure, USFIC has
28   revealed that the sum total of "lost premiums" it claims with respect to *all* locations in 2005-2006 is
     $18,221.  Larson Reply Decl., Ex. I.

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.         Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1  premium.  One of the few accurate statements in USFIC's motion comes in page 1 when it

2  notes that such an inquiry is not "relevant."  Copart agrees.

### G. The Counterclaim Is Without Merit And USFIC Cites Not A Single Case Or Item Of Evidence That Support It.

5  USFIC's opposition to Copart's Motion on USFIC's Counterclaim is, remarkably,

6  unsupported by a single authority on any of the issues addressed in Copart's motion.  USFIC

7  comes forward with no authority to counter Copart's argument that the Court cannot redo the

8  deal in USFIC's favor.  Indeed, USFIC's opposition demonstrates just how nonsensical its

9  request for reformation is as it asks the Court to reform whatever portion of the policy is

10 necessary just so long as USFIC wins.  As Copart noted, USFIC is inviting the Court to be

11 post-claims underwriter, and rewrite the Policy for the specific purpose of avoiding a claim.

12 That is not what the equitable remedy of reformation is intended to or can accomplish.

13 USFIC makes absolutely no effort to respond meaningfully to Copart's exposure of its

14 complete lack of evidence on the issue of mistake.  USFIC comes forward with no evidence of

15 mistake in its opposition and, apparently, is standing on its completely insufficient

16 interrogatory responses, which simply restated the allegations of the counterclaim.  USFIC's

17 response is to say "it is sufficient for present purposes that there was a mistake *somewhere*, if

18 the Court finds that the policy as written covers all of Copart's property . . ."  (USFIC Motion,

19 p. 22:3-4).  USFIC then alludes to the "abundant evidence" of the parties' course of dealings.

20 As we have explained, all this evidence shows is that the parties considered the SOV to be a

21 fluid document that was updated throughout the policy year, not a strict determinant of

22 coverage. Again, *Filippo Industries II* is helpful in underscoring in simple terms this

23 distinction, which USFIC tries to blur. "The purpose of the [value] report was to establish the

24 premium to be paid. The policy contained no clause warning of consequences of late

25 reporting." *Filippo Industries II, supra,* 74 Cal.App.4[th] at 1439. The evidence does not

26 demonstrate at all, let alone clearly and convincingly, that there was a mistake in the drafting

27 of the Policy and such a clause was left out in error.  We are well past the close of discovery in

28

1    this case.  It was time to come forward with evidence and USFIC was unable to do so.  Under

2    the *Celotex* case, summary judgment is appropriate on this claim.

3    When it comes to the claim for negligent misrepresentation, USFIC does not even meet

4    the elements of the claim that Copart attacks.  Copart moved for summary judgment on the

5    ground that USFIC cannot and has not come forward with any evidence that the

6    misrepresentations alleged were (a) misrepresentations of fact, or (b) caused any category of

7    damage that is recoverable as a matter of law.  Completely missing the point, USFIC chooses

8    to argue that it was entitled to rely on Copart's representations.  (USFIC Motion, p. 23.)  There

9    is no mention of, let alone an attempt to distinguish or discuss, Copart's authorities that

10   opinions as to real estate value, especially in this context, cannot be actionable representations.

11   Finally, USFIC makes no attempt to counter Copart's authorities that USFIC is seeking

12   benefit of the bargain expectancy damages that are not recoverable as a matter of law on a

13   claim for negligent misrepresentation.  USFIC cites *De Campos v. State Compensation*

14   *Insurance Fund*, 122 Cal.App.2d 519 (1954) for the proposition that its "lost premiums"

15   damages theory is valid, but that case did not involve that theory.  In that case, the insurer

16   sought to recover for injury actually sustained:  damages it had to pay in a workman's

17   compensation proceeding to dependents of a deceased general partner.  *Id*. at 523.  The Court

18   noted, in passing, that on a claim for 'breach of contract, based on an express warranty, an

19   appropriate measure of damages "might" be "in the amount only of unpaid premiums." *Id.* at

20   526  The insurer in *De Campos*, however, was suing in tort as in USFIC.  The insurer in *De*

21   *Campos* had sustained actual damage.  USFIC hasn't.  Speculative benefit of the bargain

22   damages are not recoverable on  a claim for negligent misrepresentation and USFIC has not

23   persuasively argued to the contrary.

24   Dated:  July 31, 2008                              PILLSBURY & LEVINSON, LLP

25

26                                            By:   /s/ Eric K. Larson

27                                                  Eric K. Larson
                                                    Attorneys for Plaintiff and Counterdefendant
28                                                  COPART INC.

COPART, INC.'S COMBINED MEM. OF POINTS & AUTH . IN OPP.          Case No.  C 07 2684 CW-EDL
TO USFIC'S MSJ AND REPLY IN SUPPORT OF COPART'S MSJ

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111