# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COPART INC.,

    Plaintiff,

vs.                                    No. C 07 02684 CW

CRUM & FORSTER INDEMNITY
COMPANY, UNITED STATES FIRE
INSURANCE COMPANY, and DOES
1-10,

    Defendants.

AND RELATED COUNTERCLAIMS.

VIDEOTAPED DEPOSITION OF SIMON ROTE

San Francisco, California

Thursday, May 8, 2008

Reported by:
DARCY J. BROKAW
RPR, CRR, CLR, CSR No. 12584

Job No. 86978

```
10:03   1         Q    You don't know?
        2         A    No.
        3         Q    Okay.
        4              Okay.  Now that you see this here today,
10:03   5    do you think it was a mistake that Yard 105 and Yard
        6    108 weren't on the statement?
        7              MR. LARSON:  Vague and ambiguous.
        8    BY MR. RUBY:
        9         Q    Let me try that again.
10:04  10              We've established that, according to the
       11    documents, they were owned as of the date, but
       12    they're not on the statement.
       13         A    Right.
       14         Q    I know you don't know or at least remember
10:04  15    why, but what I'm interested in is should they have
       16    been on this statement.
       17         A    It was an over- -- I mean, obviously,
       18    based on the dates, it would appear to be an
       19    oversight.  From our perspective in preparing the
10:04  20    document, whether or not this -- typically, we're
       21    updating this schedule on a yearly basis.
       22              We endeavor to make our best estimates and
       23    to ensure the accuracy and the validity of this
       24    particular report.  But because, you know, my
10:04  25    understanding of how the insurance worked, all of
```

Page 56

```
10:04   1   our locations were covered, so -- I mean, because
        2   these are newly -- I guess the other term would be
        3   "newly acquired."
        4        Q    Okay.
10:04   5             MR. RUBY:  I'm going to move to strike
        6   that answer.
        7   BY MR. RUBY:
        8        Q    Let me try again.
        9             What I'm interested in is:  Is there some
10:05  10   reason why, even though Copart owned Yard 105 as of
       11   2003, that it was not put on the statement?  Are you
       12   aware of such a reason?
       13        A    No, there's no such reason that I'm aware
       14   of.
10:05  15        Q    Now, with respect to Yard 108, same
       16   question.  Now that you've looked at these
       17   documents, is there any reason you're aware of as to
       18   why Yard 108 should not have been on the statement?
       19        A    No.
10:05  20        Q    There are a few other yards.  I don't
       21   think we need to go through them.
       22        A    Okay.
       23        Q    Just for the record, we looked at
       24   Yard 117, Yard 119, 120, 121, 133, and those yards
10:06  25   again seem, according to the statement, to have been
```

| | | |
|---|---|---|
| 11:00 | 1 | (Defendant's Exhibit 7 marked |
| | 2 | for identification) |
| | 3 | BY MR. RUBY: |
| | 4 | Q    Exhibit 7 is from the very beginning of |
| 11:00 | 5 | the Copart production. It starts with an e-mail |
| | 6 | chain on September 1st, 2004, first with an e-mail |
| | 7 | from Yvette Garrett to Mr. Rote, and then Mr. Rote |
| | 8 | forwarding it on to Patrice McIntyre. And so would |
| | 9 | this sort of -- and then the attachment is a |
| 11:01 | 10 | Statement of Values now dated July 31st, 2004. |
| | 11 | So Mr. Rote, would this confirm that |
| | 12 | Yvette had some responsibility for the revision of |
| | 13 | this Statement of Values in 2004? |
| | 14 | A    With respect to just making the changes |
| 11:01 | 15 | which we told her to, yes. |
| | 16 | Q    Okay. Now, if we could -- I just wanted |
| | 17 | to ask you, your e-mail to Ms. McIntyre, you say: |
| | 18 | "Patrice, finally here is a revised SOV," and you |
| | 19 | capitalized "finally." |
| 11:01 | 20 | A    Mm-hmm. |
| | 21 | Q    Why did you do that? |
| | 22 | A    Because I believe she was asking for it |
| | 23 | back in August. That's when I started providing the |
| | 24 | data to her. So just finally got it updated for |
| 11:02 | 25 | her. |

| | | |
|---|---|---|
| 11:02 | 1 | Q   Okay.  Do you recall there being some -- |
| | 2 | any particular difficulty or circumstances that drew |
| | 3 | out that process and led you to say, you know: |
| | 4 | Finally, here's the Statement of Values? |
| 11:02 | 5 | A   I hate to say it, but with respect to |
| | 6 | prioritizing what's critical, the other items were |
| | 7 | more critical.  The Statement of Values was not a |
| | 8 | critical item. |
| | 9 | Q   So it was just press of business that -- |
| 11:02 | 10 | I'm not going to say it was delayed.  But press of |
| | 11 | business that explained the passage of time between |
| | 12 | submitting that? |
| | 13 | MR. LARSON:  Misstates his testimony, |
| | 14 | asked and answered. |
| 11:02 | 15 | BY MR. RUBY: |
| | 16 | Q   Let me try it again. |
| | 17 | In addition to it not being a priority, |
| | 18 | again, was there -- I just want to eliminate other |
| | 19 | possibilities, as well.  Was there, you know, any |
| 11:02 | 20 | particular difficulty with getting it done?  Or this |
| | 21 | was just -- the process was the same as the year |
| | 22 | before and this is just how long it took? |
| | 23 | A   There was no difficulty.  Just -- I |
| | 24 | provided her with what was critical, and that was |
| 11:03 | 25 | the workers' comp information, in August. |

```
11:27   1    other parcel?
        2        A    I'm not quite sure why.  We just put
        3    the -- why we didn't put the address down?  What the
        4    Statement of Values requires is just us to provide
11:27   5    them with the location, and that's basically what
        6    we're doing for the insurance companies is providing
        7    them the locations.
        8            MR. RUBY:  Okay.  I'm going to move to
        9    strike the part about what it requires.
11:27  10    BY MR. RUBY:
       11        Q    But let me follow up on that.
       12             The location, according to this statement,
       13    is 20.288 acres in Hialeah, right?
       14        A    Correct.
11:27  15        Q    Okay.  Now, I guess I won't hold you to
       16    this unless you know it, but if the other parcel,
       17    the June '02 acquisition --
       18        A    Right.
       19        Q    -- is in fact in Miami, and in fact it has
11:28  20    a street address in Miami, and it was acquired at a
       21    different time from a different party and is
       22    additional acreage --
       23        A    Okay.
       24        Q    -- why is that not referenced in the
11:28  25    Statement of Values?
```