# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION
------------------------------------------------X

COPART,

              Plaintiff,

                                              Case No:
   - against -                          C072684 CW

CRUM & FORSTER INDEMNITY COMPANY, UNITED
STATES FIRE INSURANCE COMPANY, and DOES 1-10,

              Defendants.
------------------------------------------------X
AND RELATED COUNTERCLAIMS
------------------------------------------------X

              Merrill Legal Solutions
              25 West 45th Street
              New York, New York 10036

              June 13, 2008
              10:30 a.m.

              - Volume I -

   DEPOSITION OF CARLTON CLARKE, pursuant to Notice,

taken at the above place, date and time, before Dawn

Matera, a Registered Professional Reporter and Notary

Public within and for the State of New York.

|  |  |
|---|---|
|  | 1    Carlton Clarke |
| 12:43:22 | 2    MS. MILLIKAN: That doesn't bother me, |
| 12:43:24 | 3    but we had to put a page in yesterday. |
| 12:43:26 | 4    MS. PURI: 15. |
| 12:43:27 | 5    MS. MILLIKAN: It's in here. I wasn't |
| 12:43:28 | 6    sure if 15 was the page. |
| 12:43:30 | 7    MS. PURI: It was. |
| 12:43:34 | 8    What we're placing in front of the |
| 12:43:36 | 9    witness is a copy of Exhibit 120 which was |
| 12:43:38 | 10   marked officially yesterday. |
| 12:43:40 | 11   We didn't get the exact copy brought |
| 12:43:42 | 12   over, but I represent that this is a true and |
| 12:43:44 | 13   correct copy of that Exhibit. |
| 12:43:45 | 14   MS. MILLIKAN: Just for the record, we |
| 12:43:46 | 15   have not verified that every page is there, |
| 12:43:49 | 16   but it appears to me to be a copy of the |
| 12:43:51 | 17   claim file. |
|  | 18   (Exhibit 120, Claims File, was |
|  | 19   previously marked for identification and |
| 12:43:52 | 20   shown to the witness.) |
| 12:43:52 | 21   Q.    If you look at -- the bottom of the |
| 12:43:56 | 22   documents are Bates stamped. If you look at |
| 12:44:02 | 23   CLAIM203. |
| 12:44:02 | 24   The question I have for you: Is that |
| 12:44:04 | 25   a copy of the policy that you analyzed when handling |

|  |  |  |
|---|---|---|
|  | 1 | Carlton Clarke |
| 12:44:08 | 2 | Copart's Hurricane Wilma claims? |
| 12:44:23 | 3 | A.   This is a Copart policy.  And that's |
| 12:44:26 | 4 | my handwritten notes, so it would be a policy that I |
| 12:44:31 | 5 | saw. |
| 12:44:34 | 6 | Q.   Is this a policy that you would have |
| 12:44:35 | 7 | reviewed in order to determine whether there was |
| 12:44:38 | 8 | coverage for the Copart Wilma claims? |
| 12:44:40 | 9 | A.   Yes. |
| 12:44:40 | 10 | Q.   I just want to confirm -- I see |
| 12:44:42 | 11 | handwriting throughout the documents.  I am just |
| 12:44:44 | 12 | going to ask you if it's yours.  I'm going to flip |
| 12:44:49 | 13 | through a couple of pages. |
| 12:44:50 | 14 | If you look at 209. |
| 12:44:57 | 15 | A.   Those would be marks that I would |
| 12:44:58 | 16 | make. |
| 12:44:58 | 17 | Q.   219? |
| 12:45:07 | 18 | A.   Yes. |
| 12:45:07 | 19 | Q.   And then 264? |
| 12:45:22 | 20 | A.   Yes, that's my handwriting. |
| 12:45:24 | 21 | Q.   And if you take a look back at 181 -- |
| 12:45:37 | 22 | that's not the right number.  Excuse me, 188.  And |
| 12:45:43 | 23 | that is outside the policy that we were just looking |
| 12:45:46 | 24 | at. |
| 12:45:57 | 25 | Mr. Clarke, did you review any |

                    1              Carlton Clarke
13:35:27    2    from you, this was -- just for the sake, so we don't
13:35:29    3    have do this every time, Mr. Clarke, you've had an
13:35:32    4    opportunity in preparing for the deposition to look
13:35:36    5    through the electronic claim file notes; correct?
13:35:38    6         A.    Yes.
13:35:38    7         Q.    Are the claim file notes that indicate
13:35:42    8    you were the author actually authored by you on the
13:35:48    9    dates that are shown?
13:35:48   10         A.    Yes.
13:35:48   11              MS. MILLIKAN:  On the dates, but not
13:35:52   12         as we noticed yesterday, at 2:42 p.m.
           13              MS. PURI:  Understood.  We will agree
           14         to that.
13:35:55   15         Q.    Looking at the December 16th, 2005
13:35:55   16    entry, under the topic of coverage, you state that
13:36:02   17    "The deductible feature for this account is five
13:36:05   18    percent of the TIV."
13:36:07   19              And then towards the end, you say
13:36:09   20    "Finally, there is one location that does not appear
13:36:12   21    on the Statement of Values; therefore, the deductible
13:36:15   22    applicable to that location is TBD."
13:36:18   23              TBD stands for To Be Determined?
13:36:21   24         A.    Yes.
13:36:22   25         Q.    So in one of what I think is your

| Time | Line | |
|---|---|---|
| | 1 | Carlton Clarke |
| 13:36:27 | 2 | first entry, substantive entries in the electronic |
| 13:36:30 | 3 | claims file notations, you're tying the Statement of |
| 13:36:36 | 4 | Values into calculating the deductible; correct? |
| 13:36:39 | 5 | A.   Yes. |
| 13:36:40 | 6 | Q.   Nowhere in that entry do you tie the |
| 13:36:42 | 7 | fact that there is no location and in fact there may |
| 13:36:45 | 8 | not be coverage; right? |
| 13:36:46 | 9 | A.   Right. |
| 13:36:47 | 10 | Q.   So you thought that there could be |
| 13:36:49 | 11 | coverage, even though the location wasn't on the SOV? |
| 13:36:51 | 12 | A.   Yes. |
| 13:36:52 | 13 | Q.   Why is that? |
| 13:36:53 | 14 | A.   Well, the claim hit at the time that |
| 13:36:59 | 15 | the policy was being renewed. And it is a common |
| 13:37:03 | 16 | occurrence that the renewal policy would not have |
| 13:37:07 | 17 | been issued at the time -- at the exact time that the |
| 13:37:10 | 18 | term, that the term states that the policy is in |
| 13:37:13 | 19 | effect. |
| 13:37:14 | 20 | And it is also a common practice that |
| 13:37:16 | 21 | the renewal policy will be issued with the same terms |
| 13:37:21 | 22 | and conditions as the prior policy. So therefore, it |
| 13:37:25 | 23 | is a safe assumption that if the policy is renewed, |
| 13:37:28 | 24 | it will be the same policy as the prior policy. |
| 13:37:31 | 25 | Q.   So you were being cautious and waiting |

|  |  | Carlton Clarke |
|---|---|---|
| 13:37:33 | 2 | for the renewal to see the new policy to ensure |
| 13:37:35 | 3 | whether or not there was coverage based on the SOV |
| 13:37:38 | 4 | question? |
| 13:37:38 | 5 | A.  Right.  But I did not want to hold up |
| 13:37:40 | 6 | the adjustment process on that basis, as it would not |
| 13:37:44 | 7 | be fair to the insured. |
| 13:37:45 | 8 | Q.  So, in the meantime, until you could |
| 13:37:47 | 9 | confirm one way or the other looking at the correct |
| 13:37:50 | 10 | policy, you wanted to make sure that the claim was |
| 13:37:52 | 11 | getting adjusted? |
| 13:37:53 | 12 | A.  Exactly. |
| 13:37:54 | 13 | Q.  And that's why you went ahead and had |
| 13:37:56 | 14 | an adjuster start working up the claim? |
| 13:37:58 | 15 | A.  Exactly. |
| 13:37:58 | 16 | Q.  Why did it take a year to figure out |
| 13:38:06 | 17 | whether or not yard 105 was covered under the SOV? |
| 13:38:09 | 18 | A.  Insurance companies are never known |
| 13:38:12 | 19 | for their speed. |
| 13:38:14 | 20 | Q.  Are you known for your speed? |
| 13:38:16 | 21 | A.  No. |
| 13:38:20 | 22 | Q.  Do you think it was fair for the |
| 13:38:23 | 23 | insured to wait a year to figure out that yard 105 |
| 13:38:27 | 24 | wouldn't be covered? |
| 13:38:28 | 25 | A.  No.  It's not fair to the insured. |

|  |  |
|---|---|
|  | 1    Carlton Clarke |
| 13:38:29 | 2        Q.   So in other words, it's unreasonable? |
| 13:38:31 | 3             MS. MILLIKAN:  Objection.  Misstates |
| 13:38:32 | 4    the testimony.  You can answer the question. |
| 13:38:33 | 5        A.   There is a difference between unfair |
| 13:38:35 | 6    and unreasonable. |
| 13:38:36 | 7        Q.   What's the difference? |
| 13:38:37 | 8        A.   Unfair is placing the -- placing the |
| 13:38:41 | 9    person, whoever it may be, at a disadvantage. |
| 13:38:46 | 10   Unreasonable is basically going, going to an extreme. |
| 13:38:51 | 11   That's how I interpret it. |
| 13:38:53 | 12       Q.   So you don't think making the insured |
| 13:38:55 | 13   company wait for a year to find out if there is |
| 13:38:58 | 14   coverage on one yard is unreasonable? |
| 13:39:00 | 15       A.   No. |
| 13:39:01 | 16       Q.   It's not an extreme? |
| 13:39:03 | 17       A.   No. |
| 13:39:04 | 18       Q.   Is there a demarcation in time that it |
| 13:39:06 | 19   would be extreme?  Would two years be extreme? |
| 13:39:09 | 20       A.   No, because the insured is represented |
| 13:39:11 | 21   by an insurance broker, who is professional in the |
| 13:39:15 | 22   industry.  And if they have an issue, they should go |
| 13:39:17 | 23   to their broker. |
| 13:39:18 | 24       Q.   So if it's taking a long time to |
| 13:39:20 | 25   adjust a claim, the insured's remedy is to go to |

CARLTON CLARKE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION
------------------------------------------X
COPART,

           Plaintiff,

           -against-    Case No.  C072684 CW

CRUM & FORSTER INDEMNITY
COMPANY, UNITED STATES FIRE
INSURANCE COMPANY, and DOES
1-10,

           Defendants.
------------------------------------------X
AND RELATED COUNTER CLAIMS
------------------------------------------X

VOLUME II

CONTINUED DEPOSITION OF CARLTON CLARKE

New York, New York

Friday, July 18, 2008

REPORTED BY:  BARBARA R. ZELTMAN
              Professional Stenographic Reporter

Job Number:  410521

1                CARLTON CLARKE
2    preparing?
3        A    Yes.
4        Q    So you went into whatever electronic
5    system and actually put in the policy number,
6    amount of policy, time of loss, date issued,
7    date expires?
8        A    Yes.
9        Q    And again, we see here the amount of
10   policy at time of loss references 5 million.
11   That's the incorrect policy amount limit,
12   right?
13       A    Yes.
14       Q    So in January 2007 is it accurate to
15   say you had not reviewed the '05/06 policy.
16       A    Yes.
17       Q    So the numbers that are now towards
18   the end of this sworn statement and proof of
19   loss, there is a Number 6, 7, 8, 9, those are
20   all numbers that you put in?
21       A    Yes.
22       Q    And the idea behind this sworn
23   statement is to present it in this draft form
24   to the insured to see if you can agree on the
25   specific numbers; is that right?

1    CARLTON CLARKE

2    THE VIDEOGRAPHER: We're back on

3 the record. Time is 10:56 a.m. This is

4 going to be the start of Tape Number 5.

5    Q    Mr. Clarke, we were just talking

6 before the break about the February 2007 time

7 frame and we were looking at an e-mail string

8 between and your bosses at Crum & Forster.

9    <u>Isn't it true that from the</u>

10 <u>beginning of this claim in the fall of</u>

11 <u>2005 through February of 2007, you were</u>

12 <u>analyzing the wrong SOV?</u>

13    <u>A    Yes.</u>

14    Q    And now in the February 2007 time

15 frame, based on Mr. McCarthy's instruction to

16 hire Butler Pappas, did you go ahead were

17 hire Butler Pappas with respect to the Copart

18 Yard 105 claim?

19    A    Yes.

20    Q    And in the ensuing few weeks and

21 months, did you have communications with the

22 Butler Pappas firm?

23    A    I would assume that I did, yes.

24    Q    Sitting here today, you don't

25 remember one way or the other?