Jess B. Millikan, SBN 095540
Samuel H. Ruby, SBN 191091
Judith A. Whitehouse, SBN 198176
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
jess.millikan@bullivant.com
samuel.ruby@bullivant.com
judith.whitehouse@bullivant.com

Attorneys for Defendant
United States Fire Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COPART INC., | Case No.: C 07 2684 CW (EDL) |
| Plaintiff, | **UNITED STATES FIRE INSURANCE COMPANY'S REPLY BRIEF RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| CRUM & FORSTER INDEMNITY COMPANY[1], UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-10, | Date:      August 21, 2008<br>Time:      2:00 p.m. |
| Defendants. | Action File:   March 20, 2007<br>Trial Date:   November 10, 2008 |
| AND RELATED COUNTERCLAIM | |

---

[1] Dismissed by Order Upon Stipulation (6/15/07).

10707866.1

1

**TABLE OF CONTENTS**

2    I. INTRODUCTION ............................................................................................... 1

3    II. ARGUMENT.................................................................................................... 1

        A. The Damage To The Buildings At Yard 105 Is Not Covered ...................... 1

4            1.   The Buildings Are Not "Covered Property" .................................... 1

5            2.   Copart Had No "Objectively Reasonable Expectation" Of Coverage ............. 3

6            3.   If Necessary, Extrinsic Evidence Confirms US Fire's Interpretation ............. 4

7            4.   *Filippo* Is Not On Point.................................................................. 6

        B. Even If US Fire Potentially Were Liable, It Would Have A Complete
8           Affirmative Defense To Any Liability Under The California Insurance Code ... 8

9        C. Copart's Bad Faith Claim Faith Fails As A Matter Of Law ...................... 10

10           1.   The Claim Is Ripe For Summary Judgment.................................... 10

             2.   Copart's Factual Allegations Are Irrelevant .................................. 12

11       D. US Fire's Reformation Claim Presents Triable Issues Of Fact.................. 13

        E. US Fire's Claim For Additional Premiums Presents Triable Issues Of Fact ............ 14

12    III. CONCLUSION ............................................................................................. 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **TABLE OF AUTHORITIES**

3

Page(s)

4

**CASES**

5

American Building Maintenance Co. v. Indemnity Ins. Co. of North America,
       214 Cal. 608 (1932)........................................................................................ 13

6

Binder v. Aetna Life Ins. Co.,
7          75 Cal. App. 4th 832 (1999)........................................................................... 4

8

Crestview Cemetery Ass'n v. Dieden,
9          54 Cal. 2d 744 (1960).................................................................................... 5

10

De Campos v. State Compensation Insurance Fund,
       122 Cal. App. 2d 519 (1954)................................................................... 1, 8, 15

11

Filippo Industries, Inc. v. Sun Ins. Co. of New York,
12         35 Cal. App. 4th 1728 (1995) ("Filippo I")............................................... 6, 7, 12

13

Filippo Industries, Inc. v. Sun Ins. Co. of New York,
14         74 Cal. App. 4th 1429 (1999) ("Filippo II") ..................................................... 12

15

Franceschi v. American Motorists Ins. Co.,
       852 F.2d 1217 (9th Cir. 1988)............................................................. 10, 11, 12

16

Guebara v. Allstate Ins. Co.,
17         237 F.3d 987 (9th Cir. 2001)........................................................................ 10

18

Holz Rubber Company, Inc. v. American Star Ins. Co.,
19         14 Cal. 3d 45 (1975)...................................................................................... 6

20

Lunsford v. American Guarantee & Liability Ins. Co.,
       18 F.3d 653 (9th Cir. 1994)............................................................... 10, 11, 12

21

Mitchell v. United National Ins. Co.,
22         127 Cal. App. 4th 457 (2005)......................................................................... 9

23

Safeco Ins. Co. of America v. Guyton,
24         692 F.2d 551 (1982) ................................................................................ 11, 12

25

Schrillo Co. v. Hartford Accident & Indemnity Co.,
       181 Cal. App. 3d 766 (1986)........................................................................... 4

26

Sony Computer Entertainment America Inc. v. American Home Assur. Co.,
27         --- F.3d ---, 2008 WL 2736012 (9th Cir. 2008).............................................. 6, 7

28

State Farm Mutual Auto Ins. Co. v. Ball,
       127 Cal. App. 3d 568 ..................................................................................... 3

Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.,
    64 Cal. App. 3d 261 (1976) ................................................................................................. 8

Wilson v. 21st Century Ins. Co.,
    42 Cal. 4th 713 (2007) ..................................................................................................... 11


**STATUTES**

Cal. Civil Code § 3399 ......................................................................................................... 13

Cal. Ins. Code § 330 .............................................................................................................. 8

Cal. Ins. Code § 331 ........................................................................................................... 8, 9

Cal. Ins. Code § 332 .............................................................................................................. 8

Cal. Ins. Code § 334 .............................................................................................................. 9


**OTHER AUTHORITIES**

Rule 30(b)(6) ......................................................................................................................... 5

# I. INTRODUCTION

Like its principal brief, Copart's reply brief misses the point. Because the buildings at Yard 105 are not "Covered Property," the damage to those buildings is not within the policy's insuring agreement. Consequently, Copart's claim fails as a matter of law, regardless of whether any exclusion, limitation, or condition in the policy applies. Moreover, even if the claim somehow falls within the basic scope of coverage—and even if no condition in the policy applies—US Fire still has no liability due to Copart's violation of the *California Insurance Code's* requirements regarding disclosure of material information. The Court should grant US Fire's motion for summary judgment on Copart's claims and deny Copart's cross-motion.

# II. ARGUMENT

## A.    The Damage To The Buildings At Yard 105 Is Not Covered

### 1.    The Buildings Are Not "Covered Property"

Copart argues that the policy form does not define "Covered Property" as buildings described "in a statement of values." However, US Fire has never argued otherwise. US Fire prominently quoted the definition of Covered Property in its motion:

> Covered Property, as used in this Coverage Part, means ....
>
> a.    **Building**, meaning the building or structure described in the Declarations....[2]

As US Fire said repeatedly in its motion, the issue the Court must decide is whether the buildings at Yard 105 are "described in the Declarations." However, because the declarations incorporate other documents, the Court must analyze more than just the declarations form.

Ironically, if Copart were correct that the analysis begins and ends with just the declarations form, Copart's bid for coverage would still fail—only more quickly. That is because nowhere in the declarations form are any buildings at Yard 105 described. Nevertheless, Copart is not correct about where the analysis ends.

---

[2] Copart flamboyantly asks, where in the policy it states that only buildings described in the declarations will be Covered Property. The answer, of course, is under the definition of that term. Copart's other flamboyant question—where does the policy say that there is *no* coverage for buildings that are *not* described—is like "when did you stop beating your wife?"

1       The declarations form has a space ("Item 2") where, for a simple account, the

2   underwriter may describe the covered premises and the covered building(s) at those premises.

3   For an account (such as Copart's) involving many locations, there is not enough space, so "Item

4   2" is filled out to state, "See Schedule of Locations." Thus, the inquiry into what buildings (if

5   any) are "described in the declarations" shifts to the Schedule of Locations form.

6       Here, even that form was not practical for Copart's account, and because Copart had

7   *already* prepared a document describing its locations and the buildings and other exposures at

8   those locations, the Schedule of Locations simply states, "As per schedule on file with

9   company." There is no dispute that the "schedule on file with the company" was the

10  spreadsheet labeled by Copart as "Property Statement of Values 8-8-05." Thus, although the

11  inquiry into what buildings are "described" *begins* with the Supplemental Declarations form, it

12  ultimately *arrives* at the "Property Statement of Values 8-8-05."[3]

13      By no stretch of the imagination does the "Property Statement of Values 8-8-05"

14  describe any buildings at Yard 105. This is not because of any deficiency in its format, (which,

15  the Court should not forget, Copart and its broker *chose*); there are columns for "number of

16  buildings," square footage, construction type, alarms, sprinklers, and of course, "building and

17  improvements" values. The issue here is that for Yard 105, all of those columns are *blank*.

18  Perhaps because its own witness conceded the point (Ruby Decl., Ex. 40 at 23:16-24:7, 25:1-5,

19  25:16-19), Copart does not argue that the mere listing of a yard number and an address for the

20  yard is enough to "describe" a building.[4]

21  _____

22  [3] US Fire does not understand what point Copart hopes to make with respect to the label Copart
    and Marsh attached to this document. US Fire's declination has nothing to do with the
23  document's name; the declination has to do with its *content* (or lack thereof). No matter what
    the document's name, US Fire would have denied coverage for the buildings at Yard 105
24  because they are not described therein.

25  [4] Copart asks why US Fire paid for the damage to the buildings at Yards 33 and 70, even though
    not all of the columns relevant to buildings were completed for those locations. The answer is
26  irrelevant, but US Fire does not mind sharing it—Copart listed building values at those
    locations. Having been alerted to the existence of buildings at those locations before the policy
27  was issued, and having collected a premium for those buildings, US Fire was not about to deny
    coverage merely because Copart did not *complete* the description of those buildings by filling in
28  the additional building-related columns.

1    In passing, Copart appears to argue that "Item 4" designates all buildings as being

2    covered—even buildings that Copart never described anywhere. However, as the form plainly

3    indicates and as the underwriter explains in her declaration, "Item 4" merely serves to specify

4    the *limit* of US Fire's liability for building damage, what *causes* of loss are covered, and

5    whether any *coinsurance* requirement applies. Because those terms could conceivably vary

6    from location to location and building to building, the table under Item 4 has columns for

7    "location number" and "building number." Here, the underwriter choose not to vary those

8    terms, so she completed "location number" with the word "ALL" and meant to do the same in

9    the "building number" column.

10    As Copart would seemingly have it, Item 4 not only specifies the limits, etc. of the

11    building coverage but also specifies that "ALL" buildings are "Covered Property." Yet Copart

12    does not argue that the word "ALL" in the "location number" column in Item 4 somehow

13    renders the statement of values irrelevant. Copart concedes that in that column, "ALL" means

14    all locations described in the statement of values. Why then, *if* the underwriter had also written

15    "ALL" in the "building number" column in Item 4, would "ALL" mean something different

16    there? A consistent interpretation would be that "ALL" means all buildings described in the

17    statement of values. Copart offers no reason why the "location number" and "building number"

18    columns should be construed divergently.

19    **2.    Copart Had No "Objectively Reasonable Expectation" Of Coverage**

20    Copart offers a brief and confusing argument concerning the doctrine of "objectively

21    reasonable expectations." That doctrine is potentially relevant only when policy language is

22    ambiguous. See State Farm Mutual Auto Ins. Co. v. Ball, 127 Cal. App. 3d 568, 572 ("there can

23    be no resort to the doctrine of reasonable expectations in instances, like that at bench, where no

24    ambiguity exists in the language of an insurance contract"). And even if the Court finds

25    ambiguity as to whether the buildings at Yard 105 are "Covered Property," the

26    doctrine will not assist Copart here.

27    Copart offers no objective reasons why a reasonable insured could expect coverage

28    where a policy only covers described buildings and the building in question was never

1  described. Copart offers no objective reasons why a reasonable insured could expect coverage

2  for a building when it never paid a premium for any such coverage. Ironically, after accusing

3  US Fire of prematurely resorting to extrinsic evidence of the subjective intent of the parties in

4  this case, Copart offers no analysis of any *objectively reasonable* expectations and simply

5  returns fire with its own extrinsic evidence—specifically, certain testimony of its employee,

6  Simon Rote. But whatever Rote may have personally believed is immaterial to the objective

7  inquiry of what an insured *reasonably* could have expected.

8      Moreover, Copart overstates the significance of the "objectively reasonable

9  expectations" doctrine by asserting that it requires that any ambiguity "generally [be] interpreted

10 in favor of coverage." In fact, the doctrine is applied neutrally. Where courts find that the

11 insured had an objectively reasonable expectation of coverage, courts do of course "protect" that

12 expectation; but where courts find that the insured did not have an objectively reasonable

13 expectation of coverage, courts rule against the insured. See, e.g., Schrillo Co. v. Hartford

14 Accident & Indemnity Co., 181 Cal. App. 3d 766, 776 (1986) (finding that even if the policy

15 could be deemed ambiguous, the insured's alleged expectation was not objectively reasonable,

16 so any ambiguity would not be resolved in favor of coverage).

17      **3.    If Necessary, Extrinsic Evidence Confirms US Fire's Interpretation**

18      If the Court finds the policy ambiguous, and if the Court finds that the language does not

19 support an objectively reasonable expectation one way or the other, then a subjective analysis

20 (involving resort to extrinsic evidence) will be appropriate. As noted above, Copart offers the

21 testimony of one of its employees regarding his alleged intent. That evidence is inadmissible,

22 because the testimony was not responsive to the questions asked, and motions to strike were

23 immediately made. Furthermore, even if admissible, the testimony would not be compelling.

24      For one thing, the employee—Simon Rote—did not negotiate the policies. It is

25 undisputed that Copart had no direct dealings with US Fire and that its broker, Marsh, handled

26 everything. It is hornbook law that a principal is bound by the acts of its agent.

27      Second, under California law, the most powerful extrinsic evidence in a dispute over

28 contract interpretation is "course of dealing" and "course of performance" evidence. Binder v.

1    <u>Aetna Life Ins. Co.</u>, 75 Cal. App. 4th 832 (1999); <u>Crestview Cemetery Ass'n v. Dieden</u>, 54 Cal.

2    2d 744 (1960).  As the California Supreme Court noted in <u>Crestview Cemetary</u>, "This rule of

3    practical construction is predicated on the common sense concept that 'actions speak louder than

4    words.'"  <u>Id</u>.  As set forth in detail in US Fire's motion, Marsh and Copart never treated the

5    policies as covering all of Copart's property at a given location so long as Copart had reported

6    the *location* prior to the policy's inception.  The evidence includes:

7         •    An August 2004 email, in which Marsh inquired about coverage for a new building

8              at a previously disclosed location.  (Ex. 13.)  In its reply, Copart offers no

9              explanation as to why there would be any concern over coverage for a new building

10             at a previously disclosed location, if all buildings at disclosed locations are always

11             automatically covered.

12        •    A July 2005 inquiry (and subsequent endorsement to the policy) adding coverage for

13             $5 million of computer values at a previously-reported location.  (Ex. 14-16, Ex. 9 at

14             POL 213.)  Copart offers no explanation as to why the values had to be endorsed *into*

15             *the policy* if all property at the location was already covered.

16   These are but two of the transactions discussed in US Fire's motion.

17        Interesting, Copart has abandoned the primary argument in its motion concerning its

18   alleged intent.  In its motion, Copart represented to the Court that the reason it did not disclose

19   the existence of the buildings at Yard 105 (much less, their values) was that the buildings

20   purportedly were under construction and not operational.  US Fire responded with devastating

21   evidence (testimony by Copart's Rule 30(b)(6) witness, and documents) that in fact, the

22   buildings were complete and operational well before Copart submitted the statement of values

23   for the 2005-2006 policy.  In its reply, Copart attempts to pass this off as an "ancillary issue"

24   but offers no explanation for its failure to come clean about Yard 105 in its motion.[5]

25   _____

26   [5] Instead, Copart just digs itself a new hole.  Copart asserts repeatedly that it "diligently"
     updated the statements of values.  The truth is, Copart ignored repeated requests from its own
27   broker to do so.  (Ruby Decl., Exs. 31-33.)  Also, when Marsh asked why there were no
     building values at Yard 105 and several other locations, Copart falsely said there was "nothing
28   there yet."  (Id., Exs. 22-23.)  If Copart had truly been diligent, it would not be in its current
     predicatment.

1

### 4.    *Filippo* Is Not On Point

2      In a footnote, Copart quietly concedes that under <u>Sony Computer Entertainment

3 <u>America Inc. v. American Home Assur. Co.</u>, --- F.3d ---, 2008 WL 2736012 (9th Cir. 2008), the

4 court must "begin [its] analysis by examining the policy's affirmative coverage clauses, because

5 if a claim does not fall within those clauses, no coverage exists." Id. at *4. Yet in the body of

6 its brief, Copart relapses into arguing (as it did in its principal brief) that the issue here is

7 whether Copart *forfeited* coverage by breaching a policy condition during the policy period.

8 Copart continues to rely on <u>Filippo Industries, Inc. v. Sun Ins. Co. of New York</u>, 35 Cal. App.

9 4th 1728 (1995) ("<u>Filippo I</u>"), where the court held that an insured's delay in satisfying a

10 condition in an inventory coverage policy requiring monthly reporting of inventory values did

11 not affect the amount for which the insurer was liable. Copart also relies on <u>Holz Rubber

12 <u>Company, Inc. v. American Star Ins. Co.</u>, 14 Cal. 3d 45 (1975), for the proposition that

13 conditions must be clear and unambiguous.

14      The Court should not take the bait. As the Ninth Circuit has so timely reminded us,

15 "proper coverage analysis begins by considering whether the policy's insuring agreements

16 create coverage for the disputed claim." <u>Sony</u>, <u>supra</u>, at *9. "*If* coverage exists, then the court

17 considers whether any exclusions apply." <u>Id</u>. "If coverage does *not* exist, the inquiry ends. The

18 exclusions are no longer part of the analysis...." <u>Id</u>.

19      Here, as in <u>Sony</u>, the analysis begins and ends with the question of whether the policy's

20 insuring agreement creates coverage for the losses claimed. Once again, the insuring clause in

21 the "Building and Personal Property Coverage Form" provides:

22
23
> We will pay for direct physical loss of or damage to Covered
> Property at the premises described in the Declarations caused by
> or resulting from any Covered Cause of Loss.

24 (Larson Decl., Ex. B.) As discussed above, the buildings at Yard 105 are not "Covered

25 Property." Consequently, the insuring agreement does not create coverage for the damage those

26 buildings. Because there is no coverage at this very first stage, "the inquiry ends." <u>Sony</u>,

27 <u>supra</u>, at *9. Whatever they may be, the policy's exclusions, limitations, and conditions are not

28 "part of the analysis." <u>Id</u>.

1          Hence, US Fire was fully justified in "brushing aside" Copart's reliance on <u>Filippo I</u>,

2    which is a red herring.  That case involved a claim under an inventory policy for damage to

3    inventory.  The insurer did not assert that inventory in general was not covered, or that the

4    specific inventory in question was not covered.  Rather, the insurer asserted that its liability was

5    *limited* to the values the insured had most recently reported for the loss location.  The insurer

6    attempted to craft such a limitation of liability out of a condition in the policy that required the

7    insured to submit updated inventory values every month, for purposes of premium adjustments.

8    Because nothing in the policy specified that the insurer's liability would be limited to the most

9    recently reported values, the court held that the insured's late reporting of updated values did

10   not affect the amount of the insurer's liability.

11         Here, the issue is coverage—i.e., whether US Fire has any liability at all—not whether

12   US Fire's liability is limited to some figure.  In support of its declination of coverage, US Fire

13   relies not on a reporting condition in the policy (nor on any other condition) but rather on the

14   basic insuring agreement.  As the Ninth Circuit has so recently stated, "if a claim does not fall

15   within [the policy's affirmative coverage] clauses, ***no coverage exists***."  <u>Sony</u>, <u>supra</u>, at *4.

16   Because Copart's claim does not even get past the insuring agreement, it is unnecessary for the

17   Court to analyze whether any policy limits, exclusions, or conditions apply.

18         Copart's effort to analogize this case to <u>Filippo I</u> fails for other reasons.  The claim here

19   is for damage to buildings, not damage to inventory.  The issue here is building coverage, not

20   inventory coverage.  Copart asks why this makes a difference, but the answer is simple— unlike

21   inventory, buildings do not move around.

22         Inventory coverage often is subject to monthly value reporting because they may

23   fluctuate wildly, depending upon supply and demand.  On any given day during a policy period,

24   total inventory values (and the distribution of values across various locations) may bear little

25   resemblance to the values reported when the policy was issued.  Thus, instead of calculating the

26   entire premium for an inventory policy at the outset, premiums for inventory policies are

27   typically adjusted during the policy period.  In order to make the adjustments, inventory insurers

28   typically require monthly or quarterly reports.  This was precisely the case in <u>Filippo I</u>.

1    Copart is not in the business of buying and selling buildings—Copart uses them. Thus,

2    Copart's real property assets were never expected to fluctuate wildly from day to day or month

3    to month—nor, in fact, did they. Thus, there was no condition in the policy requiring Copart to

4    provide reports on its real property assets during the policy period. Indeed, Copart offers no

5    evidence that such conditions exist in *any* commercial property insurance policies, and US Fire

6    is not aware of any such policies.

7    Of course, it is conceivable that an insured may *occasionally* acquire or construct a new

8    building during a policy's period. Like most commercial property policies, Copart's policies

9    with US Fire addressed that possibility through a "coverage extension" labeled "Newly

10    Acquired or Constructed Property." (Larson Decl., Ex. I-A at POL 244 -45.) Here, Copart has

11    never made a claim under that coverage extension, because the buildings at Yard 105 were not

12    "newly acquired or constructed" during the policy period. Rather, they were complete and

13    operational in July 2005, long before the policy's effective date of October 1, 2005.

14    **B.    Even If US Fire Potentially Were Liable, It Would Have A Complete Affirmative**
      **Defense To Any Liability Under The California Insurance Code**

15

16    Copart argues that it did not affirmatively misrepresent any information about Yard 105.

17    However, California law requires an insured to "communicate ... all facts within his knowledge

18    which are ... material to the contract ...." Cal. Ins. Code § 332. "Neglect to communicate that

19    which a party knows, and ought to communicate, is concealment." Cal. Ins. Code § 330. Like

20    misrepresentation, concealment is a violation of California law, and "the insurer may set up the

21    concealment [as a defense] in an action on the policy". Cal. Ins. Code § 331; De Campos v.

22    State Compensation Insurance Fund, 122 Cal. App. 2d 519, 527 (1954); Williamson & Vollmer

23    Engineering, Inc. v. Sequoia Ins. Co., 64 Cal. App. 3d 261, 274-75 (1976).

24    Copart does not deny that the information it submitted (through its broker) to US Fire

25    over the years, did not disclose that there were buildings at Yard 105 (much less, disclose the

26    replacement costs of those buildings, or their contents, or the business interruption exposure at

27    the location). Nor does Copart dispute the fact that the underwriter had no independent

28    knowledge of the exposures at Yard 105 and relied entirely on Copart's information to be

1   accurate and complete.  As anticipated, Copart argues that it did not *intentionally* conceal such

2   information.  However, as pointed out in US Fire's motion, Copart's state of mind is irrelevant,

3   because  "whether intentional or unintentional," a failure to communicate material information

4   is concealment.  Cal. Ins. Code § 331.

5        Copart argues that the policy does not specify "consequences" for failing to disclose

6   material information.  However, the consequences of concealing material information are

7   already imposed by the Insurance Code statutes and cases cited above.  Furthermore, materiality

8   is to be determined "solely by the probable and reasonable influence of the facts upon the party

9   to whom the communication is due, in forming his estimate of the disadvantages of the

10  proposed contract, or in making his inquiries."  Cal. Ins. Code § 334.  Information that "would

11  have caused the underwriter to . . . charge a higher premium" is material as a matter of law.

12  Mitchell v. United National Ins. Co., 127 Cal. App. 4th 457, 469 (2005).[6]

13       Copart argues that there is a triable issue of fact as to whether the premiums for the

14  policies would have been higher if Copart had disclosed the existence of buildings and other

15  exposures at Yard 105.  If the issue were indeed triable, then although US Fire would not be

16  entitled to judgment as a matter of law on Copart's breach of contract claim, neither would

17  Copart.  A plaintiff cannot be granted summary judgment so long as a defendant's affirmative

18  defense remains at issue.

19       That said, Copart has *not* demonstrated that there is any doubt that the premiums would

20  have been higher if Copart had not concealed information about Yard 105.  Copart asserts that

21  the premium for the 2005-2006 policy was a "flat" amount—in its principal brief, Copart called

22  it a "lump-sum" amount—but such adjectives are neither objective nor compelling.  Just as it is

23

24  _____

[6] Copart quotes Travelers Cas. & Sur. Co. v. Employers Ins. of Wausau, 130 Cal. App. 4th 99

25  (2005), wherein the court states that the insurer's "method of calculating the premiums cannot
    change the plain meaning of the policy language."  US Fire does not argue otherwise.  However,

26  if the Court interprets the policy as covering the buildings at Yard 105, the analysis will not end
    there.  US Fire's affirmative defense of concealment (which is not based on any policy language

27  but rather on Insurance Code §§ 330 et seq., Mitchell, De Campos, and Williamson) presents an

28  additional and separate issue.  The case quoted by Copart did not involve such an issue; in fact,
    that case simply involved a contribution dispute between two insurers.

1    irrelevant to coverage that US Fire issued one policy instead of separate policies for each

2    location, it is irrelevant that US Fire charged one aggregate premium for each policy instead of

3    separate premiums for each location.

4         Similarly irrelevant is the fact that the premiums were "negotiated." Each of US Fire's

5    initial quotes was based on the exposures (values) reported by Copart and where those

6    exposures were located. (E.g., Streacker Decl., ¶ 4; Ex. 25; Ex. 42 at 121:17-22; Ex. 41, 94:21-

7    95:1.) Just because US Fire ultimately compromised here and there on the *rate* it applied to the

8    exposures or the *commission* to be remitted to Marsh does not mean that the exposures became

9    irrelevant to the premiums. Had Copart not concealed information, the initial quotes would

10   have been higher; and had the negotiations started at a higher point, they would have ended at a

11   higher point. Indeed, Copart concedes that "the total insurable values went into the premium

12   calculus." (Reply at 8:11-12.)

13   C.    **Copart's Bad Faith Claim Faith Fails As A Matter Of Law**

14        Copart concedes that if no policy benefits are due, then its bad faith claim fails as a

15   matter of law. Copart also concedes that *even if* policy benefits are due, to establish bad faith

16   Copart must prove that the withholding of benefits "was unreasonable or without proper cause."

17   Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001). Copart argues that the

18   reasonableness of an insurer's coverage declination is invariably a question of fact, but the law

19   in the Ninth Circuit is to the contrary, and the cases cited by Copart are inapposite.

20        **1.    The Claim Is Ripe For Summary Judgment**

21   "Under California law, a bad faith claim can be dismissed on summary judgment if the

22   [insurer] can show that there was a genuine dispute as to coverage." Guebara, 237 F.3d at 992.

23   Where the dispute concerns the interpretation of the policy—a question of law—the

24   *reasonableness* of the dispute is also a question of law. Lunsford v. American Guarantee &

25   Liability Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994) (resolving bad faith claim as a matter of law

26   where dispute was over interpretation of "malicious prosecution" as used in the policy);

27   Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988) (resolving bad

28   faith claim as a matter of law where dispute was over interpretation of "medical treatment" as

1   used in the policy); Safeco Ins. Co. of America v. Guyton, 692 F.2d 551, 556-57 (1982)

2   (resolving bad faith claim as a matter of law where dispute was whether policy's flood exclusion

3   should be interpreted  "efficient proximate cause" or "concurrent causation" rule).

4        Ignoring these Ninth Circuit authorities, Copart relies on Wilson v. 21st Century Ins. Co.,

5   42 Cal. 4th 713 (2007).  Yet in Wilson, the court *approved* of the Ninth Circuit's line of cases on

6   the "genuine dispute" doctrine.  The court simply found that in the case before it, the coverage

7   issue was a *factual* issue---and correspondingly, that the bad faith issue was a factual issue.  The

8   court did not purport to abrogate the well-established principle that the interpretation of a

9   contract is a question of law.  Nor did the court purport to abrogate the Ninth Circuit's line of

10  cases holding that the reasonableness of an insurer's interpretation of a disputed policy term is

11  also a question of law.

12       In Wilson, the insurer was sued over a delay in payment.  The delay in payment was the

13  result of the insurer's initial conclusions, based on the medical information initially reviewed,

14  that the insured's injury was not as severe as claimed and in any event was a pre-existing

15  condition not caused by the accident in question.  In reversing a summary judgment for the

16  insurer, the court held, "Unfortunately for [the insurer's] summary judgment position, a jury

17  could reasonably find that nothing in the material the claims examiner had received justified

18  [its] conclusions."  Id. at 721.

19       Here, US Fire did not deny coverage due to some allegedly erroneous *factual* conclusion

20  regarding the extent or cause of the building damage.  Rather, US Fire took the position that the

21  buildings were not "Covered Property."  The Court must determine whose interpretation of

22  "Covered Property" is correct, and if the Court sides with Copart, it is also *the Court* who must

23  decide if US Fire's position was unreasonable.  In moving for summary judgment, US Fire asks

24  this Court to do nothing more than what the Ninth Circuit has done or affirmed many times.

25  See, e.g., Lunsford, supra (dismissing bad faith claim where insurer's "construction of the

26  policy," though incorrect, was "reasonable"); Franceschi, supra (affirming dismissal of bad faith

27  claim where insurer's interpretation of disputed policy terms, though incorrect, "was not

28

1  arbitrary or unreasonable"); Guyton, supra (affirming dismissal of bad faith claim where "there

2  existed a genuine issue as to [the insurer's] liability under California law").

3      Copart's reliance on Filippo Industries, Inc. v. Sun Ins. Co. of New York, 74 Cal. App.

4  4th 1429 (1999) ("Filippo II") is as misplaced as its reliance on Filippo I. In Filippo II, the

5  appellate court acknowledged that under Lunsford and other cases, a court may summarily

6  adjudicate a bad faith claim. The Filippo II court distinguished those cases based on the

7  complex procedural history of Filippo I, in which the appellate court had not made a ruling

8  based on the genuine dispute doctrine. The Filippo II court found that to do so itself would be

9  impermissible. The court noted that things would have been different if the trial and appellate

10  courts had ruled on the genuine dispute issue in Filippo I, thus preserving for the insured "a

11  right to appeal to the highest court." Filippo II, 74 Cal. App. 4th at 1440-41.

12      The present case is free of the procedural complexities of the Filippo cases. Instead, it

13  resembles Franceschi, where (in the original trial court proceedings) the insurer filed a timely

14  motion for summary judgment based on the genuine dispute rule, and the District Court granted

15  the motion. The insured appealed, and the Ninth Circuit affirmed (finding not only that the

16  District Court had the *right* to resolve the bad faith claim as a matter of law, but also that the

17  District Court had resolved it *correctly*).

18      Here, in this Court's original proceedings and at the time set by this Court for dispositive

19  motions, US Fire has moved for summary judgment based on the genuine dispute rule. Copart

20  has had an opportunity to present an opposition, and it has done so. If the Court rules in favor

21  of US Fire, Copart will have an opportunity to appeal. Thus, this case is governed not by

22  Filippo II but by Franceschi, Lunsford, and Guyton.

23      **2.    Copart's Factual Allegations Are Irrelevant**

24      Copart argues that US Fire should have declined coverage more quickly and that John

25  Petrillo, a subrogation examiner who had no role in the handling of the claim, "sanitized" a

26  comment by independent adjuster Orvin Wills when posting the comment to his subrogation

27  activity log. Neither of those allegations is relevant to the issue of whether US Fire's

28  interpretation of "Covered Property" was unreasonable. The Court should not be distracted by

1  the allegations, nor by the 318-page "Exhibit F" that Copart dumps in the Court's lap, with no

2  explanation as to what it supposedly shows.

3       Copart also argues that US Fire's claims examiner, Carlton Clarke, reviewed the

4  "wrong" policy.  Clarke obtained the 2004-2005 policy for his file because at the time the loss

5  was reported, the 2005-2006 policy had not yet been issued.  (Larson Reply Decl., Ex. B at

6  132:14-24.)  Copart asserts there were "major differences" between the 2004-2005 policy and

7  the 2005-2006 renewal policy, but the only difference Copart identifies is the difference in the

8  policy limit, which is irrelevant to this case.  In all material respects, the policies are the same;

9  both contained the same definition of "Covered Property,"[7] both policies' declarations

10 incorporated by reference a Schedule of Locations form,[8] and in both instances those forms

11 incorporated the "schedule on file with the company,"[9] meaning a statement of values.

12      Finally, Copart argues that Clarke reviewed the "wrong" statement of values.  Again, at

13 the time the loss was reported, Clarke reviewed the prior year's statement because the renewal

14 policy was not yet available.  Prior to declining the claim, Clarke consulted with the

15 underwriter, who reviewed the 2005 statement.  (Streacker Decl., ¶¶ 17-20.)  She saw that as in

16 the prior year's statement, Copart had not reported any building values or otherwise described

17 any buildings at Yard 105.  (Id.; Ruby Decl., Ex. 18.)  Consistent with that information, Clarke

18 took the position in his letter to Copart that there was "no coverage for buildings or time

19 element exposures at [that] location."  (Larson Decl., Ex. III-A.)  Clarke's position would have

20 been no different if he had looked at the 2005 statement of values himself.

21 **D.    US Fire's Reformation Claim Presents Triable Issues Of Fact**

22      Copart argues that there is no legal authority allowing reformation of an insurance

23 contract.  Yet in its opposition brief, US Fire cited Cal. Civil Code § 3399, which expressly

24 authorizes a court to "revise" any written contract to "express the intention of the parties."  In its

25 reply, Copart ignores the statute.  And while Copart previously relied on American Building

---

[7] See Ruby Decl., Ex. 9 at POL 144; Larson Decl., Ex. I-A at POL 240.

[8] See Ruby Decl., Ex. 9 at POL 143 ("Item 2"); Larson Decl., Ex. I-A at POL 222 (same).

[9] See Ruby Decl., Ex. 9 at POL 94; Larson Decl., Ex. I-A at POL 232.

1    Maintenance Co. v. Indemnity Ins. Co. of North America, 214 Cal. 608 (1932), Copart has

2    nothing to say in response to US Fire's dissection of that case. Copart has thus conceded that its

3    reliance on the case was misplaced.

4         Whether there was a mistake in the policy—and if so, where—depends on how the Court

5    interprets the policy. If the Court agrees with US Fire's interpretation, then there was no

6    mistake. However, "pleading in the alternative," US Fire has made a claim that if Copart's

7    interpretation is upheld, then there was a mistake, and the policy should be revised. Precisely

8    how it should be revised will depend on how (if at all) the Court finds that the policy as written

9    covers buildings at Yard 105. For example, if the Court finds that the Supplemental

10   Declarations somehow fails to incorporate the statement of values, then US Fire will propose an

11   appropriate correction to the Supplemental Declarations.

12        As for the "intention of the parties," US Fire has submitted ample evidence sufficient to

13   support a finding in its favor. US Fire contends, in the first instance, that the evidence is so

14   overwhelming as to resolve any ambiguity in the policy in favor of US Fire's interpretation, thus

15   mooting any claim for reformation. But even if the Court finds the evidence insufficient to

16   compel an interpretation as a matter of law, it is at least an issue of fact.

17   **E.    US Fire's Claim For Additional Premiums Presents Triable Issues Of Fact**

18        Copart continues to argue that opinions regarding the market value of property "cannot

19   be actionable representations." However, US Fire is not suing over any representations

20   concerning market value. US Fire is suing over representations (and concealment) of costs of

21   replacing property. In its principal brief, Copart cited no authority for the proposition that

22   replacement cost is not a matter of fact. Thus, there was no such authority for US Fire to

23   "discuss" or "distinguish" in its opposition.

24        However, US Fire was not silent on the issue. US Fire submitted testimony by Copart's

25   national property manager that the cost of replacing a building is not merely a matter of opinion

26   but something that can be *calculated* with a high degree of confidence. (Ruby Decl., Ex. 37;

27   Ex. 39 at 157:23-24, 158:4-6, 170:5-10; 176:13-178:9, 192:3-7, 194:4-6.) Copart's reply

28

1  ignores that evidence, presumably because Copart knows that the testimony proves that

2  replacement cost is *not* a speculative matter.

3      As to whether US Fire has been damaged, US Fire's opposition pointed out that the case

4  upon which Copart relies for an "out-of-pocket loss rule" applies only—*in Copart's own*

5  *words*—"where fraud is alleged to have caused damage in connection with the purchase, sale or

6  exchange of property." (Copart's Motion at 24:18-19.) US Fire pointed out that it is not suing

7  over a purchase, sale, or exchange of any property. In its reply, Copart does not even attempt to

8  rehabilitate its citation. And although Copart downplays the <u>De Campos</u> case cited by US Fire,

9  because the case did not involve a claim for unpaid premiums, the fact remains that the court

10  endorsed the concept of such a claim.

11                              III. <u>CONCLUSION</u>

12      The Court should grant US Fire's motion for summary judgment on Copart's claims for

13  breach of contract and bad faith and deny Copart's motion for summary judgment on US Fire's

14  counterclaim.

15

16  DATED: August 7, 2008              BULLIVANT HOUSER BAILEY PC

17

18                                    By      */s/ Samuel H. Ruby*
                                          Jess B. Millikan
19                                        Samuel H. Ruby
                                          Judith A. Whitehouse
20
                                          Attorneys for Defendant
21                                        United States Fire Insurance Company

22

23

24

25

26

27

28